Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Annika K. Martin (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500
akmartin@lchb.com

Daniel C. Girard (SBN 114826)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
(415) 981-4800
dgirard@girardsharp.com

*Interim Class Counsel and Plaintiffs' Executive Committee*
*[Additional Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE:  USC STUDENT HEALTH CENTER LITIGATION | No. 2:18-cv-04258-SVW<br><br>[Consolidated with:<br>No. 2:18-cv-04940- SVW-GJS,<br>No. 2:18-cv-05010-SVW-GJS,<br>No. 2:18-cv-05125-SVW-GJS, and<br>No. 2:18-cv-06115-SVW-GJS]<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT CLASS NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Date:  April 1, 2019<br>Time: 1:30 p.m.<br>Ctrm: 10A<br>Hon. Stephen V. Wilson |

1694697.1

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 1, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Stephen V. Wilson in Courtroom 10A of the above-entitled court, located at 350 West First Street, Los Angeles, California 90012, Plaintiffs in these consolidated actions will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order:

a) Granting preliminary approval of the proposed class action settlement that would resolve this litigation;

b) Approving the proposed notice program, including the proposed forms of notice, and directing that notice be disseminated in accordance with the proposed program; and

c) Setting a final approval hearing and certain other dates in connection with the settlement approval process.

This motion is based upon this Notice; the Memorandum of Points and Authorities in Support; the Joint Declaration of Class Counsel and the attached exhibits, which includes the Settlement Agreement; the Declaration of Hon. Layn Phillips; the Declarations of Plaintiffs Betsayda Aceituno, Jane Doe F.M., Jane Doe M.V., Jane Doe A.N., Jane Doe H.R., Mehrnaz Mohammadi, Jane Doe M.S., Jane Doe 4, Jane Doe A.D., Jane Doe C.N., Jane Doe A.R., and Shannon O'Conner; the Declaration of Plaintiffs' Notice Program Expert, Jennifer M. Keough from JND Legal Administration LLC, and attached exhibits, along with the proposed notices themselves; and any further papers filed in support of this motion, as well as arguments of counsel and all records on file in this matter.

1  DATED:  February 12, 2019.                    Respectfully submitted,

2                                                HAGENS BERMAN SOBOL SHAPIRO LLP

3
                                                 By ___/s/ Steve W. Berman_____
4                                                       Steve W. Berman

5                                                Shelby R. Smith
                                                 1301 Second Avenue, Suite 2000
6                                                Seattle, WA 98101
                                                 Tel.: 206-623-7292
7                                                Fax: 206-623-0594
8                                                Email: steve@hbsslaw.com
                                                 Email: shelby@hbsslaw.com
9

10                                               Elizabeth A. Fegan
                                                 Emily Brown
11                                               HAGENS BERMAN SOBOL
                                                 SHAPIRO LLP
12
                                                 455 N. Cityfront Plaza Dr., Suite 2410
13                                               Chicago, IL 60611
                                                 Telephone: 708-628-4949
14                                               Facsimile: 708-628-4950
15                                               Email: beth@hbsslaw.com
                                                 Email: emilyb@hbsslaw.com
16

17                                               Jonathan D. Selbin
18                                               Annika K. Martin
                                                 Evan J. Ballan
19                                               LIEFF CABRASER HEIMANN &
                                                 BERNSTEIN, LLP
20
                                                 275 Battery Street, 29th Floor
21                                               San Francisco, CA 94111-3339
                                                 Tel.: (415) 956-1000
22                                               Fax: (415) 956-1008
23                                               Email: jselbin@lchb.com
                                                 Email: akmartin@lchb.com
24                                               Email: eballan@lchb.com
25

26

27

28

1694697.1

Daniel C. Girard
Elizabeth A. Kramer
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
Tel.: (415) 981-4800
Fax: (415) 981-4846
Email: dgirard@girardsharp.com
Email: ekramer@girardsharp.com

*Plaintiffs' Executive Committee and
Interim Class Counsel*

Joseph G. Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel: (610) 200-0580
Fax: (610)727-4360
Email: jgs@sstriallawyers.com

Jonathan Shub
KOHN SWIFT & GRAF, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA 19103-7225
P: 215-238-1700
F: 215-238-1968
E: jshub@kohnswift.com

*Proposed Additional Class Counsel*

# TABLE OF CONTENTS

<u>Page</u>

I.   INTRODUCTION AND SUMMARY .......................................................... 1

II.  BACKGROUND AND PROCEDURAL HISTORY ........................................ 4

    A.   Factual Background ............................................................................ 4

    B.   Procedural History ............................................................................. 6

        1.   Initial Complaint Filings and Consolidation. ............................. 6

        2.   Intensive Information Gathering. ............................................... 6

        3.   Mediation with the Hon. Layn R. Phillips........................................ 8

III. THE TERMS OF THE PROPOSED SETTLEMENT........................................ 9

    A.   The Class Definition. ......................................................................... 9

    B.   The Settlement's Benefits to Class Members. ........................................ 9

        1.   $215 Million to Compensate Class Members. ............................. 9

            a.   Three-Tier Structure Built Around Claimant Choice........ 10

            b.   Tier 2 and 3 Claims Will Be Assessed and Allocated by an Experienced Special Master and Expert Team........ 12

            c.   Pro Rata Adjustment to Ensure Fairness and Maximum Money Distributed to Class Members. ............ 13

        2.   Requiring and Enforcing Robust Policy Changes at USC. ......... 13

    C.   Procedure for Opting Out or Objecting to the Settlement. .................... 16

    D.   Attorneys' Fees Will Be Paid in Addition to the Settlement Amount After Final Approval and After Claims Process..................... 17

IV.  THE CLASS ACTION SETTLEMENT PROCESS, AS AMENDED. .......... 17

V.   THE PROPOSED SETTLEMENT MERITS NOTICE AND SCHEDULING FOR FINAL APPROVAL.......................................... 18

    A.   The Contemporary Rule 23(e) Standard. ................................................ 20

    B.   The Settlement Was the Result of a Thorough, Informed, Fair Negotiation Process......................................................... 21

        1.   Interim Class Counsel Had All Information Necessary to Negotiate on Behalf of the Class. .............................................. 21

        2.   The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced, Neutral Mediator. ...................... 24

1694697.1

**TABLE OF CONTENTS**

Page

3.  Attorneys' Fees Were Negotiated Separately and After Monetary Relief for the Class. ..................................... 25

C.  The Settlement Is Not Just Adequate—It Is Outstanding. ..................... 25

1.  The Relief Provided for the Class Is Substantial, Particularly in Light of the Costs, Risks, and Delay of Trial. ......................... 26

a.  Litigation Is Invasive; Participation in this Settlement Is Not. ......................... 26

b.  Litigation Is Slow, and By No Means a Slam Dunk. ........ 27

2.  The Settlement Claims Process Is Efficient, Accurate, and Sensitive to Claimant's Needs and Privacy. ............................... 28

3.  The Terms and Timing of the Proposed Award of Attorney's Fees Puts Class Members First. ....................................... 28

4.  There Are No Undisclosed Side Agreements. ............................. 29

5.  The Settlement Treats Class Members Equitably Relative to Each Other. ....................................... 30

VI.  THE COURT WILL BE ABLE TO CERTIFY THE CLASS. ........................ 31

A.  The Class Meets the Requirements of Rule 23(a) ................................. 32

1.  The Class Is Sufficiently Numerous. ....................................... 32

2.  There Are Common Questions of Both Law and Fact. ............... 32

3.  Plaintiffs' Claims Are Typical. ....................................... 34

4.  Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class. ................................... 35

a.  Plaintiffs Have No Conflicts of Interest and Have Diligently Pursued the Action on Behalf of the Class. ...... 35

b.  Interim Class Counsel Are Qualified to Serve as Class Counsel. ....................................... 35

B.  The Class Meets the Requirements of Rule 23(b)(3). ......................... 36

1.  Common Issues of Law and Fact Predominate. ......................... 36

2.  Class Treatment Is Superior in This Case. ................................. 37

VII.  THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE. ....................................... 38

VIII.  THE PROPOSED FINAL APPROVAL HEARING SCHEDULE. ................. 40

IX.  CONCLUSION ....................................... 40

- ii -

1694697.1

# TABLE OF AUTHORITIES

## __CASES__

*Ambriz v. Coca Cola Co.*,
No. CV 14-00715 SVW, 2015 WL 12683823 (C.D. Cal. Mar. 11, 2015) ... 32, 36, 37

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................ 36

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ........................................................................................ 36

*Briseno v. ConAgra Foods, Inc*,
844 F.3d 1121 (9th Cir. 2017) ................................................................... 39, 40

*Brown v. 22nd District Agricultural Assoc.*,
No. 15-cv-2578-DHB, 2017 WL 2172239 (S.D. Cal. May 17, 2017) .................... 24

*Chao v. Aurora Loan Servs., LLC*,
No. C 10-3118 SBA, 2014 WL 4421308 (N.D. Cal. Sept. 5, 2014) ...................... 30

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................ 19

*Clothesrigger, Inc. v. GTE Corp.*,
191 Cal. App. 3d 605 (1987) ............................................................................ 37

*Connor B. ex rel. Vigurs v. Patrick*,
272 F.R.D. 288 (D. Mass. 2011) ...................................................................... 34

*D.G. v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ....................................................................... 34

*Doe #1 by Parent #1 v. New York City Dep't of Educ.*,
No. 16-cv-1684, 2018 WL 3637962 (E.D.N.Y. July 31, 2018) ............................ 24

*Doe A.T. v. USC*,
No. 2:18-cv-04940-SVW-GJS (C.D. Cal. filed June 4, 2018) .............................. 6

*Doe v. Roman Catholic Diocese of Covington*,
No. 03-CI-00181, 2006 WL 250694
(Ky. Cir. Ct. Jan. 31, 2016) ............................................................................. 38

*Doe v. The John Hopkins Hosp.*,
No. 24C13001041, 2014 WL 5040602 (Md. Cir. Ct. Sep. 19, 2014) .......... 19, 27, 31

*Ehret v. Uber Techs, Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) .............................................................. 37

*Estrella v. Freedom Fin'l Network*,
No. C 09-03156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ........................ 32

*Fed. Ins. Co. v. Caldera Med., Inc.*,
No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) ....... 25

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................. 21, 26, 32, 36

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................... 24

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ...................................................................... 17, 29

- i -

# TABLE OF AUTHORITIES

**Page**

*In re NFL Players' Concussion Injury Litig.,*
   301 F.R.D. 191 (E.D. Pa. 2014) ........................................................... 22

*In re NFL Players' Concussion Injury Litig.,*
   821 F.3d 410 (3d Cir. 2016) ................................................................. 22

*Jane Doe 1 v. Tyndall,*
   No. 2:18-cv-05010-R-AGR (C.D. Cal. filed June 5, 2018) ................... 6

*Jane Doe 1 v. USC,*
   No. BC713383 (Cal. Super. Ct., filed July 9, 2018) .............................. 6

*Jane Doe 2 v. The Georgetown Synagogue-Kesher Israel Congregation,*
   No. 2014 CA 007644 B (D.C. Super. Oct. 24, 2018) ........................... 33

*Jane Doe 30's Mother v. Bradley,*
   64 A.3d 379 (Del. Super. Ct. 2012) ............................................... passim

*Jane Doe 5 v. Tyndall,*
   No. BC705677 (Cal. Super. Ct. filed May 25, 2018) ............................ 6

*Jane Doe J.L. v. USC,*
   No. 2:18-cv-06115-SVW-GJS (C.D. Cal. filed July 13, 2018) .............. 6

*Jane Doe No. 1 v. Johns Hopkins Hosp.,*
   No. 24-C-13-001041 (Md. Cir. Ct. 2014) ..................................... passim

*Lecenat v. Perlitz,*
   No. 3:13-cv-01132-RNC (D. Conn. Feb. 11, 2019) ............................ 19

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998) ............................................................. 22

*Lucas v. Kmart Corp.,*
   234 F.R.D. 688 (D. Colo. 2006) .......................................................... 25

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,*
   No. CV 07-3072 AHM (FMOx), 2009 WL 1065072 (C.D. Cal. Mar. 19, 2009) .... 30

*O'Conner v. USC,*
   No. 2:18-cv-05125-JFW-AS (C.D. Cal. filed June 8, 2018) ................. 6

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ............................................................... 35

*Peoples v. Annucci,*
   180 F. Supp. 3d 294 (S.D.N.Y. 2016) ................................................ 19

*Rodriguez v. Farmers Ins. Co. of Ariz.,*
   No. CV 09-06786, 2013 WL 12109896 (C.D. Cal. Aug. 4, 2013) ......... 25

*Sadowska v. Volkswagen Grp. of Am., Inc.,*
   No. CV 11-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ......... 25

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ............................................................... 35

*Stockwell v. City & Cty. of San Francisco,*
   749 F.3d 1107 (9th Cir. 2014) ............................................................. 32

*Sutedja v. USC,*
   No. 2:18-cv-04258-SVW-GJS (C.D. Cal. filed May 21, 2018) ............. 6

*Syed v. M-I, L.L.C.,*
   No. 1:12-cv-01718, 2017 WL 714367 (E.D. Cal. Feb. 22, 2017) ......... 27, 33

# TABLE OF AUTHORITIES

**Page**

*Sykes v. Mel Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) ................................................ 33

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S.Ct. 1036 (2016) ............................................................. 36

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................... 32, 33

## RULES

Del. Super. Ct. Civ. R. 23 ............................................................ 19
Fed. R. Civ. P. 23 ............................................................... passim
Fed. R. Civ. P. 23(a) ........................................................... passim
Fed. R. Civ. P. 23(b) .................................................. 18, 31, 36, 37
Fed. R. Civ. P. 23(c) ...................................................... 10, 18, 39
Fed. R. Civ. P. 23(e) ........................................................... passim
Fed. R. Civ. P. 23(h) ........................................................... 17, 29
Md. Rule 2-231 ........................................................................ 19

## TREATISES

4 Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions* § 11:41 (4th ed. 2002) ........................ 19

## OTHER AUTHORITIES

Advisory Committee's Note on the 2018 Amendments to Fed. R. Civ. P. 23 ...... passim
Los Angeles Times, A USC Doctor Was Accused of Bad Behavior With Young
    Women For Years. The University Let Him Continue Treating Students
    (May 16, 2018) ......................................................................... 5
University of Southern California Press Room, Statement of Facts
    May 15, 2018 ............................................................................ 5

1694697.1

1

## I.     INTRODUCTION AND SUMMARY

2
3        Plaintiffs, by and through Interim Class Counsel, respectfully request the Court
4   to preliminarily approve their proposed class action settlement (the "Settlement") with
5   Defendants Dr. George Tyndall, the University of Southern California, and the Board
6   of Trustees of the University of Southern California[1] to resolve claims of sexual abuse
7   by Tyndall during his tenure as an obstetrician-gynecologist at the USC student health
8   center.  The Settlement requires USC to pay $215 million in non-reversionary cash
9   (net of attorneys' fees and costs) to pay Class member claims, and provides for robust,
10  expert-crafted equitable relief going forward to ensure that the events that led to this
    litigation never occur at USC again.

11       The Settlement is an outstanding result that achieves this litigation's central goal
12  of accountability through fair compensation of victims and institutional change at
13  USC. And it does so in a timely and compassionate manner. It provides real, immedi-
14  ate, and certain compensation for thousands of women—no less than $2500 and up to
15  $250,000 each—while allowing *them* to choose whether and how much to engage in
16  the process and tell their stories. And it ensures meaningful institutional change at
17  USC via implementation of best practices and independent oversight.

18       For decades, Tyndall used his position of trust and authority as an obstetrician-
19  gynecologist at the USC student health center to perpetrate pervasive sexual abuse and
20  harassment of female patients. Despite evidence that USC knew or should have known
21  about Tyndall's conduct, USC kept Tyndall on, giving him continued access and
22  opportunity to abuse his female patients. Tyndall's pattern of abusive conduct did not
23  come to public light until May 2018, when news reports first revealed Tyndall's
24  misconduct. Lawsuits followed, including the federal class actions consolidated in this
25  case.

26       From the outset, Interim Class Counsel were driven to move this case forward

27
[1] In this brief, "USC" refers collectively to Defendants University of Southern
28  California and the Board of Trustees of the University of Southern California.

with a singular focus: holding Tyndall and USC accountable, in two ways. First,
obtaining fair compensation for victims without forcing them to endure the emotional
toll, risks, and delays of litigation, including having to re-live their trauma in a public,
adversarial forum. Second, effecting lasting institutional change at USC by
implementing best practices and ensuring independent oversight. To achieve those
dual ends, Interim Class Counsel retained and consulted with experts experienced in
working with sexual assault victims, diagnosing and treating PTSD, and crafting and
implementing institutional policy changes to prevent sexual abuse in educational and
medical contexts. Interim Class Counsel also consulted with the special master who
oversaw the settlement allocation process in the successful *Johns Hopkins* sex abuse
class action,[2] among others. Interim Class Counsel also conducted extensive
interviews of all named Plaintiffs and numerous other Tyndall victims to ensure a
comprehensive understanding of the scope and nature of the abuse, to learn what
issues were of greatest importance to the victims, and to best address them in a
compassionate and sensitive manner. For its part, USC too expressed a strong and
immediate desire to focus on fairly compensating Tyndall's victims in a non-
adversarial manner accounting for its important relationship with these women.

With these shared goals in mind, the parties conducted early informal discovery
and engaged a highly respected and experienced mediator, Hon. Layn R. Phillips, who
successfully mediated the Michigan State sex abuse scandal cases. Following a full-
day, in-person mediation session with Judge Phillips, the parties, along with USC's
insurers, had frequent, ongoing discussions amongst each other and with Judge
Phillips to narrow the issues in dispute. After this intensive information gathering,
expert consultation, and negotiation, the parties reached an agreement-in-principle and
term sheet outlining the contours of a class settlement. As the parties negotiated the
details of the Settlement, Interim Class Counsel sought and received more information

---

[2] *Jane Doe No. 1 v. Johns Hopkins Hosp.*, No. 24-C-13-001041 (Md. Cir. Ct. 2014).

from USC and its data experts, and continued to consult with subject-matter experts concerning the appropriate design, process, and language for the Settlement claims process.

The end result is the Settlement before the Court today, which meets the goal of accountability through fair compensation and meaningful institutional change. While no amount of money can ever fully compensate victims for the abuse they suffered at Tyndall's hands, the Settlement provides substantial monetary compensation to Class members, coupled with lasting institutional change to ensure something like this will never happen again at USC.

Some key features are:

*Accountability*: Defendants will pay a total sum of $215 million to the Class, net of attorneys' fees and costs. USC will implement institutional changes to protect students and prevent abuse.  These changes were developed by leading experts in the field, and include policy and procedure changes at the Student Health Center; appointment of an Independent Women's Health Advocate; and convention of a Task Force—including an independent expert (retained and paid by Interim Class Counsel) specializing in university best practices related to prevention and response to sexual assault and misconduct—to recommend university-wide changes to prevent sexual violence on campus.

*Immediacy and Certainty*:  Providing compensation to Class members should not take years of risky and re-traumatizing litigation. The Settlement offers guaranteed relief to victims far more quickly than protracted litigation with its uncertain results.

*Choice and Sensitivity:* The Settlement's three-tier claims structure allows Class members to choose whether and in how much detail they wish to tell their story. Tier 1 is for those who do not wish to engage; every Class member is eligible for a guaranteed minimum $2,500 payment, no questions asked. Those payments will be automatically sent to all known Class members; any other Class member need only

- 3-

submit a simple statement of class membership to claim her Tier 1 payment. In addition to the guaranteed minimum, every Class member is eligible to make a claim for up to $250,000. Those who wish to tell their story in writing on a simple claim form are eligible for up to $20,000 (Tier 2). And those who choose to further engage by providing an interview are eligible for up to $250,000 (Tier 3). All Tier 2 and 3 claims will be evaluated by a Court-appointed independent Special Master who will also make all allocation decisions.

*Simplicity*: The Settlement's claims process is simple by design—no action for Tier 1, simple claim form for Tier 2, simple claim form and interview for Tier 3. This is to make the process easier and more comfortable for victims, and to ensure they can complete it without having to hire an attorney. To the extent any Class member wants help navigating even this simple process, Interim Class Counsel stand prepared to provide all necessary assistance, without reducing Class Members' compensation by taking any attorneys' fees or costs out of it.

*Privacy:* The Settlement structure and process is designed to provide a safe, private place for victims to tell their stories—to the extent and in the way they choose—and get compensation for the harms they suffered without having to go through invasive, adversarial, public, slow, and risky litigation.

\*   \*   \*

For all these reasons, Plaintiffs and Interim Class Counsel submit that the Settlement is not just fair, reasonable, and adequate—it is an outstanding result for the Class. Plaintiffs respectfully request that the Court (1) grant preliminary approval, (2) direct notice to the Class, and (3) schedule a fairness hearing.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

This litigation arises from Tyndall's alleged abuse of women at USC's student health center and USC's corresponding inaction. Plaintiffs allege that, over his nearly

1694697.1

30 years as an obstetrician-gynecologist at the student health center, Tyndall abused his position of trust and authority to molest, harass, and abuse young women. As alleged in the Consolidated Class Action Complaint [Dkt. 47], Tyndall committed a range of abuse, from invasive touching of patients' bodies (including nonconsensual vaginal penetration) to offensive racial and sexual statements, to taking photographs of women's genitalia—all under the guise of medical treatment but without clear medical justification. Plaintiffs further allege that USC gave Tyndall access and opportunity to abuse Class members, and, despite receiving numerous complaints about Tyndall's misconduct over the years, failed to adequately investigate or remedy the ongoing abuse.

Tyndall's decades-long pattern of abuse first came to light in May 2018 via the *Los Angeles Times*.[3] Based on interviews with patients, health center employees, and Tyndall himself, the *Times* reported in detail on Tyndall's history of abuse, as well as USC's knowledge of it and its failure to adequately respond. Scores of patients and health center employees complained about Tyndall, while USC appears to have missed or ignored repeated red flags: (1) coworkers of Tyndall who complained to supervisors about Tyndall inappropriately touching and photographing patients during exams; (2) patients who sent letters to the health clinic's oversight committee; (3) chaperones who complained to the University about Tyndall's conduct; and (4) patients who complained to other clinic employees, who in turn reported it to their supervisors.

USC admitted in a statement that it had received eight complaints about Tyndall between 2000 and 2014[4]—although the evidence suggests it had received many more.

---

[3] *See* Los Angeles Times, A USC Doctor Was Accused of Bad Behavior With Young Women For Years. The University Let Him Continue Treating Students (May 16, 2018), available at http://www.latimes.com/local/california/la-me-usc-doctor-misconduct-complaints-20180515-story.html.

[4] *See* University of Southern California Press Room, Statement of Facts, May 15, 2018, available at https://pressroom.usc.edu/statement-of-facts-may-15-2018/.

- 5-

1   USC further admitted that "[s]everal of the complaints were concerning enough that it

2   is not clear today why the former health center director permitted Tyndall to remain in

3   his position," and expressed regret over the then-director's failure to "elevate these

4   complaints for proper investigation."

5         Tyndall's abuse of patients continued until 2016, when a nurse, whose previous

6   complaints about Tyndall had been ignored, took her concerns to the campus's crisis

7   center. Following that report, along with a near-inadvertent discovery in Tyndall's

8   office of photographs of patients' genitalia, USC finally told Tyndall not to return to

9   the health center, and in 2017 USC allowed him to quietly resign with a financial

10  payout.

11        **B.    Procedural History**

12              **1.    Initial Complaint Filings and Consolidation.**

13        Soon after the news broke about Tyndall, lawsuits were filed in federal and state

14  courts. On August 13, 2018, this Court consolidated the federal cases[5] under Rule

15  42(a) and appointed Interim Class Counsel under Rule 23(g). [Dkt. 45.] On August 28,

16  2018, Plaintiffs filed their Consolidated Class Action Complaint. [Dkt. 47.][6]

17              **2.    Intensive Information Gathering.**

18        Soon after consolidation, the parties began discovery. USC informed Interim

19  Class Counsel that it wished to explore an early and comprehensive resolution of the

20  claims of Tyndall's former patients.[7] Given the parties' early focus on resolution,

21

22  ---

    [5] *Sutedja v. USC*, No. 2:18-cv-04258-SVW-GJS (C.D. Cal. filed May 21, 2018); *Doe
23  A.T. v. USC*, No. 2:18-cv-04940-SVW-GJS (C.D. Cal. filed June 4, 2018); *Jane Doe
    1 v. Tyndall*, No. 2:18-cv-05010-R-AGR (C.D. Cal. filed June 5, 2018); *O'Conner v.*
24  *USC*, No. 2:18-cv-05125-JFW-AS (C.D. Cal. filed June 8, 2018); *Jane Doe J.L. v.
    USC*, No. 2:18-cv-06115-SVW-GJS (C.D. Cal. filed July 13, 2018).

25  [6] Sixty-six cases against Defendants are also pending in Los Angeles County Superior
    Court and consolidated before Judge Carolyn Kuhl under the lead case caption *Jane
26  Doe 5 v. Tyndall*, No. BC705677 (Cal. Super. Ct. filed May 25, 2018). The settlement
    proposed here resolves one of the state court class actions, *Jane Doe 1 v. USC*, No.
27  BC713383 (Cal. Super. Ct., filed July 9, 2018).

    [7] Joint Decl. ¶ 9; *see also* Tr. of Aug. 13, 2018 Hr'g at 9 (USC represented that "it's
28  looking first and foremost to resolve these issues as expeditiously as it can").

- 6-

1694697.1

Interim Class Counsel's aim was gathering the information necessary to be fully informed and knowledgeable in negotiating a settlement on behalf of the Class, including the size of the putative class, the scope and nature of Plaintiffs' injuries, and the availability and completeness of USC's records concerning Tyndall's treatment of patients.

In August 2018, Plaintiffs served 58 requests for production and interrogatories on USC and noticed the deposition of USC pursuant to Rule 30(b)(6). USC responded by producing USC's Tyndall-related records, including patient and nurse complaints, going back to the 1990s. Joint Decl. ¶ 11. USC also provided details on its health center and registrar records and the number of class members, and made its data and recordkeeping experts available to answer questions. Joint Decl. ¶ 12.

During this time, Interim Class Counsel independently sought guidance from a number of experts. These included specialists experienced in working with sexual assault victims, allocating a class settlement fund to such victims, and designing and implementing institutional changes to prevent sexual abuse in educational and medical contexts. Joint Decl. ¶ 13.

Similarly, Interim Class Counsel interviewed and continuously gathered information from hundreds of Tyndall victims, including the named Plaintiffs. Joint Decl. ¶ 14. From them, Interim Class Counsel obtained a comprehensive understanding of the nature and scope of the victims' injuries, as well as their input and feedback on how to structure settlement terms and claims processes in a way that best met their needs and priorities. Prior to signing the agreement-in-principle term sheet, Interim Class Counsel also discussed its terms with each named Plaintiff and received unequivocal support and approval from everyone.[8]  Plaintiffs all support the

---

[8] *See* Declarations of Betsayda Aceituno, Jane Doe F.M., Jane Doe M.V., Jane Doe A.N., Jane Doe H.R., Mehrnaz Mohammadi, Jane Doe M.S., Jane Doe 4, Jane Doe A.D., Jane Doe C.N., Jane Doe A.R., and Shannon O'Conner. Videos of class representatives are also available at: https://youtu.be/MvQNaglYWrI; https://youtu.be/WWhPtftT_p0; and https://youtu.be/n72nl5Gmw-I.

1   Settlement—not only because it provides substantial financial compensation for their

2   injuries, as well as equitable relief that will prevent similar harm from coming to

3   others, but also because it allows them to put this trauma behind them. *Id.*

### 3.    Mediation with the Hon. Layn R. Phillips.

4

5          The parties engaged one of the most well-respected and experienced mediators

6   in the country: Hon. Layn R. Phillips, who successfully mediated the Michigan State

7   sex-abuse cases. In August 2018, the parties, along with Defendants' insurers,

8   participated in a full-day in-person mediation session with Judge Phillips. They

9   prepared lengthy mediation briefs concerning the merits of their claims and defenses,

10  including research on jury awards and settlement amounts in comparable cases. That

11  first day ended without agreement, but the parties agreed to continue working.

12  Thereafter, they had frequent discussions, both directly and through Judge Phillips, to

13  narrow issues. Joint Decl. ¶ 17; Phillips Decl. ¶ 9. The parties reached an agreement-

14  in-principle and a term sheet outlining the essential terms of the settlement on

15  October 18, 2018. Joint Decl. ¶¶ 17–18; Phillips Decl. ¶ 11.

16         More intensive work followed—more discovery, more expert consultation, and

17  more negotiation, some through Judge Phillips—as the parties continued to work

18  through the details of the agreement, with particular attention to the claims structure

19  and equitable relief. Joint Decl. ¶ 19; Phillips Decl. ¶¶ 10–12. During this time,

20  Interim Class Counsel sought and received from USC and its data consultants further

21  information on class size and composition, and the availability and contents of

22  pertinent records. Joint Decl. ¶ 19; Phillips Decl. ¶ 10. They also continued to consult

23  with experts concerning the appropriate design, process, and language for the

24  Settlement Claims process and notice to ensure it is sensitive and compassionate to

25  claimants, and to ensure the Settlement would provide meaningful equitable relief.

26  Joint Decl. ¶ 19.

27         Negotiations concerning the equitable relief provisions in particular were

28

informed by Interim Class Counsel's consultations with experts, including Dr. Charol Shakeshaft, Nancy Cantalupo, Glenn Lipson, Dr. Julia Lamb, and Dr. Judy Ho. Joint Decl. ¶ 27. These experts, who specialize in crafting policies and procedures for disclosure, reporting, and prevention of sexual violence on campus, in treatment of and communication with victims of sexual violence, and in obstetrics and gynecology, reviewed multiple drafts of the parties' competing proposals concerning equitable relief, participated in numerous conferences with Interim Class Counsel to provide comments and guidance on the proposals, and provided numerous written resources during negotiation and drafting. Joint Decl. ¶ 27. Together they ensured Interim Class Counsel's negotiation of the equitable relief provisions were well informed and focused on achieving the best practicable changes at USC to ensure similar abuse never happens again.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT.[9]

### A.    The Class Definition.

The Class consists of all women who were seen by Dr. George M. Tyndall at USC's student health center between August 14, 1989, and June 21, 2016:  (a) for Women's Health Issues;[10] (b) whose treatment by Tyndall included an examination by him of her breast or genital areas; or (c) whose treatment included the taking of photographs of her unclothed or partially clothed body.

### B.    The Settlement's Benefits to Class Members.

#### 1.    $215 Million to Compensate Class Members.

Defendants will pay $215 million (the "Settlement Amount"), net of attorneys'

---

[9] Unless otherwise specified, all capitalized terms in this brief have the meaning attributed to them in the Settlement Agreement.

[10] "Women's Health Issues" includes but is not limited to any issue relating to breast, vaginal, urinary tract, bowel, gynecological, or sexual health, including contraception and fertility. *See* Settlement Agreement ("Agmt.") § 3.2. A list of Women's Health Issues is attached as Exhibit A to the Settlement, and will also be available to class members on the settlement website.

fees and costs,[11] making this the largest ever class action settlement of sexual assault claims. None of the money will revert to USC.

### a.   Three-Tier Structure Built Around Claimant Choice.

The Settlement's three-tier structure allows Class members to choose how much they want to engage with the claims process. Those who do not want to revisit a private, traumatic event can simply keep the guaranteed Tier 1 payment of $2,500. Those who choose to provide additional information in a claim form about their experience with Tyndall and how it affected them are eligible for up to $20,000, and those who choose to provide an interview are eligible for up to $250,000. The Special Master and her team of experts will evaluate claims and allocate awards to Tier 2 and Tier 3 claimants. Agmt. § 6.4.

This focus on choice ensures that all Class members receive compensation while giving each Class member the autonomy to decide for herself how involved she wants to be in the settlement process.

The process is purposefully simple: no action for Tier 1, simple claim form for Tier 2, simple claim form and interview for Tier 3. This is designed to make the process easier and more comfortable for claimants, and to ensure they can complete it without having to hire an attorney to help. To the extent any Class member requires help navigating this simple process, however, Interim Class Counsel stand prepared to provide all necessary assistance, without reducing Class Member's compensation by taking attorneys' fees or costs out of it.[12]

Payment for each Class member will be determined as follows:

**Tier 1:** Every Class member is eligible for a Tier 1 payment of $2,500, simply by virtue of being a Class member. The Tier 1 payment is simply a guaranteed minimum payment; all Class members are also eligible to

---

[11] Agmt. § 2.35. Defendants will pay Class Counsel's attorneys' fees and costs separately from and in addition to the $215 million Settlement Amount, in an amount to be determined by the Court. *See* Section III(D), below.

[12] Of course, Class members are also free to retain individual counsel to represent and assist them, at their own expense. *See* Fed. R. Civ. P. 23(c).

make claims for Tier 2 or Tier 3 payments.[13] Under no circumstances will a Class member be required to return a Tier 1 payment. Agmt. § 6.4(a).

Due to limitations in USC's records, Class members will receive their Tier 1 payments in one of two ways:

(i)     Those Class members identified through USC's existing health center records (which cover the majority of the class period), will be automatically mailed a Tier 1 payment check for $2,500 on the Effective Date.[14] The Notice will inform Class members whether they have been pre-identified as Class members through USC's records. Agmt. § 6.4(a)(i).

ii)     Those Class members who cannot be identified through USC's records must submit (online or by mail) a simple signed Statement of Class Membership Form. The Claims Administrator will then confirm student status or, for non-students, evaluate the claimant's evidence of Class membership. Tier 1 payments of $2,500 will be sent on the Effective Date or upon confirmation of Class membership, whichever is earlier. Agmt. § 6.4(a)(ii).

**Tier 2:** Each Class member has the option to submit an online or written Claim Form describing her experience with Tyndall, the impact on her, and the harm she suffered. The Special Master's team will assess each Claim Form, and if determined credible, and that the conduct or statements described fall outside the scope of accepted medical standards of care applicable during the relevant time, or that the conduct or statements are otherwise actionable, the Special Master will award a Tier 2 payment between $7,500 and $20,000, subject to Pro Rata Adjustments.[15] Agmt. § 6.4(b).

---

[13] Because the Tier 1 payment is an initial payment, if a claimant is awarded a Tier 2 or Tier 3 payment, the amount of the Tier 1 payment will be deducted from the higher-tier award. For example, a claimant who receives a $2,500 Tier 1 payment check, and who also makes a Tier 3 claim and is awarded $250,000, would receive a Tier 3 payment check for $247,500, which represents her $250,000 Tier 3 award less the initial Tier 1 $2,500 payment she already received. The pendency of a Tier 2 or 3 claim will not affect the timing of a claimant's Tier 1 payment.

[14] The Effective Date is 14 days after the date of the Court's final approval of the Settlement, unless any appeal of final approval is noticed, in which case the Effective Date is the date such an appeal has been fully resolved and final approval upheld.

[15] Depending on how many Class members make higher-tier claims, Tier 2 and Tier 3 payments could end up lower or higher than the stated minimums and maximums, due to pro rata adjustments. *See* Section III(B)(1)(c), below.

**Tier 3:** Tier 3 is for Class members who, in addition to the written Claim Form, are willing to provide information about their experience and its impact in an interview by the Special Master's team. That team will assess each Claim Form and interview, and if determined credible, and that the conduct or statements described fall outside the scope of accepted medical standards of care applicable during the relevant time, or that the conduct or statements are otherwise actionable, the Special Master will award a Tier 3 payment between $7,500 and $250,000, subject to Pro Rata Adjustments. Agmt. § 6.4(c).

### b.    Tier 2 and 3 Claims Will Be Assessed and Allocated by an Experienced Special Master and Expert Team.

The Court-appointed Special Master[16] will call upon experts in relevant medical issues and the unique needs of sexual trauma survivors to assist in reviewing, processing, and allocating Tier 2 and 3 claims. Agmt. § 2.45.  The Special Master and her team will be mindful of the needs of sexual assault victims and how past trauma can affect victims' memories and communications, and take those factors into account when performing the analysis necessary to determine damages and allocate consistently and fairly amongst claimants. Joint Decl. ¶ 23. This approach of relying on an experienced special master, aided by knowledgeable experts, was successfully employed in similar settlements.[17] Joint Decl. ¶ 22.

The parties propose that Hon. Irma Raker (Ret.), who supervised the administration of the *Johns Hopkins* sex-abuse settlement, or alternatively, Hon. Irma E. Gonzalez (Ret.), be appointed as the Special Master. Once appointed, the Special Master, in consultation with the parties and experts, will develop protocols for interviews and other communications with Tier 2 and 3 claimants. Joint Decl. ¶ 24–25.

---

[16] Plaintiffs file a separate Motion for Appointment of Special Master concurrently with this motion.

[17] *See, e.g., Jane Doe No. 1, et al. v. Johns Hopkins Hospital, et al.*, No. 24-C-13-001041 (Md. Cir. Ct. 2014) (class action settlement of claims of surreptitious photographing and inappropriate touching brought by former patients against gynecologist Dr. Nikita Levy and Johns Hopkins University); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379 (Del. Super. Ct. 2012) (class settlement of the claims of 7,000 former patients who were sexually abused by their doctor).

1694697.1

This ensures the best and most compassionate process for Class members, and that the process will be efficient and practical for the Special Master. The Special Master will also hear and decide the appeals of any claimants who wish to challenge their Claim Award. The Special Master's decisions on appeals will be final. Agmt. § 6.6.

### c. Pro Rata Adjustment to Ensure Fairness and Maximum Money Distributed to Class Members.

Once the Special Master has considered and determined awards for all Tier 2 and 3 claims, if the total amount of all Tier 2 and 3 payments is less than the amount remaining in the settlement fund after payment of the Administration Costs and Tier 1 payments ("Settlement Balance"), then all Claim Awards—Tier 1, Tier 2, and Tier 3—will be increased pro rata until the Settlement Balance is reached or all Claim Awards have been increased by 50%, whichever occurs first. Agmt. § 2.33. In other words, final awards could reach up to $3,750, $37,500, and $375,000 for each respective tier.

If the Settlement Balance is not fully disbursed after a 50% Pro Rata Increase, the parties will notify the Court and propose further means of distributing the remainder. Agmt. § 6.9. That may include providing additional notice of the Settlement to non-participating Class members or distributions to appropriate *cy pres* recipients. That said, there will be no *cy pres* distribution unless the Court finds that the parties have in good faith exhausted all reasonable efforts to distribute the remaining funds to the Class. Agmt. § 6.9.

If, on the other hand, once the Special Master has considered and determined awards for all submitted Tier 2 and 3 claims, the sum of all Tier 2 and 3 payments exceeds the Settlement Balance, then Tier 2 and 3 Claim Awards—but not the Tier 1 payments—will be reduced pro rata until the Settlement Balance is reached. Under no circumstances will the Tier 1 payments be reduced.

### 2. Requiring and Enforcing Robust Policy Changes at USC.

A critical feature of the Settlement is equitable relief requiring USC to take

- 13-

1694697.1

specific measures to ensure that similar abuse and misconduct will not happen again. *See* Agmt. Ex. B (Equitable Relief Measures). Negotiations concerning the equitable relief provisions were informed by Interim Class Counsel's extensive consultations with experts specializing in crafting policies and procedures for disclosure, reporting, and prevention of sexual violence on campus, in treatment of and communication with victims of sexual violence, and in obstetrics and gynecology. Joint Decl. ¶ 27.

The resulting Equitable Relief Measures reflect the parties' mutual intent that USC adopt and implement adequate operating and oversight procedures for identification, prevention, and reporting of improper sexual or racial conduct at campus operations with a nexus to USC's Student Health Center. Agmt. Ex. B ¶ 1. This will be accomplished via the following important provisions:

An Equitable Relief Committee to Finalize Details.  While the parties, in consultation with experts, were able to reach agreement on the broad strokes of equitable relief, as well as many details, they also recognized (and experts recommended) that additional time, review, and subject-matter expertise was necessary to finalize some more specific details of the provisions to ensure both feasibility and effectiveness. Accordingly, the first action item, which is already underway, is the immediate designation of an Equitable Relief Committee to finalize the details and implementation of the Equitable Relief Provisions. Agmt. Ex. B ¶ 6. The Committee will consist of three individuals: (1) an expert in university best practices related to prevention and response to sexual violence on campus designated by Plaintiffs; (2) a USC designee; and (3) a third individual chosen by the first two, who will serve as chair of the Committee. *Id*. The Committee will complete its work by April 13, 2019. *Id.*  That permits time for the final details of equitable relief to be included in the Notice and considered by the Court at final approval.

An Independent Women's Health Advocate.  This independent (non-USC) individual, to be selected jointly by the parties and approved by the Court, will serve a

three-year term. Agmt. Ex. B ¶ 2. While the precise nature and scope of the Advocate's duties will be finalized by the Equitable Relief Committee, the Advocate's responsibilities will include ensuring compliance with the various policy reforms set forth in the Equitable Relief Provisions, including changes to the USC Student Health operating and oversight procedures, and the implementation of a new sexual misconduct and sexual violence prevention program. *Id.* The Advocate also will receive and monitor all complaints of improper sexual or racial conduct reported by any patient, student, or personnel at the Student Health Center. *Id.* If the Advocate believes the requirements and goals of the Equitable Relief Measures are not being sufficiently addressed by USC, she can raise those concerns to Class Counsel, the Special Master, and ultimately, the Court, for resolution. *Id.* ¶ 7.

An Independent Consultant on the Task Force.  An Independent Consultant, selected and compensated by Class Counsel, and having expertise in university best practices related to prevention and response to sexual assault and misconduct, will be put on the USC Task Force responsible for conducting a wide-ranging climate survey of USC students as well as existing USC policies and procedures for the disclosure, reporting, and response to sexual violence on campus, and make recommendations of changes to implement in light of the survey results. *Id.* ¶ 5. The report and recommendations of the Task Force will be released publicly to the USC community. *Id.* If the Independent Consultant believes the requirements and goals of the Equitable Relief Measures are not being sufficiently addressed by USC, she can raise those concerns to Class Counsel, the Special Master, and ultimately, the Court, for resolution. *Id.* ¶ 7.

Changes to USC Student Health Procedures.  USC has agreed to adopt and implement a series of detailed operating and oversight procedures for identifying, preventing, and reporting any alleged improper sexual or racial conduct at USC Student Health. *Id.* ¶ 3. These include, among others, pre-hiring background checks of

all new personnel who are expected to have direct patient interaction; annual

verifications of credentials of all clinical personnel; annual education and performance

reviews concerning, identifying, reporting, and preventing improper sexual and/or

racial conduct; and the adoption and implementation of "Sensitive Exam" practices

consistent with medical best practices. *Id.* Further, USC will ensure that its medical

personnel act consistently with the best practice standards recognized by the SCOPE

program of the American College of Obstetricians and Gynecologists. *Id.* ¶ 1.

Sufficient staffing so all female patients can see a female physician, as well as patient

literature informing patients of what to expect during a visit and how to report

inappropriate conduct will be provided. *Id.* ¶ 3. The Independent Women's Health

Advocate is responsible for ensuring compliance with these provisions, and has

recourse to Class Counsel, the Special Master, and the Court should she feel these

measures are not being sufficiently implemented. *Id.* ¶¶ 2,7.

New Sexual Misconduct and Violence Prevention Program.  USC will expand

the services of its Relationship and Sexual Violence Prevention program to include a

new training program designed to prevent sexual misconduct and sexual assault,

including bystander training. *Id.* ¶ 4.

\* \* \*

Taken together, these Equitable Relief Measures ensure meaningful institutional

change will be implemented at USC so that something like this never happens again.

These changes will incorporate the positive changes USC has already made or

committed to making, and implement additional changes developed and overseen by

independent experts that will be most practicable and effective for the specific needs

of the USC structure and community.

**C.**     **Procedure for Opting Out or Objecting to the Settlement.**

Any Class member who decides to opt out of the Class must submit a timely

written request for exclusion on or before the Opt-Out Deadline, in the manner

1694697.1

specified in the Notice and Preliminary Approval Order. All requests for exclusion must be signed with a handwritten signature by the woman seeking to exclude herself from the class. Any Class member whose request for exclusion is defective will be notified and given an opportunity to cure. Agmt. § 3.6.

Likewise, any Class member who wishes to object to the Settlement, or the application of Class Counsel for an award of attorneys' fees and costs and/or for service awards for Plaintiffs, must timely do so in the manner specified in the Preliminary Approval Order and in any subsequent notice or order regarding the application for attorneys' fees and costs and/or for service awards to Plaintiffs.

**D.     Attorneys' Fees Will Be Paid in Addition to the Settlement Amount After Final Approval and After Claims Process.**

Defendants agreed to pay all attorneys' fees and costs separately from and in addition to the $215 million payment to the Class. Agmt. § 8.1. Class member recoveries will not be reduced to pay for attorneys' fees or costs. Interim Class Counsel will not apply for an award of attorneys' fees and reimbursement of costs and expenses until after final approval and after implementation of the claims procedure. *Id.* They have agreed not to request more than $25 million. *Id*. Any fee award will be decided by the Court, and Class members will have the opportunity to review and comment on or object to the fee petition as provided for in Federal Rule of Civil Procedure 23(h). *See also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Approval of the Settlement will not be contingent on the Court approving fees and costs in any particular amount. Agmt. § 8.1.

**IV.     THE CLASS ACTION SETTLEMENT PROCESS, AS AMENDED.**

While the Court is well-familiar with long-standing class action settlement approval procedure, given the newly-effective amendments to Rule 23 governing class settlements, Plaintiffs respectfully set out here the new process.

Pursuant to Federal Rule of Civil Procedure 23(e), class actions "may be settled … only with the court's approval." Rule 23(e)(2) sets forth the criteria the court must

1694697.1

consider in determining whether a proposed class settlement merits approval. But because the court must also consider the perspective of the class members who would be bound by a settlement, the approval process is a three-step process. Further, where, as here, no class had been certified prior to settlement, consideration of class certification is folded into the three-step settlement approval process. The resulting combined approval/certification process is as follows:

*First*, the Court must make a preliminary determination of whether a settlement satisfies the criteria set out in Rule 23(e) (2). At the same time, the Court must determine whether it has a basis for concluding that it likely will be able, after the final approval hearing, to certify the class under the standards of Rule 23(a) and (b). If the answer to both questions is "yes," the Court proceeds to step two.

*Second*, the Court directs combined[18] notice of the proposed Class and the Settlement to class members pursuant to Rule 23(c) (2)(B) and 23(e) (1), which includes a period for class members to voice objections to the settlement, opt out of the proposed class, or to indicate their approval by making claims.

*Third*, the Court holds a hearing to make its final determination of whether the settlement is fair, reasonable, adequate under the criteria set forth in 23(e) (2); and whether the class merits certification.

As detailed below, this Settlement meets the standard for preliminary approval set by 23(e) (1), and Plaintiffs have established a basis for the Court to certify the Class, so notice should be directed to the Class.

## V.   THE PROPOSED SETTLEMENT MERITS NOTICE AND SCHEDULING FOR FINAL APPROVAL.

As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of

---

[18] Advisory Committee's Note on the 2018 Amendments to Fed. R. Civ. P. 23 ("Adv. Cmte. Note"), Subdivision (c)(2) ("It is common to send notice to the class simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class members to decide by a certain date whether to opt out. This amendment recognizes the propriety of this combined notice practice.").

1694697.1

1    continued litigation might otherwise overwhelm any potential benefit the class could

2    hope to claim. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

3    1992) (noting the "strong judicial policy that favors settlements, particularly where

4    complex class action litigation is concerned"); *see also* 4 Herbert B. Newberg & Alba

5    Conte, *Newberg on Class Actions* ("*Newberg*") § 11:41 (4th ed. 2002) (same,

6    collecting cases). This is even more so where, as here, the case concerns an

7    institutional failure to implement adequate practices and policies, and "[a] settlement

8    is vastly superior to a litigated outcome, which would have been a non-consensual

9    process not likely to result in an improved attitude or atmosphere . . . ." *Peoples v.*

10   *Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016) (approving class action settlement

11   in litigation challenging prison's solitary confinement practices).[19]

12          Indeed, the few other courts that have considered class action settlements of sex

13   abuse claims found they merited approval. In *Doe v. The John Hopkins Hosp.*, the

14   Circuit Court of Maryland approved a class settlement of claims of surreptitious

15   photographing and inappropriate touching brought by former patients against

16   gynecologist Dr. Nikita Levy and Johns Hopkins University. No. 24C13001041, 2014

17   WL 5040602 (Md. Cir. Ct. Sep. 19, 2014). And in *Jane Doe 30's Mother v. Bradley*,

18   the Superior Court of Delaware approved a class settlement of the claims of 7,000

19   former patients who were sexually abused by Dr. Earl Bradley at Beebe Medical

20   Center from 1994 through 2009. 64 A.3d 379 (Del. Super. Ct. 2012).[20] Most recently,

21   in *Lecenat v. Perlitz*, No. 3:13-cv-01132-RNC (D. Conn. Feb. 11, 2019), the U.S.

22   District Court for the District of Connecticut granted preliminary approval to a class

23   action settlement under Rule 23 involving claims of sexual abuse of children at a

24   school in Haiti.[21]

---

[19] Internal citations and quotations omitted throughout unless otherwise indicated.

[20] While the *Johns Hopkins* and *Bradley* courts considered class certification under state law, Md. Rule 2-231 and Del. Super. Ct. Civ. R. 23 largely track the federal Rule 23, making their analyses instructive here.

[21] Opinion attached as Ex. 1.

- 19-

1

**A.    The Contemporary Rule 23(e) Standard.**

2

Rule 23 of the Federal Rules of Civil Procedure governs a district court's

3

analysis of the fairness of a settlement of a class action. *See* Fed. R. Civ. P. 23(e).

4

Effective December 1, 2018, amended Rule 23(e) (2) states that a district court should

5

approve a proposed settlement:

6

> only after a hearing and only on finding that it is fair, reasonable, and
> adequate after considering whether:

7

8

> (A) the class representatives and class counsel have adequately
> represented the class;

9

10

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

11

> (i) the costs, risks, and delay of trial and appeal;

12

> (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims;

13

14

> (iii) the terms of any proposed award of attorneys' fees, including timing
> of payment; and

15

16

> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats Class members equitably relative to each other.

17

The Advisory Committee recognized that the various Circuits had

18

independently generated their own lists of factors to consider in determining whether a

19

settlement is fair, reasonable, adequate,[22] and made clear that the "goal of this

20

amendment is not to displace any [Circuit-specific] factor, but rather to focus the court

21

and the lawyers on the core concerns of procedure and substance that should guide the

22

decision whether to approve the proposal."

23

In the absence of caselaw applying and interpreting the amended Rule 23(e) (2),

24

---

25

[22] In the Ninth Circuit, those factors included: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class members to the proposed settlement." *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

26

27

28

- 20-

and because the *Hanlon* factors are similar, caselaw in this Circuit applying the *Hanlon* factors remains instructive here. That said, following the instructions of the Advisory Committee, Plaintiffs will "present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.* As detailed below, the Settlement passes both procedural and substantive muster, and merits preliminary approval.

### B.   The Settlement Was the Result of a Thorough, Informed, Fair Negotiation Process.

As amended, Rule 23(e) requires a Court to ensure that in a proposed settlement, "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e) (2)(A), (B). The Advisory Committee explains that these factors "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."

Considerations at this stage can include "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases," which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.* Also important is the "conduct of the negotiations." *Id.* "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." *Id.* Finally, the Court may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms." *Id.*

All of these procedural concerns are satisfied here.

### 1.   Interim Class Counsel Had All Information Necessary to Negotiate on Behalf of the Class.

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an

informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Indeed, courts have expressly "decline[d] the invitation" to "require formal discovery before presuming that a settlement is fair," noting instead that "[i]n some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 436–37 (3d Cir. 2016). Preliminary approval may be appropriate where the parties "have not reached the discovery stage of litigation" so long as they "possess adequate information concerning the strengths and weaknesses of Plaintiffs' claims." *In re NFL Players' Concussion Injury Litig.*, 301 F.R.D. 191, 199 (E.D. Pa. 2014); *see also id.* at n.6 ("Courts have preliminary approved class action settlements where litigation is in its early stages and minimal discovery has occurred." (collecting cases)).

In other words, the parties need not unearth every last fact of a case before they can settle it; rather, they must learn as much as necessary to ensure that claims are not undervalued or settled prematurely. To require otherwise would defeat one of the central tenets of dispute resolution: the opportunity to fairly settle strong claims without the costs of full-fledged litigation. The relevant analysis doesn't depend on the page count of document productions, nor the hours of depositions taken—instead a court should ask whether the parties have undertaken sufficient steps given the context and circumstance of a particular case to make a reasonable, informed decision to settle Class members' claims. The answer to that question here is "yes."

From the outset, Tyndall's conduct was widely reported in a number of in-depth investigative news articles—many of which included statements from Tyndall's patients, coworkers, USC administrators, and Tyndall himself. These sources revealed extensive information about Tyndall's misconduct and USC's knowledge and inaction.[23] There never was any real dispute that Tyndall sexually abused his female

---

[23] In fact, the Los Angeles Times hosts a page devoted solely to its coverage of the Tyndall story, available at http://www.latimes.com/local/california/la-me-usc-george-

patients for decades and that USC knew and failed to adequately respond. As a result, at all times Interim Class Counsel negotiated with a well-informed *presumption* that Tyndall committed the alleged abuses and USC knew about and failed to address it. Against that backdrop, reaching a fair, informed resolution of this case principally required a clear understanding of: (1) the nature of Tyndall's abuse, including the types of injury inflicted and extent of harm his victims suffered; and (2) the scope of abuse, including how many women he abused.

To learn this information, Interim Class Counsel vigorously investigated. USC's records—which Interim Class Counsel studied—demonstrated that Tyndall engaged in a range of misconduct, which in some cases included abusive physical contact with women and in other cases involved offensive questioning or remarks. Joint Decl. ¶ 11. They also met and interviewed hundreds of Tyndall's former patients to learn firsthand about their trauma. Interim Class Counsel also obtained from USC information about its student health center records, including access to USC's own data experts, allowing Class Counsel to determine class size and the content and completeness of USC's records. Joint Decl. ¶ 12.

Further, before and during the negotiations, Interim Class Counsel consulted with a number of experts, including specialists in working with sexual assault victims, diagnosing and treating PTSD, and crafting and implementing institutional policy changes to prevent sexual abuse in educational and medical contexts—as well as the special master who oversaw the settlement allocation process in the successful *Johns Hopkins* sex abuse class action,[24] among others. And this was to ensure Interim Class Counsel was thoroughly informed and able to take all those variables into account when negotiating the appropriate design, structure, and language for the Settlement Claims process to ensure it is sensitive and compassionate to Class members. *Cf. Doe*

---

tyndall-sg-storygallery.html, which currently links to over forty different articles published since May 2018.

[24] *Jane Doe No. 1 v. Johns Hopkins Hosp.*, No. 24-C-13-001041 (Md. Cir. Ct. 2014).

1   *#1 by Parent #1 v. New York City Dep't of Educ.*, No. 16-cv-1684, 2018 WL 3637962,

2   at \*11 (E.D.N.Y. July 31, 2018) (parties "did not engage in formal discovery" yet

3   counsel "nonetheless conducted a thorough investigation," including by meeting with

4   class members, reviewing documents, and consulting with a child psychologist).

5       Nor is the speed with which the parties reached a resolution a concern: "an early

6   resolution may demonstrate that the parties and their counsel are well prepared and

7   well aware of the strength and weaknesses of their positions and of the interests to be

8   served by an amicable end to the case." *In re AT & T Mobility Wireless Data Servs.*

9   *Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011); *see also Brown v. 22nd*

10  *District Agricultural Assoc.*, No. 15-cv-2578-DHB, 2017 WL 2172239, at \*8 (S.D.

11  Cal. May 17, 2017) (approving settlement "notwithstanding an abbreviated discovery

12  period" where parties "negotiated the Settlement with ample knowledge of the

13  strength and weaknesses of this case and the amounts necessary to compensate Class

14  members for their estimated damages" and "engaged in extensive good-faith, arms-

15  length negotiations, including a full-day early neutral evaluation session before the

16  Court").

17      In sum, Interim Class Counsel's focused, thorough investigation of the

18  necessary information required for settlement here enabled them to come to the

19  mediation table with a fulsome understanding of the strengths and weaknesses of the

20  claims. Joint Decl. ¶ 15. Devoting time and effort to further discovery of already-

21  established facts such as who at USC knew what when would have led to delay and

22  the development of cumulative evidence without advancing the parties' ability to

23  reach a fair resolution. For these reasons, Judge Phillips concluded this litigation was

24  fit for prompt resolution. Phillips Decl. ¶ 13.

25      **2.   The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced, Neutral Mediator.**

26      The close involvement of Judge Phillips throughout the settlement negotiation

27  process underscores the procedural fairness of the Settlement. *See* Adv. Cmte. Note

- 24-

1694697.1

("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Fed. Ins. Co. v. Caldera Med., Inc.*, No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) (Wilson, J.) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

### 3. Attorneys' Fees Were Negotiated Separately and After Monetary Relief for the Class.

Notably, the parties negotiated attorneys' fees for Class Counsel only *after* reaching agreement on the monetary relief for the Class. Phillips Decl. ¶ 11. "The fact that the parties … did not discuss attorneys' fees until all other issues were virtually finalized, is also indicative of a fair and arm's-length process." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs"); *Rodriguez v. Farmers Ins. Co. of Ariz.*, No. CV 09-06786, 2013 WL 12109896, at *5 (C.D. Cal. Aug. 4, 2013) (same).

### C. The Settlement Is Not Just Adequate—It Is Outstanding.

Rule 23(e) (2)(C) and (D) "focus on what might be called a 'substantive' review of the terms of the proposed settlement." Adv. Cmte. Note R. 23. Specifically, amended Rule 23(e) (2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account … the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" and "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e) (2)(C)(ii), (iii). And amended Rule 23(e) (2)(D) considers whether "the proposal treats Class members equitably relative to each other."

- 25-

All these substantive considerations are satisfied here. The Settlement achieves the core goal of the litigation: accountability. It does so by providing substantial compensation to all Class Members, distributed via a fair and compassionate claims process, and by treating Class members equitably relative to one another. And it does so by requiring lasting institutional changes at USC, with independent oversight.

**1.      The Relief Provided for the Class Is Substantial, Particularly in Light of the Costs, Risks, and Delay of Trial.**

The amended Rule instructs courts to consider the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e) (2)(C)(i). As the Advisory Committee explained: "Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." Whether from the amended Rule or *Hanlon,* these risk/benefit-related factors all counsel in favor of preliminary approval here.

**a.      Litigation Is Invasive; Participation in this Settlement Is Not.**

The most significant cost of litigation for Class members is the substantial emotional toll that litigating through trial would impose on each victim. Defendants likely would seek to take victims' testimony through deposition or at trial. Women who filed suit using a Jane Doe pseudonym face having their identities revealed. Testifying requires victims to publicly re-live and recount the traumatic experiences they endured. The *Bradley* court recognized as much when it approved a class action settlement of the claims of 7,000 former patients who were sexually abused by their doctor:

> [T]he emotional costs of litigation cannot be ignored. The victims in this case are … already traumatized. Further litigation would exacerbate the trauma and very likely blow the lid off the patient confidentiality that has been so carefully maintained and protected throughout the litigation thus far. This settlement allows the victims to avoid paying these devastating costs.

64 A.3d at 395–96.; *see also id.* at 404 ("With … litigation behind them . . . all focus

- 26-

1694697.1

1    can now be placed on picking up the pieces as best as possible."). Resolving this case

2    through the Settlement allows Class members the choice to put this behind them

3    instead of re-living painful memories for years in protracted litigation. While public

4    trials play an important societal role, a class settlement that preserves the privacy of

5    those who need or prefer it plays an equally important role in resolving claims of

6    victims without imposing the risk of further trauma and litigation that even a trial

7    victory would impose. We no longer practice trial by ordeal, for good reason. The

8    ordeals already undergone by class members should not be exacerbated as the price of

9    justice.

10              **b.      Litigation Is Slow, and By No Means a Slam Dunk.**

11          The Settlement's significant benefits reflect the strength of Plaintiffs' case on

12    the merits and the likelihood that Plaintiffs would have been able to certify a litigation

13    class, maintain certification through trial, and prevail on their claims. While Plaintiffs

14    believe in the strength of their case, they also recognize that litigation is uncertain,

15    making compromise of claims in exchange for the Settlement's certain, immediate,

16    and substantial benefits an unquestionably reasonable outcome.

17          The *Bradley* court found that sex abuse class action settlement of particular

18    merit because: "This settlement was reached after careful investigation of the facts but

19    without substantial litigation. Had the parties not reached this settlement, years of

20    heated litigation awaited them. … This settlement allows the parties to avoid lengthy

21    (several years at least) and costly litigation in favor of a fair and final resolution now."

22    64 A.3d at 395.. The *Johns Hopkins* court reached a similar conclusion, noting that

23    "Notwithstanding Dr. Levy's widely publicized misconduct, if the case were litigated

24    further, the Plaintiffs would still face difficulties in establishing Johns Hopkins

25    liability and proving damages" and "expensive and protracted litigation for years to

26    come." 2014 WL 5040602, at *4; *see also Syed v. M-I, L.L.C.*, No. 1:12-cv-01718,

27    2017 WL 714367, at *9 (E.D. Cal. Feb. 22, 2017) (finding a wage-and-hour settlement

28

fair and reasonable where litigation risks included "the court's denial of certification of their Rule 23 proposed class").

Here, if Interim Class Counsel were to prosecute these claims through trial and appeal, recovery would come, if at all, years in the future and at far greater risk and expense to the Class. While Plaintiffs are confident in the strength of their claims, they also recognize the potential risks and uncertainty attendant to any litigation. This Settlement obviates such risks and delays in exchange for privacy, choice, immediacy, guaranteed monetary compensation, and accountability.

### 2. The Settlement Claims Process Is Efficient, Accurate, and Sensitive to Claimant's Needs and Privacy.

In assessing whether the "relief provided for the class is adequate," courts also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e) (2)(C)(ii). As the Advisory Committee's notes explain: "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

Here, the Settlement claims process detailed above is uniquely designed to provide an accessible, safe, and private way for Tyndall's victims to tell their stories—to the extent and in the way they choose—and get compensation for the harms they suffered. Its three-tier structure centered on claimant choice is a creative way to maximize payments and simplicity while also allowing for fuller inquiry and greater payment for those who want it.

### 3. The Terms and Timing of the Proposed Award of Attorney's Fees Puts Class Members First.

Rule 23(e) (2)(C)(iii) provides that a court should consider "the terms of any proposed award of attorneys' fees, including time of payment" when determining the

adequacy of relief. Here, the Settlement provides that Defendants will pay Interim Class Counsel's attorneys' fees and costs separately, without any reduction of the Settlement Amount. The Court alone will decide attorneys' fees and costs, and Interim Class Counsel will not seek an amount greater than $25 million. Class members will have the opportunity to comment on or object to any fee petition as set forth in Rule 23(h). And approval of the Settlement will not be contingent on the Court approving fees and costs in any particular amount. *See* Agmt. § 8.1

The intended timing of Class Counsel's request for attorneys' fees here also puts Class members first. Ordinarily, Class Counsel would file their motion for an award of fees and costs at the same time as their final approval papers, and the fee motion would be heard and decided at the final approval hearing. Here, however, Class Counsel propose to file their motion for an award of fees and costs only *after* final approval is decided and the claims process is completed, so that the Court can evaluate that motion with benefit of full and complete information about settlement implementation and payments to the Class.

That said, Interim Class Counsel recognize that under Fed. R. Civ. P. 23 (h) and *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), Class members must be informed of the *amount* of fees Class Counsel intend to seek as part of the final approval process, and also have a right to review and consider the actual fee motion papers and object to the fee sought should they wish. Class Counsel will provide such notice (likely via posting on settlement website) and subsequent objection opportunity when they file their fees motion. This process complies with all fee notice requirements.

### 4. There Are No Undisclosed Side Agreements.

Amended Rule 23(e) (3) requires the parties seeking approval for a class action settlement to "file a statement identifying any agreement made in connection with the proposal." The Settlement includes a side agreement that permits USC to terminate the

Settlement if the number of Class members who opt out exceeds a certain threshold. Class action settlements often contain this type of provision,[25] and the side agreement will be filed publicly. Only the opt out trigger number will be confidential and filed with the Court in a sealed envelope. There are no other agreements to disclose under Rule 23(e) (3).

### 5. The Settlement Treats Class Members Equitably Relative to Each Other.

Finally, amended Rule 23(e) (2)(D) states that a court should consider whether "the proposal treats Class members equitably relative to each other." This factor is intended to ensure that a proposed settlement does not include "inequitable treatment of some Class members vis-a-vis others." Adv. Cmte. Note R. 23.

By design, the Settlement treats Class members equitably by presenting each of them with the same choices within the three-tier structure. All Class members are eligible to receive the same guaranteed minimum $2,500 compensation solely by virtue of being a Class member. And all Class members who choose to submit a Tier 2 or 3 claim are eligible for awards up to $20,000 or $250,000, respectively. For Tier 2 and 3 claims, the Special Master makes a claim award determination within the range for each Tier based on the information provided by each claimant.

Moreover, this process is similar to the court-approved allocation process successfully employed in the *Johns Hopkins* class settlement, where, based on claimant interviews, the special master allocated claim payment amounts among the 9,000 claimants within the ranges set for four claim categories.

The Settlement thus ensures that Class members are treated equitably relative to each other and meets the considerations of Rule 23(e) (2)(D).

\*   \*   \*

---

[25] *See, e.g.*, *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2014 WL 4421308, at \*3 n.2, \*7 (N.D. Cal. Sept. 5, 2014); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV 07-3072 AHM (FMOx), 2009 WL 1065072, at \*4 (C.D. Cal. Mar. 19, 2009).

1      For all the reasons detailed above, the Settlement satisfies all the Rule 23(e) (2)

2  factors and preliminary approval is warranted here.

3  **VI.     THE COURT WILL BE ABLE TO CERTIFY THE CLASS.**

4      In cases where a class has not been certified prior to settlement, the Court must

5  also consider the prospect of class certification in determining whether to direct notice

6  to the class. Adv. Cmte. Note R. 23(e)(2). While the ultimate decision on class

7  certification is not made until the final approval hearing, at the preliminary approval

8  stage the parties must nevertheless "ensure that the court has a basis for concluding

9  that it likely will be able, after the final hearing, to certify the class." Adv. Cmte. Note

10 R. 23(e)(1). Rule 23 governs class certification; to be certified, a class must meet all of

11 the requirements of Rule 23(a), and the requirements of one of the subsections of

12 23(b). Here, Plaintiffs will seek certification under 23(b) (3). As described below, the

13 Class readily meets the requirements of Rule 23.

14     The few courts that have considered certification of sex abuse class actions have

15 granted certification, and indeed found class treatment particularly appropriate. In

16 *Bradley*, the court certified a class of 7,000 former patients who were abused by their

17 doctor, finding certification of their claims appropriate because: "the claims against

18 the [] Defendants arising from the harm caused by Dr. Bradley were largely based on

19 the same factual and legal predicates; [] with a potential class of as many as seven

20 thousand (7000) children, the litigation of individual claims, even if aggregated in

21 some form, would have been impractical and burdensome for all concerned; [] the

22 case involved … victims, …all of whom would have been emotionally traumatized by

23 separate litigation and trials; …[] a class action ensures consistent and transparent

24 resolution of all claims." 64 A.3d at 385. Similarly, the *Johns Hopkins* court certified a

25 class of over 12,000 former patients for claims of surreptitious photographing and

26 inappropriate touching by their gynecologist. 2014 WL 5040602.

27

28

1694697.1

**A.      The Class Meets the Requirements of Rule 23(a)**

**1.      The Class Is Sufficiently Numerous.**

Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all Class members is impracticable." Fed. R. Civ. P. 23(a) (1); *see also Ambriz v. Coca Cola Co.*, No. CV 14-00715 SVW, 2015 WL 12683823, at *2-3 (C.D. Cal. Mar. 11, 2015) (Wilson, J.) (joinder impracticable and numerosity met where putative class contained "about 86 members"). Tyndall practiced at USC's student health facilities for over thirty years. The Class consists of approximately 14,000 to 17,000 women, whose identities are ascertainable through USC's records. Many Class members have since graduated and dispersed around the United States and the world. The large size of the Class and the geographic disparity of its members render joinder impracticable here.

**2.      There Are Common Questions of Both Law and Fact.**

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). The "commonality requirement has been 'construed permissively,' and its requirements deemed 'minimal.'" *Estrella v. Freedom Fin'l Network*, No. C 09-03156 SI, 2010 WL 2231790, at *25 (N.D. Cal. June 2, 2010) (quoting *Hanlon*, 150 F.3d at 1020).

The Supreme Court has held that to satisfy commonality, "'[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). This is because "[w]hat matters to class certification . . . is not the raising of common questions -- even in droves -- but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (emphasis in original). Thus, the putative class's "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—

- 32-

1    which means that determination of its truth or falsity will resolve an issue that is

2    central to the validity of each one of the claims in one stroke." *Id.* at 349.

3        Here, the claims of all Class members focus almost entirely on *Defendants'*

4    conduct—that of Tyndall in his sexual abuse of the victims, and USC's hiring,

5    retaining, supervising, and failing to respond to complaints about Tyndall, as well as

6    its failure to have appropriate policies and procedures in place to protect students from

7    sexual assault. The circumstances of this case raise common questions of law and fact,

8    the resolution of which will generate common answers "apt to drive the resolution of

9    the litigation" for the Class as a whole. *Dukes*, 564 U.S. at 350. Because Plaintiffs

10   allege that their and the Class's "injuries derive from [D]efendants' alleged 'unitary

11   course of conduct,'" they have "'identified a unifying thread that warrants class

12   treatment.'" *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y.

13   2012); *Syed*, 2017 WL 714367, at *5 ("Commonality is generally satisfied where . . .

14   the lawsuit challenges a system-wide practice or policy that affects all of the putative

15   Class members.").

16       Courts have found commonality satisfied in sex abuse class actions. *See*

17   *Bradley*, 64 A.3d at 385–86 (granting certification of class action involving 7,000

18   victims of physician sexual assault, acknowledging "the common threads that run

19   through the claims" and finding commonality satisfied because victims' claims "were

20   largely based on the same factual and legal predicates"); *Jane Doe 2 v. The*

21   *Georgetown Synagogue-Kesher Israel Congregation*, No. 2014 CA 007644 B, slip op.

22   at 14 (D.C. Super. Oct. 24, 2018) (certifying a class of over 150 women surreptitiously

23   videotaped disrobing and bathing in the National Capital Mikvah's ritual bath by

24   Rabbi Bernard Freudel, finding commonality satisfied because "Class members share

25   common questions of law or fact, such as whether Defendant Freundel videotaped

26   females without their consent and whether Defendant Freundel acted as an agent or

27

28

- 33-

1694697.1

employee of any of the Defendants within the course and scope of his employment").[26]

Here, some of the questions common to the Class include whether Tyndall engaged in sexual harassment, invasion of privacy, assault, and battery; whether Tyndall's wrongful conduct was committed within the scope of his employment at USC: whether USC had knowledge of Tyndall's wrongful conduct; whether USC facilitated Tyndall's pattern and practice of sexual harassment, invasion of privacy, assault, and battery; whether USC or Tyndall engaged in conduct designed to suppress complaints or reports regarding Tyndall's conduct; whether USC negligently retained or supervised Tyndall; whether USC ratified Tyndall's conduct; and whether USC is vicariously liable for Tyndall's conduct. The answers to such questions are the same no matter who in the Class asks them, or how many times they are asked, and the answers to these common questions are central to the litigation.

In a case like this, where the exact factual circumstances of each Class member's injury may vary, commonality exists where a course of conduct subjects all Class members to a similar risk or threat of harm. *See, e.g., D.G. v. Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010) ("Though each Class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a risk of impermissible harm to all [proposed Class members]."); *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 295 (D. Mass. 2011) (commonality requirement satisfied by allegations of "specific policies and/or failures" that "resulted in specific harms to each named Plaintiff and that pose a continuing threat to the entire Plaintiff class"). Accordingly, Rule 23's commonality requirement is satisfied here.

### 3. Plaintiffs' Claims Are Typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a) (3)). "The test of typicality is 'whether other members have the same or similar injury, whether the

---

[26] Opinion attached as Ex. 2.

- 34-

1694697.1

action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

The same course of conduct that injured Plaintiffs injured other Class members. While the precise circumstances of each class member's interaction with Tyndall may vary, all suffered harm from USC's failure to address Tyndall's behavior. Therefore, typicality is satisfied.

### 4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.

Courts ask two questions to evaluate whether the adequacy of representation requirement of Rule 23(a) (4) is satisfied: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, the answer to each of those questions is "yes."

### a. Plaintiffs Have No Conflicts of Interest and Have Diligently Pursued the Action on Behalf of the Class.

Plaintiffs have agreed to serve in a representative capacity, communicated diligently with Interim Class Counsel, shared their stories, reviewed the complaint, and consulted with counsel on settlement. Plaintiffs will continue to act in the best interests of the class members, all of whom have an interest in proving that Tyndall unlawfully harmed the women he saw for treatment at the student health center, and that USC failed to adequately protect women from Tyndall. Various Plaintiffs, moreover, visited Tyndall at the clinic at different times within the class period. There are no conflicts between Plaintiffs and the Class.

### b. Interim Class Counsel Are Qualified to Serve as Class Counsel.

Interim Class Counsel are qualified to serve as Class Counsel. Collectively, they have decades of experience successfully representing plaintiffs and aggrieved classes

1  in complex class action litigation, including in sexual misconduct cases. *See* [Dkt. 34.]

2  **B.     The Class Meets the Requirements of Rule 23(b)(3).**

3  As to the familiar predominance and superiority requirements of Rule 23(b) (3),

4  when "[c]onfronted with a request for settlement-only class certification, a district

5  court need not inquire whether the case, if tried, would present intractable

6  management problems . . . for the proposal is that there will be no trial." *Amchem*

7  *Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that subdivision 23(b)(3)(D)

8  drops out of the analysis).

9  **1.     Common Issues of Law and Fact Predominate.**

10  The predominance inquiry "asks whether the common, aggregation-enabling,

11  issues in the case are more prevalent or important than the non-common, aggregation-

12  defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045

13  (2016). "When one or more of the central issues in the action are common to the class

14  and can be said to predominate, the action may be considered proper under Rule 23(b)

15  (3) even though other important matters will have to be tried separately, such as

16  damages or some affirmative defenses peculiar to some individual Class members."

17  *Id.* "[T]he office of a Rule 23(b)(3) certification ruling . . . is to select the method best

18  suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn.*

19  *Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). Thus, "[w]hen common questions

20  present a significant aspect of the case and they can be resolved for all members of the

21  class in a single adjudication, there is clear justification for handling the dispute on a

22  representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

23  Common questions of law and fact predominate here. As noted above, there are

24  dozens of common legal and factual issues that lay "at the core of each Class

25  member's case—they would 'prevail or fail in unison.'" *Ambriz*, 2015 WL 12683823,

26  at *4. All Class members have Title IX claims that USC's failure to discipline Tyndall

27

28

1694697.1

amounts to unlawful discrimination.[27] Because of this shared federal claim, a choice-of-law analysis would be superfluous and unnecessary.[28] Moreover, all of the claims center on Tyndall's misconduct and that of USC, which conduct is common to all Class members:  whether and when USC had notice of Tyndall's abusive conduct and statements; whether and when USC should have taken corrective action; why it failed to do so; whether Tyndall's conduct was medically justified; and whether his conduct can be vicariously imputed to USC. *See Johns Hopkins*, 2014 WL 5040602, at *2 (common questions included vicarious liability and when university knew of doctor's behavior). Much of the same evidence would be necessary to establish liability in each victim's case, if brought individually.

In contrast to these numerous common issues, the individual questions are few, and generally only concern issues of individual damage calculation. Indeed, differences that "go primarily to damages . . . cannot destroy predominance." *Ambriz,* 2015 WL 12683823, at *4. The predominance test is satisfied here. Of course, should any Class member decide to opt out and pursue her claim individually, Rule 23(b)(3) and this Settlement allow for that as well.

## 2.    Class Treatment Is Superior in This Case.

Rule 23(b) (3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy."

The Settlement allows all of Tyndall's victims to receive compensation efficiently, instead of limiting recovery to women willing to step forward as a plaintiff. Collective action is plainly superior in cases involving traumatic injuries, as victims of assault or abuse often do not wish to subject themselves to litigation, whether to avoid

---

[27] *See* Tr. of Aug. 13, 2018 Hr'g at 6 ("[T]he court makes this observation: It does seem established, although it isn't necessarily intuitive, that the Title IX does apply to this type of complaint").

[28] Additionally, because the conduct at issue occurred in California, all Class members could assert colorable claims under California law. *See Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 615-16 (1987).

making their experience public, having to testify about it, or having to confront their abuser in court. *See, e.g., Doe v. Roman Catholic Diocese of Covington*, No. 03-CI-00181, 2006 WL 250694, at *5 (Ky. Cir. Ct. Jan. 31, 2016) ("The class action procedure has encouraged a large number of people to come forward who would otherwise never have done so had they been left to their individual devices."); *Bradley*, 64 A.3d at 385 (certified sexual abuse settlement class where the victims "would have been emotionally traumatized by separate litigation and trials" and "a class action ensures consistent and transparent resolution of all claims"). Thus, the class action serves as a valuable, vastly superior mechanism in cases like these, where those individuals who choose to come forward and speak up may obtain justice for those who cannot.

The Settlement is also specifically designed so that members do not have to wholly surrender control of their claims: the Settlement contemplates individualized consideration of particular claims through the Special Master's administration of the three-tiered settlement structure. This focus on claimant choice is a creative way to maximize payments and simplicity, while allowing for fuller inquiry and greater payment for those who want it. This proposed process incorporates the efficiency of the class mechanism with the particular needs of Class members in this case. The result: an efficient claims process that provides fair compensation to all victims.

Because the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Class under Rule 23(b)(3) is appropriate.

## VII.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE.

Once a court has determined that giving notice of a proposed settlement is justified (by preliminarily approving settlement and determining the court will be able to certify the class at final hearing), the Court must direct notice to the Class pursuant to Rule 23(e)(1) and 23(c)(2)(B). The proposed Notice and notice program conform to

- 38-

the mandates of Rule 23 and due process. *See* Fed. R. Civ. P. 23(c) (2) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."); *see also* Adv. Cmte. Note R. 23(c)(2) (endorsing simultaneous notice of settlement and class action).[29] "The ultimate goal of giving notice is to enable Class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or make claims." *Id.* In some cases, the court and counsel "may wish to consider the use of class notice experts or professional claims administrators." *Id.* In opt-out actions, the proposed method "should be as convenient as possible, while protecting against unauthorized opt-out notices." *Id.*

The Notice here was designed by an experienced and well-qualified notice provider, JND, selected by Interim Class Counsel after a competitive bidding process. Joint Decl. ¶ 30; Keough Decl. ¶ 3. It includes all the information required under Rule 23(c) (2)(B): the nature of the action, the class definition, a summary of the class claims, that a Class member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, and the binding effect of final approval. Keough Decl. Exs. B-1 and B-2 (Long-Form Notices). The Notice includes all information necessary for Class members to make informed decisions about making a claim.

While mailed notice is not required, *see Briseno v. ConAgra Foods, Inc*, 844 F.3d 1121, 1129 (9th Cir. 2017), here it is the best notice practicable. To ensure that all women who may have seen Tyndall learn about the Settlement and their rights, notice will be mailed to *all* women who were USC students during the class period and whose contact information is in USC's records. Keough Decl. ¶ 13. Additionally, the notice will be published in media likely to be viewed by Class members, such as

---

[29] "It is common to send notice to the class simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class members to decide by a certain date whether to opt out. This amendment recognizes the propriety of this combined notice practice." *Id.*

1694697.1

the *Daily Trojan* and USC's alumni magazine, and as part of an online notice campaign. *Id.*

The Notice should be approved and directed to the Class.

## VIII.  THE PROPOSED FINAL APPROVAL HEARING SCHEDULE.

The last step in the approval process is the final approval hearing, at which the Court may hear any evidence and argument necessary to evaluate the Settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of settlement approval, and Class members, or their counsel, may be heard in support of or in opposition to the Proposed Settlement. Plaintiffs' respectfully request the Court enter the proposed schedule attached as Attachment A.

## IX.    CONCLUSION

The story of George Tyndall's tenure at USC is a story of abuse and victimization and an institution that, for too long, looked the other way. This Settlement brings a fitting end to that story, achieving this litigation's central goal of accountability. It provides real, immediate, and certain compensation for thousands of women—no less than $2500 and up to $250,000 each, net of attorneys' fees and costs—while allowing *them* to choose whether and how much to tell of their stories. And it ensures lasting institutional change at USC to prevent anything like this from ever happening again. In these ways, it is more than just fair, reasonable, and adequate—it is an outstanding result for the Class.

For all these reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval, (2) direct notice to the Class, and (3) schedule a fairness hearing.

1694697.1

1     DATED:  February 12, 2019.            Respectfully submitted,

2                                           HAGENS BERMAN SOBOL SHAPIRO LLP

3                                           By ___/s/ Steve W. Berman_____

4                                                 Steve W. Berman

5                                           Shelby R. Smith
                                            1301 Second Avenue, Suite 2000
6                                           Seattle, WA 98101
                                            Tel.: 206-623-7292
7                                           Fax: 206-623-0594
8                                           Email: steve@hbsslaw.com
                                            Email: shelby@hbsslaw.com
9

10                                          Elizabeth A. Fegan
                                            Emily Brown
11                                          HAGENS BERMAN SOBOL
                                            SHAPIRO LLP
12                                          455 N. Cityfront Plaza Dr., Suite 2410
13                                          Chicago, IL 60611
                                            Telephone: 708-628-4949
14                                          Facsimile: 708-628-4950
15                                          Email: beth@hbsslaw.com
                                            Email: emilyb@hbsslaw.com
16

17                                          Jonathan D. Selbin
18                                          Annika K. Martin
                                            Evan J. Ballan
19                                          LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP
20                                          275 Battery Street, 29th Floor
21                                          San Francisco, CA 94111-3339
                                            Tel.: (415) 956-1000
22                                          Fax: (415) 956-1008
23                                          Email: jselbin@lchb.com
                                            Email: akmartin@lchb.com
24                                          Email: eballan@lchb.com
25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daniel C. Girard
Elizabeth A. Kramer
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
Tel.: (415) 981-4800
Fax: (415) 981-4846
Email: dgirard@girardsharp.com
Email: ekramer@girardsharp.com

*Plaintiffs' Executive Committee and
Interim Class Counsel*

Joseph G. Sauder
Matthew D. Schelkopf
Lori G. Kier
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel: (610) 200-0580
Fax: (610)727-4360
Email: jgs@sstriallawyers.com
Email: mds@sstriallawyers.com
Email: lgk@sstriallawyers.com

Jonathan Shub
KOHN SWIFT & GRAF, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA 19103-7225
P: 215-238-1700
F: 215-238-1968
E: jshub@kohnswift.com

*Proposed Additional Class Counsel*

1

**ATTACHMENT A**

2

Plaintiffs propose the following schedule for further settlement proceedings:

3

4

| **Event** | **Date** |
|---|---|
| Claims Administrator sends Notice ("Notice Date") | 28 days after entry of preliminary approval order or 4/18/2019, whichever is later |
| Objection and Opt-out Deadline | 90 days after Notice Date |
| Motion for Final Settlement Approval Due | No later than 49 days before Final Approval Hearing |
| Deadline to Submit Claim Forms and Statement of Class Membership Forms | 120 days after Notice Date |
| Final Approval Hearing | Monday, August 26, 2019 |
| Special Master files Report on Claims Process | 28 days after completion of Claims Process |
| Motion for Award of Attorney's Fees, Costs, and Service Awards to Class Representatives ("Fee Motion") Due | 14 days after Special Master files Report on Claims Process |
| Deadline to Object to Fee Motion | 30 days after Fee Motion is filed and made available to Class Members on the Settlement Website |
| Reply in Support of Fee Motion Due | No later than 14 days before the Hearing on the Fee Motion |
| Hearing on Fee Motion | TBD |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1694697.1

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GESNER LECENAT a/k/a LECENAT GESNER JASON MAXWEL DERIZA a/k/a DERIZA JASON MAXWEL a/k/a JASON MAXWEL DERIZARD a/k/a DERIZARD JASON MAXWEL, individually and on behalf of themselves and all others similarly situated, | Civil Action No.: 3:13-cv-01633-RNC 3:14-cv-00668-RNC |

Plaintiffs,

v.

DOUGLAS PERLITZ et al.,

Defendants.



[~~PROPOSED~~] PRELIMINARY APPROVAL ORDER

Plaintiffs, Gesner Lecenat a/k/a Lecenat Gesner and Jason Maxwel Deriza a/k/a Deriza Jason Maxwel a/k/a Jason Maxel Derizard a/k/a Derizard Jason Maxwel, by and through their counsel, having moved this Court pursuant to Fed. R. Civ. P. 23 for a preliminary approval of a proposed Class Settlement in accordance with the terms of the Settlement Agreement submitted to this Court; the Court having read and considered the Settlement Agreement, and Defendants Father Paul E. Carrier, S.J.; Hope E. Carter; Fairfield University; The Society of Jesus of New England, Inc., and Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta, American Association, U.S.A., Inc. a/k/a Order of Malta, American Association USA (collectively "Defendants") having consented to the entry of this Order,

IT IS HEREBY ORDERED:

1. The Settlement Agreement, and all of its terms and conditions, is preliminarily approved as fair, just, reasonable and adequate, subject to further consideration at a final approval hearing (the "Final Approval Hearing"). All capitalized

44

terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement.

2.      For purposes of settlement only, the Court conditionally certifies the Settlement Class consisting of:

> All persons who, during the Class Period, were subject to Sexual Abuse on the island of Hispaniola by Douglas Perlitz, Father Carrier, or any other person affiliated with the school, programs, facilities, or orphanage commonly known as "Project Pierre Toussaint" or "PPT" and who claim that such Sexual Abuse was caused by or related to any act or omission of any Defendant.

Excluded from the Settlement Class are all persons who settled their claims in the cases consolidated with *Jean-Charles v. Perlitz,* No. 3:11-cv-00614-RNC, or in connection with those consolidated cases; and all persons who made claims in the Action and as to whom all such claims were dismissed.  For purposes of this Settlement Class definition, "Class Period" means the period from January 1, 1996 through July 1, 2009; "Sexual Abuse" means all forms of sexual-related contact, molestation, touching, fondling, behavior, activity, interaction, exploitation, coercion, threats, and/or grooming; included in this definition are physical assault and/or battery in connection with such abuse and "Action" means the above-captioned proceedings, along with all of the cases consolidated with them.

3.      The Court finds, subject to the Final Approval Hearing and solely within the context of and for the purposes of settlement, that the Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, the Settlement Class is so numerous that joinder of all members is impracticable; there are questions of fact and law common to the Settlement Class (*e.g.*, whether Defendants are liable for any Sexual Abuse covered by the Settlement Class); the claims of the Class Representatives are typical of the claims of the members of the Settlement Class; the Class Representatives and Class Counsel will fairly and adequately protect the interests of the

members of the Settlement Class; common questions of law or fact predominate over questions affecting individual members; and a class action is a superior method for fairly and efficiently adjudicating the Action.

4.      If the Settlement Agreement does not receive the Court's final approval, or if final approval is reversed on appeal, or if the Settlement Agreement is terminated or otherwise fails to become effective, the Court's grant of class certification will be vacated, and the Class Representatives and the Settlement Class will once again bear the burden of establishing the propriety of class certification.  If that happens, neither the certification of the Settlement Class for settlement purposes, nor any other act relating to the negotiation or execution of the Settlement Agreement may be considered as a factor in connection with any class certification issue(s).

5.      For purposes of settlement only, the Court appoints Plaintiffs, Gesner Lecenat a/k/a Lecenant Gesner and Jason Maxwel Deriza a/k/a Deriza Jason Maxwel a/k/a Jason Maxwel Derizard a/k/a Derizard Jason Maxwel as Representative Plaintiffs. The Court further appoints Simmons Hanly Conroy and Law Offices of Mitchell Garabedian as Class Counsel. The Court finds that these attorneys are competent and capable of exercising the responsibilities of Class Counsel and that Plaintiffs Gesner Lecenat and Maxwel Deriza will adequately protect the interests of the Settlement Class.

6.      The Court appoints KCC LCC as the Claims Administrator pursuant to Fed. R. Civ. P. 53(c) to supervise and administer the notice as well as the processing of claims in accordance with the terms of the Settlement Agreement.

7.      The Court appoints Hon John M. Greaney (Ret.) to act as Claims Assessor with the duties and functions described in the Settlement Agreement.

8.      The fees of the Claims Administrator and of the Claims Assessor shall be paid from the Settlement Administration Fund.  If the total cost of Claims Administration, including the fees of the Claims Assessor, exceeds the amount included in the Settlement Administration Fund, any additional costs of Claims Administration shall be paid out of

the Settlement Fund. If, at the conclusion of the Claims Administration process, the Settlement Administration Fund has not been fully exhausted, the balance remaining in the Settlement Administration Fund shall be returned to the Defendants.

9.      The Court approves the form and content of the Class Notice and Radio Publication Notice, attached hereto as Exhibit 1 and 2 (and to the Settlement Agreement as Exhibits D and F), and the Poster Notice attached hereto as Exhibit 3, and directs that Class Counsel and the Claims Administrator shall serve same upon the Settlement Class Members (by radio broadcast publication, poster publication, through newspaper publication, and by website as set forth in the express terms of the Settlement Agreement) no later than _March 29, 2019_. The Court finds that service of the Class Notice, Radio Publication Notice and Poster Notice in this manner, including newspaper publication as provided in III.E.3 of the Settlement Agreement, constitutes the best notice practicable under the circumstances to Settlement Class Members, and complies fully with the provisions set forth in Federal Rules of Civil Procedure, Rule 23, and any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law.  The Court further finds that the Class Notice, Radio Publication Notice and Poster Notice clearly and concisely inform the Settlement Class Members of their rights and options with respect to the proposed settlement, in plain, easily understood language, in conformance with the requirements of Rule 23. The Court authorizes the parties, through their counsel, to make non-substantive changes upon which they agree to the Class Notice, Radio Publication Notice and/or Poster Notice, and to the content of the notice that may appear in the newspaper, as may be required.

10.     The Court approves the form and content of the Claim Forms attached hereto as Exhibits 4, 5, and 6 (and to the Settlement Agreement as Exhibit A, B, and B.).

11.     Settlement Class Members must submit completed Claim Forms to participate in the settlement by the Final Claims Bar Date, which

is  May 13, 2019 .

12.     As set forth in the Class Notice, the Settlement Class Members shall be afforded the right to either opt out from or object to the final approval of this Settlement Agreement.

13.     Settlement Class Members shall have until _May 13, 2019_ to opt out of the Settlement Class.  Any Settlement Class Member who opts out shall be excluded from the Settlement Class, and shall have no rights under the Settlement Agreement.  A request for exclusion must be in writing and state the Settlement Class Member's name, address and telephone number and state in English or Haitian Kreyol that the Settlement Class Member wants to be excluded from the Settlement Class in the Perlitz Class Action Litigation.  The request must be signed by the Settlement Class Member, dated and submitted according to the directions provided in the Class Notice by _May 13, 2019_ .

14.     All Settlement Class Members who do not opt-out shall have until _May 13, 2019_ to object to the proposed settlement.  Only Settlement Class Members shall have the right to object to the settlement.  If a Settlement Class Member seeks to object, the procedure and requirements to do so are fully set forth in the Class Notice. To do so, the Settlement Class Member must submit: (1) a written statement in proper format explaining the objection(s) with specificity signed by the Settlement Class Member and identifying the name, address, telephone number of the person objecting; (2) any documents or other material the Settlement Class Member wants the Court to consider in support of the objection; (3) proof that the Settlement Class Member qualifies as a Settlement Class Member; (4) a statement whether the objection applies only to the Settlement Class Member, a specific subset of the Settlement Class, or to the entire Settlement Class.  The objection must be filed with the Court on or before _May 13, 2019_ ; and be mailed to the Claims Administrator and Class Counsel at the addresses set forth in the Class Notice.  Any Settlement Class

Member objecting to Final Approval of the Settlement Agreement may, but need not, appear at the Final Approval Hearing, at the Settlement Class Member's own expense, individually or through counsel of the Settlement Class Member's choice. Any Settlement Class Member who fails to timely object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in this action. At any time prior to the Final Approval Hearing, Class Counsel and Defendants shall have the right to respond in writing to any objections timely received.

15.     The Final Approval Hearing shall be held before this Court on _June 5___, 2019 at _2:00_ at which time the Court will consider the entry of the Final Approval Order and will determine any amount of fees and costs that should be awarded to Class Counsel. Any Settlement Class Member may, but need not, appear at the Final Approval Hearing, at the Settlement Class Member's own expense, individually or through counsel of the Settlement Class Member's choice and at the Settlement Class Member's own expense. Each Settlement Class Member who intends to appear at the Final Approval Hearing must file a Notice of Appearance with the Court within fourteen (14) calendar days prior to the Final Approval Hearing. If a Settlement Class Member, individually or through an attorney, intends to address the Court at the Final Approval Hearing in a language other than English, the Settlement Class Member must identify a court-approved interpreter in the Notice of Appearance. Notice of any such appearance shall be served, on or prior to the date of its filing, on the Claims Administrator. The Claims Administrator shall serve any such Notice of Appearance on Class Counsel and Defendants' Counsel within three (3) calendar days of receipt.

16.     All proceedings in *Gervil St. Louis et. al v. Douglas Perlitz et. al*, No. 3:13-cv-01132 (RNC), and all cases consolidated with it, are hereby stayed other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement. No discovery shall be permitted other than as may be directed by the Court

upon the proper showing by the person seeking such discovery by motion properly noticed and served in accordance with this Court's Local Rules.

IT IS SO ORDERED.

Dated: _February 11, 2019_

By: _/s/ Honorable Robert N. Chatigny_
The Honorable Judge Robert N. Chatigny
United States District Court
District of Connecticut

# EXHIBIT 1

# If You Were Sexually Abused By Douglas Perlitz Or Someone From Project Pierre Toussaint, You Could Get Money From Class Action Settlement

*To Get Money You **MUST** Complete The Attached Claim Form By[**DATE**].*



People who attended and participated in programs at the Project Pierre Toussaint school and orphanage say they were sexually abused. They have sued Father Paul E. Carrier, S.J., Hope E. Carter, Fairfield University, The Haiti Fund, Inc., The Society of Jesus of New England, Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta, American Association, U.S.A. Together these people and organizations that were sued are called the Defendants.

If you were sexually abused while attending or participating in programs at the Project Pierre Toussaint (also called "PPT") school or orphanage, or if you were sexually abused by anyone affiliated with PPT, between January 1, 1996 and July 1, 2009 you are included in this class action lawsuit as a "Settlement Class Member" and may be able to get money from this proposed settlement.

To get money you must complete the attached Claim Form and submit it with the documents it asks for by [DATE].

**You are not being sued and this is not a lawsuit against you.**
**You do not have to pay anyone to get your settlement money, but you will be responsible for any taxes on your settlement money.**

If you do not submit a Claim Form on time, you will not be able to get settlement money.

If you don't do anything, you will not get any settlement money and you will not be able to sue any of the Defendants for sexual abuse at PPT or by a PPT-affiliated person that happened between January 1, 1996 and July 1, 2009.

If you don't want to get settlement money and you *want* to be able to sue any of the Defendants for abuse at PPT or by a PPT-affiliated person that happened between January 1, 1996 and July 1, 2009 in a different lawsuit you must opt out of the settlement by [DATE].

If you do not opt out of the settlement you can submit a Claim Form for settlement money and object to the settlement if there is something about the settlement that you don't like. If you submit a Claim Form or object to the settlement you will no longer be able to sue any of the Defendants for sexual abuse at PPT or by a PPT-affiliated person that happened between January 1, 1996 and July 1, 2009.

## GENERAL INFORMATION ABOUT THE SETTLEMENT

### Why Has This Notice Been Published?

This Notice has been published because, if you were sexually abused while attending or participating in programs at the PPT schools or orphanages between January 1, 1996 and July 1, 2009 you have a right to know about this lawsuit and the settlement, including all of your rights and options, and you may be able to get settlement money.

The lawsuit is called *Gesner Lecenat et. al  v. Douglas Perlitz, et al.*, Case No. 3:13-cv-01633 (RNC) and it is pending in the United States District Court, District of Connecticut.

### What Is the Lawsuit About?

Gesner Lecenat and Jason Maxwel Deriza (known as "Representative Plaintiffs"), brought lawsuits against Defendants in November 2013 and May 2014, claiming they were the victims of sexual abuse by Douglas Perlitz while attending the Project Pierre Toussaint schools or orphanages owned, operated and controlled by Defendants.

All of the Defendants deny these claims and the claims made in the class action complaints. The Defendants also deny that they owe anything to the Representative Plaintiffs or Settlement Class Members based on these claims.

### Why Is there a Settlement?

The Representative Plaintiffs and the Defendants have agreed to a settlement to put an end to the lawsuits. They all think that the proposed settlement is in the best interest of everyone involved because it ends the uncertainty, expense, risk, and delays of continuing the lawsuits and it provides money to eligible Settlement Class Members.

### Who is Included in the Class Action Lawsuits and Settlement?

Generally you are included in the class action lawsuits and settlement and able to get settlement money if you were molested, sexually touched or fondled, coerced, threatened, or groomed, or experienced sexual related behavior, activity, interaction, or exploitation including physical assault or battery on the island of Hispaniola by Douglas Perlitz, Father Carrier, or any other person affiliated with PPT at any time from January 1, 1996 through July 1, 2009 and who claim that this sexual abuse was caused by or related to or could have been prevented by any of the Defendants.

Specifically, the Court decided you are included in the class action lawsuits and settlement and able to get settlement money if you meet the following definition of the Settlement Class:

All persons who, during the Class Period, were subject to Sexual Abuse on the island of Hispaniola by Douglas Perlitz, Father Carrier, or any other person affiliated the school, programs, facilities, or orphanage commonly known as "Project Pierre Toussaint" or "PPT" and who claim that such Sexual Abuse was caused by or related to any act or omission of any Defendant.

Class Period means the period from January 1, 1996 through July 1, 2009.

Sexual Abuse means all forms of sexual-related contact, molestation, touching, fondling, behavior, activity, interaction, exploitation, coercion, threats, and/or grooming; included in this definition are physical assault and/or battery in connection with such abuse.

Action means the above-captioned proceedings, along with all of the cases consolidated with them.

### Who is NOT Included in the Class Action Lawsuits and Settlement?

You are not included in class action lawsuits or settlement if you settled your claims in the cases consolidated with or in connection with *Jean-Charles v. Perlitz*, No. 3:11-cv-00614-RNC or you made claims in the Action and your claims were dismissed.

### *SETTLEMENT BENEFITS*

### What Does the Settlement Provide?

The Defendants are paying a total of $60,000,000 to settle the lawsuits. Settlement Class Members who submit valid Claims Forms will receive money from the settlement. The amount of money each Settlement Class Member who submits a valid Claim Form will receive is not known at this time. These amounts will be determined if the Court approves the settlement and the total number of valid Claim Forms submitted.

### *YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT*

### What Rights and Options Do I Have in this Settlement?

Settlement Class Members can do nothing, submit a Claim Form to receive settlement money, object to the settlement, or opt out of the settlement.

- **(a)** **What happens if I don't do anything?** If you do not do anything after reading this Notice, you will not receive any settlement money and you will give up your right to sue any of the Defendants about the abuse claims made in these lawsuits and resolved by this settlement. You will be bound by all orders and judgments of the Court.

- **(b)** **What happens if I submit a Claim Form?** If you submit a Claim Form on time and with all of the required documents you will be eligible to receive settlement money if the Court grants final approval to the settlement and if your Claim Form is approved. You will also give up your right to sue any of the Defendants about the abuse claims made in these lawsuits and resolved by this settlement. You will be bound by all orders and judgments of the Court.

- **(c)** **What happens if I object to the settlement?** If you object to the settlement the Court will consider your objection when deciding whether to grant final approval to the settlement. The Court may or may not agree with your objection

and cannot change the terms of the settlement. If you object, you will give up your right to sue any of the Defendants about the abuse claims made in these lawsuits and resolved by this settlement. You will be bound by all orders and judgments of the Court.  You may object and also file a Claim Form for settlement money.

**(d)**   **What happens if I opt out of the settlement?** If you opt out of the settlement you will not be able to get any settlement money and you cannot object to the settlement. You will keep your right to sue any of the Defendants about the abuse claims made in these lawsuits and resolved by this settlement and you will <u>not</u> be bound by any orders or judgments of the Court.

## How do I submit a Claim Form for Settlement money?

Complete and return the attached Claim Form along with the required documents by [DATE].

You may:

1) Mail your Claim Form and documents postmarked by [DATE]to:

PERLITZ LITIGATION CLASS SETTLEMENT
c/o *** Consulting
[Address]
[City] [ST] [Zip]

2) Email your Claim Form and documents to [Email address];

3) Upload your Claim Form and documents at [Website Address]; or

4) Submit your Claim Form and documents to the Claims Facilitator at:

[Address]
[City] [ST] [Zip]

## What documents do I need to submit with my Claim Form?

Unless you have been separately notified that you have been designated a Vetted Settlement Class Member, you must submit the documents described in the Claim Form, including:

1) a government-issued identification, birth certificate, and a current photograph of you (separate from your government identification); and

2) documents supporting your claim, *if you have them,* such as:

   a) documents or photographs showing whether and when you attended or participated in any program at PPT; and/or

   b) documents or photographs of your relationship to the PPT staff person who sexually abused you on the island of Hispaniola.

## What if I am a Minor or the Settlement Class Member passed away?

If the Settlement Class Member is a minor, is unable to complete the Claim Form because they are a protected person under Connecticut law, or is deceased or died after the Class Action was filed on July 1, 2018, the minor's parent, a duly appointed guardian ad litem or executor, executrix, administrator or administratrix or equivalent duly appointed general

representative may complete the Claim Form for the minor, protected person or deceased person.

**I need help completing my Claim Form, what Should I do?**

For free help completing your Claim Form go to the Claims Facilitator's office anytime from [dates & hours of operation]. The office is located at:

[Address]
[City] [ST] [Zip]

**What Happens after I Submit a Claim Form?**

If you submit a Claim Form, the Claims Administrator, and Claims Assessor have the right to verify the validity and accuracy of your Claim Form and the documents you provide to support your claim. If your Claim Form is considered valid, you will be later notified of the amount of your settlement money.

If your Claim Form or supporting documents are found to be invalid or insufficient, written notification will be mailed to the address you provided. You will then have thirty days to correct the problems with your claim. If you do not return your corrected Claim Form by the deadline due to disruption of mail service or inability to deliver mail to you or from you, you will <u>not</u> receive a deadline extension. Class Counsel will <u>not</u> receive hand delivered copies of any Claim Forms or supporting documentation. If you deliver a Claim Form or documentation to Class Counsel it will <u>not</u> be submitted.

**How Do I Object to the Settlement?**

If you are a Settlement Class Member and you do not opt out of the settlement, you may object to the settlement if you don't like something about it. To object, you must submit a written letter stating that you object to the settlement in *Gesner Lecenat et. al v. Douglas Perlitz, et al.*, Case No. 3:13-cv-01633 (RNC). Your objection letter must include: (1) your name, address, telephone number; (2) the reasons why you object to the settlement; (3) any documents or other material you want the Court to consider in support of your objection; (3) proof that you qualify as a Settlement Class Member, such as papers or photographs documenting you attended PPT; (4) a statement whether your objection applies only to yourself, the entire class, a specific subset of the class. Submit your objection and supporting documentation by mail, email, online or at the Claims Facilitator's office.

1) Mail your objection and supporting documentation postmarked by [DATE]to:

PERLITZ LITIGATION CLASS SETTLEMENT
c/o *** Consulting
[Address]
[City] [ST] [Zip]

2) Email your objection and supporting documentation by [DATE]to [Email address];

3) Upload your objection and supporting documentation by [DATE] at [Website Address]; or

4) Submit your objection and supporting documentation by [DATE]to the Claims Facilitator at:

[Address]
[City] [ST] [Zip]

Unless the Court directs otherwise, any Settlement Class Member who fails to serve a written objection as described above will **not** be entitled to object to the approval of the settlement, to object to the judgment to be entered, or to be heard at the Final Approval Hearing. Unless otherwise ordered by the Court, any Settlement Class Member who does not make his or her objection in the manner provided in this Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness or adequacy of the proposed settlement, and to the award of attorneys' fees and expenses to Class Counsel.

## Can I speak in Court about my Objection?

Yes, you may ask to present an argument to the Court concerning your objection at the Final Approval Hearing, but it is not required. To address the Court in person at the Final Approval Hearing, you must submit a Notice of Appearance and Intent to Present Argument with the Court, and if you require an interpreter, you must provide the name of your court approved interpreter. These materials, along with your written objection, must be filed with the Court in the format required by the Court and mailed to Class Counsel and to the Claims Administrator at the following addresses postmarked no later than [**DATE**].

| United States District Court, District of Connecticut 450 Main Street Hartford, CT 06103 | PERLITZ LITIGATION CLASS SETTLEMENT c/o *** Consulting [Address] [City] [ST] [Zip] | [Class Counsel] [Address] [City] [ST] [Zip] |

## How do I opt out of the Settlement?

If you don't want to receive any settlement money and you do not want to be bound by any orders or judgements of the Court in the settlement you must opt out of the settlement. To do so, you must prepare a written Request for Exclusion stating in English or Haitian Kreyol:

> "I want to be excluded from the Settlement Class in the Perlitz Class Action Litigation."

Your Request for Exclusion must also (1) include your name, current mailing address and telephone number, and (2) be in writing and signed and dated by you. Your Request for Exclusion must be in proper format and be prepared by you, not by anyone on your behalf (unless you are a minor, protected person or the Settlement Class Member is deceased. To be valid, your Request for Exclusion must be submitted by mail, email, online or at the Claims Facilitator's office to the Claims Administrator no later than [**DATE**].

1) Mail your Request for Exclusion postmarked by [DATE]to:

PERLITZ LITIGATION CLASS SETTLEMENT
c/o *** Consulting
[Address]
[City] [ST] [Zip]

2) Email your Request for Exclusion by [DATE]to [Email address];

3) Upload your Request for Exclusion by [DATE] at [Website Address]; or

4) Submit your Request for Exclusion by [DATE]to the Claims Facilitator at:

[Address]
[City] [ST] [Zip]

Any Request for Exclusion sent by mail must be actually received by the Claims Administrator no later than three days after [DATE]. If you do not submit your Request for Exclusion by the deadline due to disruption of mail service or inability to deliver mail to you or from you, you will not receive a deadline extension. Class Counsel will not receive hand delivered copies of any Requests for Exclusion. If you deliver a Request for Exclusion to Class Counsel it will not be submitted. You will not be excluded from the settlement if your Request for Exclusion is not submitted on time. You are not required to opt out from the settlement to refuse or forego any money payment to which you may be entitled under the settlement.

### What happens if I don't do anything?

If you are a Settlement Class Member and you do not do anything in response to this Notice—meaning you do not submit a Claim Form or a Request for Exclusion—you will not receive any settlement money and you will be bound by any final judgment approving the proposed settlement.

### What rights am I giving up in Exchange for the Settlement?

Unless you opt out of the settlement by filing a valid Request for Exclusion, you are agreeing to release the Defendants and related parties for any and all claims that are or could have been made in these lawsuits and are resolved and released by the Settlement Agreement. Generally, you are giving up your right to be part of any other lawsuit against any of the Defendants or related parties for the claims that this settlement resolves.

Included in the Settlement Agreement is something called a "Release of Claims." The Release paragraphs in the Settlement Agreement describes the exact Claims you give up in exchange for the settlement. You should carefully read the Release of Claims in Paragraph III.G of the Settlement Agreement and consider speaking to your personal attorney, if you are already represented, or to an attorney of your choice, at your own expense.

You may inspect a copy of the Settlement Agreement and other settlement documents, all of which have been filed with the Court and are available at www.[website].com.

### Who Represents the Settlement Class?

The Court has appointed Gesner Lecenat and Jason Maxwel Deriza as Class Representatives to represent the Settlement Class. The Court has also appointed the following attorneys to represent the Settlement Class as Class Counsel for the purposes of settlement of this lawsuit:

Paul Hanly and Jayne Conroy
Simmons Hanly Conroy LLC
One Court Street
Alton, IL 62002 USA

Mitchell Garabedian
Law Offices of Mitchell Garabedian
100 State Street, 6th Floor
Boston, MA 02109 USA

Tel:  (618) 259-2222                              Tel: (617) 523-6250

## How will the Attorneys be Paid?

Class Counsel will be paid attorneys' fees and expenses from the Settlement Fund. These amounts will be automatically deducted from your settlement money before it is sent to you. You will not be required to pay these attorneys out of pocket for their services representing the Settlement Class in this lawsuit.  You have the right to hire your own attorney in this matter, but if you do, you will be responsible for paying that attorney. It is not necessary for you to hire your own attorney to get settlement money or opt out of the settlement.

## How much will the Attorneys be paid?

Class Counsel will ask the Court for an award of attorneys' fees and expenses of up to 33.33% percent of the Settlement Fund consistent with the provisions of Connecticut General Statutes, § 52-251c *plus* reimbursement of expenses. The attorneys' fees and expenses awarded by the Court will be paid out of the Settlement Fund before making payments to Settlement Class Members who submit valid Claim Forms.

### *FINAL APPROVAL OF SETTLEMENT*

## When Will the Court Decide Whether to Give Final Approval to the Settlement?

The Court will hold a Final Approval Hearing on [DATE], at [TIME], in Courtroom 228 of the United States District Court, District of Connecticut, located at 450 Main Street, Hartford, Connecticut, before the Honorable Judge Robert N. Chatigny, presiding (or his duly appointed successor), to determine whether the proposed settlement is fair, reasonable, and adequate. The date is subject to change. You are not required to attend the hearing either to participate in the settlement or to exclude yourself from the settlement, but you may attend the hearing at your own expense.

## Want more Information?

This Notice is only a summary of the proposed settlement. For more information, go to web address], where you can find additional details about the settlement and download relevant forms.  If you have any questions call the Claims Facilitator at _____. The Claims Facilitator either speaks fluent Haitian Kreyol or is working with an interpreter who does. The Claims Facilitator has been appointed to assist Settlement Class Members in filling out and submitting Claims Forms.

Pleadings and other papers filed in these lawsuits are also available for inspection and/or copying at the Court.

This Notice is not intended to, and should not be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the lawsuit, the merits of the claims or defenses asserted, or of the proposed settlement.  This Notice is simply to advise you of the pendency of the lawsuit, the terms of the proposed settlement, and your rights in connection with the proposed settlement and claims process.

**DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT.  THEY WILL NOT BE ABLE TO HELP YOU.**

# EXHIBIT 2

## RADIO NOTICE

This is an important statement issued at the direction of the United States District Court for the District of Connecticut, regarding the settlement of lawsuits concerning Project Pierre Toussaint and reports of sexual abuse of students.

If you were sexually abused by Douglas Perlitz, or anyone at the Project Pierre Toussaint school or orphanage at any time from January 1, 1996 through July 1, 2009 you could get money from a class action settlement.

To get money you **MUST** submit a Claim Form by [date].

For complete details and a Claim Form go to [web address], call  [phone number] or visit [Address] [City] [ST] [Zip]. [repeat web address, phone number and address if time permits].

# EXHIBIT 3

<u>POSTER NOTICE</u>



Use an image that Settlement Class Members will identify with, such as a picture of the school. Make this the background for the entire poster. Place the text over the image in a manner in which will stand out.

# If you were sexually abused by Douglas Perlitz, or anyone at the Project Pierre Toussaint school or orphanage at any time from January 1, 1996 through July 1, 2009, you could get money from a class action settlement.

You <u>MUST</u> submit a Claim Form by [date] to get money.

For Complete Details:

[website]

[repeat phone number]

[Address] [City] [ST] [Zip]

This statement is being issued at the direction of the United States District Court for the District of Connecticut, regarding settlement of lawsuits concerning Project Pierre Toussaint and reports of sexual abuse of students by Douglas Perlitz.

# EXHIBIT 4

## *PERLITZ* LITIGATION CLAIM FORM 1

**THIS CLAIM FORM MUST BE POSTMARKED, SUBMITTED ELECTRONICALLY, OR DELIVERED IN PERSON NO LATER THAN [DATE] TO BE VALID. FAILURE TO COMPLY WITH THIS REQUIREMENT WILL RESULT IN DISMISSAL OF YOUR CLAIM.**

Only individuals satisfying the requirements set forth in the Class Notice are Settlement Class Members potentially eligible to receive a Settlement Payment if the proposed Settlement Agreement is approved by the Court. (Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Settlement Agreement.) **IF YOU BELIEVE YOU ARE ELIGIBLE TO BE A QUALIFYING SETTLEMENT CLASS MEMBER AS DESCRIBED IN THE NOTICE, YOU MUST SUBMIT A CLAIM FORM IN ORDER TO REQUEST A MONEY PAYMENT.**

**ONLY VETTED CLASS MEMBERS WHO HAVE PENDING LAWSUITS ARE ELIGIBLE TO SUBMIT THIS CLAIM FORM.**

**In order to receive a Settlement Payment, you must provide your name, an address to receive mail and notifications of acceptance or denial of membership in the Settlement Class, a telephone number to contact you, a copy of a government issued identification or a birth certificate, and a current photograph of you not already submitted in the form of a government identification. You also must identify the Case Number for your lawsuit.**

**Your Name, Address and Telephone Number:**

_____

_____

**Case Number of Lawsuit:** _____

**THE CLASS SETTLEMENT PROVIDES THAT ALL SETTLEMENT CLASS MEMBERS AGREE TO THE FOLLOWING TERMS. YOU MUST INITIAL EACH OF THE FOLLOWING PARAGRAPHS OR YOUR CLAIM WILL BE DENIED.**

_____ By submitting this Claim Form, I acknowledge and agree that this settlement, as set forth in the Settlement Agreement, will be my only and exclusive remedy for any and all Claims that I may have against the Defendants or other Released Parties.

_____ I acknowledge that, in exchange for my participating in this process, and as more fully set forth in the Settlement Agreement, I fully and finally release, remise, acquit and forever discharge all Defendants and other Released Parties from all Claims. I further understand that approval of this Claim Form will be determined by a neutral, court-appointed Claims

101446106.3

## *PERLITZ* LITIGATION CLAIM FORM 1

Administrator and that I have released all Claims even if the Claims Administrator does not approve my Claim Form. I also expressly covenant, agree and acknowledge that: (i) Defendants and all other Released Parties will not be subject to liability or expense of any kind with respect to my Claims; (ii) I will be permanently barred from initiating, asserting, litigating, and/or prosecuting any and all Claims against the Defendants and the Released Parties in any federal or state court in the United States or in any other tribunal or administrative or adjudicative body in any jurisdiction in the world; (iii) I will not directly or indirectly, commence, file, initiate, institute, prosecute, maintain, support, or consent to any action or proceedings against any of the Released Parties in any way arising out of, related to, or in connection with the Claims; and (iv) I will not be a recipient or beneficiary, directly or indirectly, of any other financial or other benefit relating to any such action or proceeding, in any jurisdiction anywhere in the world.

_____ I acknowledge and agree that each Qualifying Settlement Class Member is to receive an equal percentage of the total monies to be paid to all Qualifying Settlement Class Members after subtracting Class Counsel's attorneys' fees and all expenses paid by Class Counsel.

I certify, declare, state and or verify **under penalty of perjury** under the laws of the United States of America that the foregoing information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

Dated _____, 2019

_____
Attorney Name:

Perlitz Litigation Class Settlement
c/o [Claims Administrator]
[Address]

## IMPORTANT LEGAL MATERIALS

101446106.3

66

# EXHIBIT 5

## *PERLITZ* LITIGATION CLAIM FORM 2

**THIS CLAIM FORM MUST BE POSTMARKED,
SUBMITTED ELECTRONICALLY, OR DELIVERED IN
PERSON NO LATER THAN [DATE], TO BE VALID.
FAILURE TO COMPLY WITH THIS REQUIREMENT
WILL RESULT IN DISMISSAL OF YOUR CLAIM.**

Only individuals satisfying the requirements set forth in the Class Notice are Settlement Class Members potentially eligible to receive a Settlement Payment if the proposed Settlement Agreement is approved by the Court. (Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.) **IF YOU BELIEVE YOU ARE ELIGIBLE TO BE A QUALIFYING SETTLEMENT CLASS MEMBER AS DESCRIBED IN THE NOTICE, YOU MUST SUBMIT A CLAIM FORM IN ORDER TO REQUEST A MONEY PAYMENT.**

**ONLY VETTED SETTLEMENT CLASS MEMBERS WHO HAVE NOT FILED LAWSUITS ARE ELIGIBLE TO SUBMIT THIS CLAIM FORM.**

**In order to receive a Settlement Payment, you must provide your name, an address to receive mail and notifications of acceptance or denial of membership in the Settlement Class, a telephone number to contact you, an identification of the school or orphanage owned, operated and or controlled by Defendants that you attended, a statement of the type of Sexual Abuse(s) of you, a copy of a government-issued identification or a birth certificate, and a photograph of you not already submitted in the form of a government identification.**

**Your Name, Address and Telephone Number:**

_____

_____

**Identify Locations of PPT Attended:**

_____

**Sexual Abuse: How many times were you abused?** _____

**Summarize the incident(s) of Sexual Abuse:** _____

_____

_____

**(Attach additional sheets if necessary.)**

101446102.3

# *PERLITZ* LITIGATION CLAIM FORM 2

**THE CLASS SETTLEMENT PROVIDES THAT ALL SETTLEMENT CLASS MEMBERS AGREE TO THE FOLLOWING TERMS. YOU MUST INITIAL EACH OF THE FOLLOWING PARAGRAPHS OR YOUR CLAIM WILL BE DENIED.**

_____ By submitting this Claim Form, I acknowledge and agree that this settlement, as set forth in the Settlement Agreement, will be my only and exclusive remedy for any and all Claims that I may have against the Defendants or other Released Parties.

_____ I acknowledge that in exchange for my participating in this process, and as more fully set forth in the Settlement Agreement, I fully and finally release, remise, acquit and forever discharge all Defendants and other Released Parties from all Claims. I further understand that approval of this Claim Form will be determined by a neutral, court-appointed Claims Administrator and that I have released all Claims even if the Claims Administrator does not approve my Claim Form. I also expressly covenant, agree and acknowledge that: (i) Defendants and all other Released Parties will not be subject to liability or expense of any kind with respect to my Claims; (ii) I will be permanently barred from initiating, asserting, litigating, and/or prosecuting any and all Claims against the Defendants and the Released Parties in any federal or state court in the United States or in any other tribunal or administrative or adjudicative body in any jurisdiction in the world; (iii) I will not directly or indirectly, commence, file, initiate, institute, prosecute, maintain, support, or consent to any action or proceedings against any of the Released Parties in any way arising out of, related to, or in connection with the Claims; and (iv) I will not be a recipient or beneficiary, directly or indirectly, of any other financial or other benefit relating to any such action or proceeding, in any jurisdiction anywhere in the world.

_____ I acknowledge and agree that each Qualifying Settlement Class Member is to receive an equal percentage of the total monies to be paid to all Qualifying Settlement Class Members after subtracting Class Counsel's attorneys' fees and all expenses paid by Class Counsel.

I certify, declare, state and or verify **under penalty of perjury** under the laws of the United States of America that the foregoing information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

Dated _____, 2019

_____
Attorney Name:

Perlitz Litigation Class Settlement
c/o [Claims Administrator]
[Address]

## IMPORTANT LEGAL MATERIALS

101446102.3

# EXHIBIT 6

**Return This Claim Form By [DATE] or Your Claim for a
Settlement Payment Will be Dismissed**

If you believe you are a Settlement Class Member, and you do not qualify as a Vetted Settlement Class Member according to the terms of the Settlement Agreement, you must submit *this* Claim Form.

Only one Claim Form may be submitted per individual. If the Claim Form is returned after [DATE], the Claim is incomplete and/or you do not submit the required documents, you will release your Claims and you will not be entitled to a Settlement Payment.

You may call the Claims Administrator at the number provided in the Class Notice or go to www.[address] if you have any questions. Do not go to any Defendant or court website or call any Defendant or court phone numbers, as no information pertaining to the settlement is available there.

Complete ALL sections and include the required documentation when submitting this Claim Form.

1.  Provide your full name, date of birth, a mailing address to receive notifications of acceptance or denial of membership in the class, a telephone number to contact you, and an email address, if you have one.

| Claimant Full Name | |
|---|---|
| Other Names Used | |
| Date of Birth | |
| Address | |
| Telephone number | |
| Email address | |

2.  If you are making a claim on your own behalf complete this section. If you are a parent or duly appointed guardian ad litem of a Settlement Class Member who is a minor or protected person; or a duly appointed executor, executrix, administrator or administratrix or equivalent duly appointed general representative of a deceased Settlement Class Member, complete this section as it pertains to the minor, protected person or deceased Settlement Class Member.

| | |
|---|---|
| 1. Locations of the Sexual Abuse | |
| 2. Dates of the Sexual Abuse | |
| 3. School or orphanage names and locations you attended at the time of the Sexual Abuse | |
| 4. Names of any persons you told of the Sexual Abuse | |
| 5. Names of any staff or volunteers (Haitian or American) that were working at the schools or orphanages when you attended "PPT" | |

3. If you are completing this Claim Form on behalf of a Settlement Class Member you must: (1) provide documents that confirm your ability to legally represent the claimant; and (2) answer the following:

Representative Name: _____

Basis of Representation: _____

4. Describe, in detail, the Sexual Abuse you suffered. Include (a) the name of the person you claim committed the Sexual Abuse, (b) the type of the Sexual Abuse, (c) any persons present at the location before, during or after the Sexual Abuse, and (d) any violence, coercion or threats made or threatened before, during or after the assault. Attach additional pages if necessary. If you are completing this Claim Form on behalf of the Settlement Class Member, you should provide this information for the Settlement Class Member.

72

[blank lined form box]

5. **CLAIM DOCUMENTATION:** Provide documents to support your claim.

**YOU MUST SUBMIT THE FOLLOWING DOCUMENTS:** a copy of a government-issued identification or a birth certificate, and a photograph of you not already submitted in the form of a government identification.

**YOU SHOULD ALSO SUBMIT ANY DOCUMENTS YOU MAY HAVE THAT SUPPORT YOUR CLAIM.** Supporting documents may include, for example, copies of any papers you have showing whether and when you attended or participated in any program at "Project Pierre Toussaint" ("PPT"), any documentary or photographic evidence you may have of your relationship to the staff person affiliated with PPT who Sexually Abused you on the island of Hispaniola, and/or any other documentary or photographic evidence that supports your claim.

**YOUR CLAIM WILL BE DENIED IF SUFFICIENT PROOF IS NOT PROVIDED. SUFFICIENCY OF PROOF IS TO BE DETERMINED EXCLUSIVELY BY A CLAIMS ASSESSOR.**

6. **ACKNOWLEDGEMENT OF SETTLEMENT TERMS:** The Settlement Agreement provides that all Settlement Class Members Agree to the terms below.

<u>**You must**</u> initial each of the following paragraphs:

_____ By submitting this Claim Form, I acknowledge and agree that this settlement, as set forth in the Settlement Agreement, will be my only and exclusive remedy for any and all Claims that I may have against the Defendants or other Released Parties. I further understand that (i) submission of this Claim Form does not guarantee that I will receive a Settlement Payment, (ii) a court-appointed Claims Assessor will determine whether I am a Qualifying Settlement Class Member entitled to a Settlement Payment, and (iii) the Claims Assessor's decision will be final.

_____ I acknowledge that in exchange for my participating in this process, and as more fully set forth in the Settlement Agreement, I fully and finally release, remise, acquit and forever discharge all Defendants and other Released Parties from all Claims. I further understand that approval of this Claim Form will be determined by a neutral, court-appointed Claims Administrator and that I have released all Claims even if the Claims Administrator does not approve my Claim Form. I also expressly covenant, agree and acknowledge that: (i) Defendants and all other Released Parties will not be subject to liability or expense of any kind with respect to my Claims; (ii) I will be permanently barred from initiating, asserting, litigating, and/or prosecuting any and all Claims against the Defendants and the Released Parties in any federal or state court in the United States or in any other tribunal or administrative or adjudicative body in any jurisdiction in the world; (iii) I will not directly or indirectly, commence, file, initiate, institute, prosecute, maintain, support, or consent to any action or proceedings against any of the Released Parties in any way arising out of, related to, or in connection with the Claims; and (iv) I will not be a recipient or beneficiary, directly or indirectly, of any other financial or other benefit relating to any such action or proceeding, in any jurisdiction anywhere in the world.

_____ I acknowledge and agree that each Qualifying Settlement Class Member is to receive an equal percentage of the total monies to be paid to all Qualifying Settlement Class Members after subtracting Class Counsel's attorneys' fees and all expenses paid by Class Counsel.

7. Sign and date this Claim Form.

I certify, declare, state and or verify **under penalty of perjury** under the laws of the United States of America that the foregoing information supplied in this Claim Form by the

undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

Dated _____, 2019

_____

(Signature) (REQUIRED)

_____

(Print Name) (REQUIRED)

                                       _____

                                       (Street Address) (REQUIRED)

_____      _____

(Telephone Number) (REQUIRED)      (Country) (REQUIRED)

**Return this completed Claim Form with the required documentation by:**

1.  Mail it to PERLITZ LITIGATION CLASS SETTLEMENT, c/o *** Consulting, [Address] postmarked by [DATE];
2.  Email it to [Email address] by [DATE];
3.  Upload it to [Website Address] by [DATE]; or
4.  Submit it to the Claims Facilitator by [DATE] at the following location: [Location]

# EXHIBIT 2

D.C. Superior Court
10/24/2018 21:37PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| **JANE DOE 2,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | **Case No. 2014 CA 007644 B** |
| | : | **Case No. 2014 CA 008073 B** |
| v. | : | **Case No. 2015 CA 007814 B** |
| | : | **Calendar 12** |
| **THE GEORGETOWN SYNAGOGUE -** | : | **Judge Brian F. Holeman** |
| **KESHER ISRAEL CONGREGATION,** | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

### ORDER

This matter comes before the Court upon consideration of Plaintiffs' Consent Motion for Final Approval of the Class Settlement, Attorneys' Fees, Costs, and Service Payments, filed on October 17, 2018. Further, the Court has reviewed exhibits annexed to this Motion, including the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") and supporting declarations, as well as the pleadings, other court filings, and notes from proceedings in this case to date, including the Status Hearing on the instant Motion, convened on October 22, 2018.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Factual Background and Procedural History are set forth in the Order of this Court granting preliminary approval of the Class Settlement, and are incorporated herein by this reference as though fully set forth. (Order, Sept. 19, 2018 at 1-5.)

### II.   THE APPLICABLE LAW

The District of Columbia Official Code § 11-921, governs subject matter jurisdiction. It states:

> (a) Except as provided in subsection (b), the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia. Such jurisdiction shall vest in the court as follows:

(1) Beginning on the effective date of the District of Columbia Court Reorganization Act of 1970, the court has jurisdiction of any civil action or other matter begun before such effective date in the District of Columbia Court of General Sessions, the Juvenile Court of the District of Columbia, or the District of Columbia Tax Court.

(2) Beginning on such effective date, the court has jurisdiction of any civil action or other matter, at law or in equity, which is begun in the Superior Court on or after such effective date and in which the amount in controversy does not exceed $50,000.

D.C. Code § 13-422 governs personal jurisdiction based upon enduring relationship.  It

states:

A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.

D.C. Code § 13-423 governs personal jurisdiction based upon conduct.  It states:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

The Superior Court Rules of Civil Procedure, Rule 23, governs class actions. It states:

> (a) *Prerequisites*. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>>
>> (2) there are questions of law or fact common to the class;
>>
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) *Types of class actions*. A class action may be maintained if Rule 23(a) is satisfied and if:
>
>> (1) prosecuting separate actions by or against individual class members would create a risk of:
>>
>>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>>
>>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
>> . . . .
>
> (e) *Settlement, voluntary dismissal, or compromise*. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
>> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>>
>> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under Rule 23(e); the objection may be withdrawn only with the court's approval.

. . . .

(h) *Attorneys' fees and nontaxable costs.* In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of Rule 23(h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Rule 54 governs judgments and costs. It states, in pertinent part:

(b) *Judgment on multiple claims or involving multiple parties.* When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just

reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

. . . .

(d)  *Costs; attorneys' fees*.

(1) *Costs other than attorneys' fees.* Unless an applicable statute, these rules, or a court order provides otherwise, costs -- other than attorneys' fees -- should be allowed to the prevailing party. But costs against the United States, the District of Columbia, or officers and agencies of either may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

In order to satisfy class certification a party must meet the requirements of Rule 23(a) and at least one subdivision of Rule 23(b).

Numerosity is satisfied where the class is so numerous that joinder of all members is impracticable. Super. Ct. R. Civ. P. 23(a)(1). Plaintiffs do not need to provide the exact number of potential class members to satisfy this requirement. *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).[1] Numerosity is presumed at 40 members. *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003). The Court may "draw reasonable inferences from the facts presented to find the requisite numerosity." *Coleman v. District of Columbia,* 306 F.R.D. 68, 76 (D.D.C. 2015) (citing *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161,

---

[1]     The Superior Court is not bound by the decisions of the federal district court. *M.A.P. v. Ryan*, 285 A.2d 312 (D.C. 1971) (stating that the Court Reform Act declared that "[the] highest court of the District of Columbia is the District of Columbia Court of Appeals."). However, the Superior Court will defer to non-conflicting federal authority on matters of procedural interpretation. D.C. Code §11-946 (2018) (stating that the Superior Court "shall conduct its business according to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure (except as otherwise provided in Title 23) unless it prescribes or adopts rules which modify those Rules."); *Sellars v. United States*, 401 A.2d 974, 978 (D.C. 1979) (stating that "local court rules of procedure which parallel the federal rules are to be construed in light of the meaning given to the latter.").

167 (1st Cir. 1987)). Further, Plaintiffs must show that joinder is impracticable. *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013). "Demonstrating impracticability of joinder 'does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" *Id.* (citing *Cent. States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-245 (2d Cir. 2007)).

Commonality is satisfied where there are common questions of law or fact to parties in the class. Super. Ct. R. Civ. P. 23(a)(2). It is not necessary that every member of the class share the same issue of law or fact. *Bynum*, 214 F.R.D. at 33. "The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Coleman*, 306 F.R.D. at 82 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed.2d 374 (2011)). "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Id.* Commonality is also satisfied where there is a common question of law or fact and the same evidence can be used by each member of the class to make a prima facie showing of liability. *Julian Ford v. ChartOne, Inc.*, 908 A.2d 72, 85-86 (D.C. 2006).

Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Super. Ct. R. Civ. P. 23(a)(3). Typicality focuses on whether the representative of the class suffered similar injury from the same cause of conduct that gives rise to the other class members' claims. *Bynum*, 214 F.R.D. at 34; *Moore v. Napolitano*, 269 F.R. D. 21, 32 (D.D.C. 2010). "Essentially, the class representative's claim is typical of the claims of the class if his or her claim and those of the class arise from the same event or pattern or practice and are based on the same legal theory." *Julian Ford*, 908 A.2d at 86

(citing *Singer v. AT&T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998)).  The purpose of typicality is to ensure that the class representative's claims are the same as other class members to safeguard their interests.  *Bynum*, 214 F.R.D. at 34.  Factual variations do not destroy typicality. *Id.*; *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118-119 (D.D.C. 2017) (citing *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987)).

Adequacy of representation is satisfied where "the representative parties will fairly and adequately protect the interests of the class."  Super. Ct. R. Civ. P. 23(a)(4).  "Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interest of the class through qualified counsel."  *Julian Ford*, 908 A.2d at 86 (citing *Twelve John Does v. District of Columbia*, 326 App. D.C. 17, 21, 117 F.3d 571, 575 (1997)).  If the Court can conclude that by "pursuing their own interests vigorously the named representatives will necessarily raise all claims or defenses common to the class, representativeness will be satisfied."  *Id.* (citing *United States v. Trucking Emp'rs.*, 75 F.R.D. 682, 688 (D.D.C. 1997)).

An action that satisfies the prerequisites of Rule 23 (a) must also meet the requirements of one or more of the three subdivisions of subpart (b).  Certification under Rule 23(b)(1)(B), is "proper on the grounds that the claims made are numerous against a fund that is insufficient to satisfy all the claims."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).  Every award made to a claimant reduces the total amount of funds available to other claimants until some claimants are unable "to obtain full satisfaction of their claims, while others are left with no recovery at all."  *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 16 (D.D.C. 2011).

To qualify for class certification on such a limited fund rationale, the Moving Plaintiffs must meet three criteria.  *Ortiz*, 527 U.S. at 838.  First, "the total of the aggregated liquidated

claims and the fund available for satisfying them, set definitely at their maximums,  demonstrate the inadequacy of the fund to pay all the claims." *Id.* at 839.  Second, "the whole of the inadequate fund" must be dedicated "to the overwhelming claims." *Id.*   Third, all claimants to the fund who are "identified by a common theory of recovery [must be] treated equitably among themselves." *Id.*; *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 16.

Rule 23(e) controls class action settlements.  The Court may approve a proposed settlement "after a hearing and on finding that it is fair, reasonable, and adequate."   There is no set test for determining whether a proposed settlement is fair, reasonable, and adequate.  However, the Court in addressing a class action settlement will typically "consider (1) whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) whether it falls within the range of possible judicial approval, and (3) whether it has any obvious deficiency, such as granting unduly preferential treatment." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 194 (D.D.C. 2017) (citing *Richardson v. L'Oreal USA, Inc.*, 951 F.Supp.2d 104, 106-107 (D.D.C. 2013)).

The Court notes that there are five additional factors that are generally considered when it must decide whether the proposed settlement is fair, adequate, and reasonable: "(1) whether the settlement is the result of arms-length negotiations; (2) the terms of the settlement in relation to the strengths of plaintiffs' case; (3) the status of the litigation proceedings at the time of the settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 163 (D.D.C. 2014); *Livengood Feeds, Inc. v. Merck KGaA (in re Vitamins Antitrust Litig.)*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004).

Rule 23(e) requires that all class members be provided with adequate notice of the proposed settlement.  The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Super. Ct. R. Civ. P. 23(e)(1).

Under Rule 23(h) the "[C]ourt may award reasonable attorneys['] fees and nontaxable costs that are authorized by law or by the parties' agreement. Under the "'American Rule,' a party who prevails in litigation is not entitled to recover attorneys' fees from the losing party." *Passtou, Inc. v. Spring Valley Center*, 501 A.2d 8, 11 (D.C. 1985) (citation omitted). However, there are exceptions to the American Rule as "[t]he common fund or benefit exception to the American Rule is fully recognized in the District of Columbia." *Id.* (citation omitted). The "[c]ourts have applied the doctrine in a broad range of contexts in which one Plaintiffs' litigation efforts created a pool of money from which others benefitted, or merely conferred a non-monetary benefit on them." *Pearline Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 818 (D.C. 2009). "[P]ercentage-of-the-fund method is the appropriate mechanism for determining the attorneys['] fees award in common fund cases[, and may] range from fifteen to forty-five percent." *Stephens v. US Airways GRP., Inc.*, 102 F. Supp. 3d 222, 230 (D.D.C. 2015). The Court, in evaluating fee requests, may consider:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (citation omitted). The Court may "use the lodestar as a cross-check on the propriety of fees awarded under the percentage-of-the-fund method, sometimes adjusting the percentage or the award upward or downward accordingly." *Id.* "Courts may approve payment for expenses associated with administering the settlement where class members had notice that such expenses would be paid out of the settlement fund." *Id.* at 232. Further, "[i]t is common for courts to approve incentive awards in class-action litigations, especially when there is a common fund created to benefit the entire class." *Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d

27, 35 (D.D.C. 2018). The Court in deciding whether to grant service awards in class actions involving a common fund can evaluate "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefitted from those action[s], and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id.* (citation omitted).

## III.   FINDINGS OF FACT

1.      The Class members are females who were videorecorded by Defendant Bernard Freundel from July 1, 2005, through October 14, 2014, who disrobed in the National Capital Mikvah's ritual bath and/or associated facilities. (Mem. of P. & A., Oct. 17, 2018 at 5.)

2.      Defendant Freundel was the supervising Rabbi for Defendant National Capital Mikvah and employed by Defendant the Georgetown Synagogue-Kesher Israel Congregation. (Am. Compl. at 10.)

3.      Defendant Freundel resided in a home located at 3026 O Street, NW, Washington, D.C. 20007. (*Id.* at 9.)

4.      The Georgetown Synagogue-Kesher Israel Congregation is an Orthodox Jewish Congregation located at 2801 N Street, NW, Washington, D.C. 20007. (*Id.* at 10.)

5.      Defendant the National Capital Mikvah, Inc. owns and operates the Mikvah located at 1308 28th Street, NW, Washington, D.C. 20007. (*Id.*)

6.      Defendant the Rabbinical Council of America has its principal place of business at 305 Seventh Avenue, 12th Floor, New York, NY 10001. (*Id.*)

7.      Defendant the Beth Din of America has its principal place of business at 305 Seventh Avenue, 12th Floor, New York, NY 10001. (*Id.*)

8.      Defendants the Rabbinical Council of America and the Beth Din of America established and oversee the religious court located in the District of Columbia, which

supervises, authorizes, and approves Orthodox conversions performed in the District of Columbia.  (Am. Compl. at 10.)

9.      Defendant Freundel videorecorded Plaintiffs who disrobed in the National Capital Mikvah's ritual bath and/or associated facilities.  (*Id.* at 6.)

10.      The videorecording by Defendant Freundel and the failure to act and/or omissions of the Defendants caused Plaintiffs' serious emotional distress and negative perceptions towards Judaism, the *mikvah*, and Jewish institutions.  (*Id.*)

11.      The Total Settlement Amount creates a non-reversionary fund of $14,250,000.00.  (Mem. of P. & A. at 1.)

12.      The Total Settlement Amount will be used to make payments directly to Class Members, with the remainder of the Total Settlement Amount to be used for (a) fees and expenses for the Settlement Administrator and an Independent Claims Expert; (b) Court-awarded attorneys' fees and expenses; and (c) Court-awarded service payments to the Plaintiffs who brought and assisted in the litigation against the Settling Defendants.  (*Id.* at 3.)

13.      Notice of the Class Action Settlement has been provided by the Settlement Administrator who sent the long-form Notice and Registration Form to 772 potential Class Members via mail and/or email.   (*Id.* at 4.)

14.      The United States Attorney's Office of the District of Columbia has emailed the Notice and Registration Form to all persons on its contact list.  (*Id.*)

15.      The Settlement Administrator arranged for the publication of the short-form notice, which has appeared in the *Washington Post*, the *Washington Jewish Week*, the *Baltimore Jewish Times*, the *Baltimore Sun*, the *Jewish Week*, the *Forward*, *Kol HaBirah*, and the *Jerusalem Post.*  (*Id.*)

16.     The Settlement was publicized on websites maintained by the Settlement

Administrator, Sanford Heisler Sharp, and Chaikin, Sherman, Cammarata, & Siegel,

P.C., and to several non-profit organizations in the Washington, D.C. area. (Mem. of P. &

A. at 4-5.)

17.     The United States Attorney's Office of the District of Columbia confirmed that

Bernard Freundel videotaped over 150 Women, and over 140 Class Members have

submitted Registration Forms to participate in the Settlement.  (*Id.* at 6.)

18.     No conflicts between the Class Representatives and Class Members have arisen.

(*Id.* at 8.)

19.     The Defendants are religious institutions and, consequently, there are inadequate

funds from these institutions available for the purpose of satisfying these multiple claims.

(*Id.* at 9.)

20.      The consolidated cases have been pending for nearly four years, and the parties,

through experienced counsel, have used the majority of this time to debate their positions

and effectuate settlement through Mediation, facilitated by the stay of all proceedings

imposed by the Court.  (*Id.* at 12; Sanford Decl. at 2, 4-5.)

21.     There has been no objection to the Settlement Agreement made by any Class

Member.  (Mem. of P. & A. at 15.)

22.     The attorneys' fees have been calculated using the percentage-of-the-fund

method and the requested sum is $4,750,000.00, representing one-third of the Total

Settlement Amount.  (*Id.* at 17.)

23.     Litigation expenses and costs total $299,833.39, representing nearly four years of

associated legal services and over 5,400 hours.  (*Id.* at 25.)

24.    The lodestar cross-check confirms that the requested attorneys' fees are reasonable, as the law firms of Sanford Heisler Sharp, LLP, Chaikin, Sherman, Cammarata, & Siegel, P.C., and Silverman, Thompson, Slutkin and White, LLC applied their billing rates in line with attorneys of comparable skill, experience, and reputation and the lodestar value of Plaintiffs' Counsel's time in this case to date totals nearly $3,700,000.00.  (*Id.* at 25-26; Sanford Decl. at 6-7; Silverman, Thompson, Slutkin and White LLC Decl. at 5-6.)

25.    No Class Members have objected to the attorneys' fees. (Mem. of P. & A. at 19.)

26.    Plaintiffs' Counsel seeks service payments between $2,500.00 and $25,000.00, for a total amount of $180,000.00 for each of the Plaintiffs who brought claims against the Settling Defendants.  (*Id.* at 28; Sanford Decl. at 9.)

27.    No Class Members have objected to the service awards.  (*Id.* at 30.)

28.    Plaintiffs project that a total approaching $175,000.00 will be used for third-party administrative costs, such as expenses to administer the Settlement, and fees and costs for the Settlement Administrator and the Independent Claims Expert.  (*Id.* at 27.)

## IV.    CONCLUSIONS OF LAW

### A.    JURISDICTION

The Court has subject matter jurisdiction over this action under D.C. Code § 11-921, as the complaint arises out of Defendant Freundel's actions of videotaping Plaintiffs who disrobed at the National Capital Mikva's ritual bath in the District of Columbia.  The Court has personal jurisdiction over Defendant the Georgetown Synagogue-Kesher Israel Congregation  and Defendant National Capital Mikvah, Inc. under D.C. Code § 13-422, as both Defendants maintain their principal place of business in the District of Columbia.  The Court has personal jurisdiction over Defendant Freundel under D.C. Code § 13-422, as Defendant Freundel is

domiciled in the District of Columbia.  Further, the Court has personal jurisdiction over

Defendants the Rabbinical Council of America and the Beth Din of the United States of America

under D.C. Code § 13-423, as the tortious conduct committed arose out of Defendants

transaction of business, their acts and/or omissions, and their rendering of services in the District

of Columbia.

### B.    ADEQUACY OF NOTICE

The Court finds that the requirement of notice has been satisfied under Rule 23(e).

Notice to 772 Class Members was received through long-form Notice and Registration Forms.

Circulation of the Short-form Notice was circulated in the *Washington Post*, the *Washington*

*Jewish Week*, the *Baltimore Jewish Times*, the *Baltimore Sun*, the *Jewish Week*, the *Forward*,

*Kol HaBirah*, and the *Jerusalem Post*.  Notice was also circulated through websites maintained

by the Settlement Administrator and to several non-profit organizations in Washington, D.C.

Further, the United States Attorney's Office of the District of Columbia has already confirmed

that over 140 Class Members have submitted Registration Forms to participate in the Settlement.

### C.    FINAL CERTIFICATION OF THE PROPOSED CLASS

The Court finds that the requirements of numerosity, commonality, typicality, and

adequacy of representation are satisfied under Rule 23(a).  Numerosity has been satisfied as over

140 Class Members have submitted Registration Forms to participate in the Settlement.

Commonality has been satisfied as the Class Members share common questions of law or fact,

such as whether Defendant Freundel videotaped females without their consent and whether

Defendant Freundel acted as an agent or employee of any of the Defendants within the course

and scope of his employment.  Typicality is satisfied as Plaintiffs' claims or defenses were that

of the other members of the class and their injuries arose from the unauthorized and personally

invasive videorecording of the ritual bath in the National Capital Mikvah facility.  Adequacy of

representation is satisfied as there was no conflict between the representative party and class

members, and counsel for Plaintiffs performed the required work on behalf of the Class

Members.

The Court finds that certification is appropriate under Rule 23(b)(1)(B); the intended

consequence is, in part, to reduce the risk of multiple individual adjudications and potential

impediments to non-members or non-party members to protect their interests.  The Court

appreciates that the Defendants are religious institutions and, consequently, that there would be

inadequate funds from these institutions available for the purpose of satisfying these multiple

claims.  The Court is satisfied that the funds, as addressed in the papers, would be dedicated to

the claims, fees, and expenses related to the consolidated actions.  The Court is further satisfied

that the individual claimants, the members, would be treated equally here.

### D. FINAL APPROVAL TO THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

The Court finds that the Final Settlement is a fair, reasonable, and adequate result of

arm's length negotiations.  The Court appreciates that the case has lasted nearly four years with

two years of mediation and negotiation.  The Court also finds that the Total Settlement Amount

falls within the range of possible judicial approval, and over the four years there has been

sufficient litigation to support final approval.  The Court is also satisfied with the reaction of the

Class, as not a single Class Member has objected.  The Court appreciates the experience of lead

counsel in the Settlement Agreement.  The Court is satisfied that there is no undue preferential

treatment and that notice was adequate.

### E. THE APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE PAYMENTS

The Court finds that attorneys' fees and nontaxable costs are reasonable under Rule 23(h)

and Rule 54(d).  The Court finds that the percentage-of-the-fund method is appropriate in

determining the attorneys' fee award in common fund cases, and the Court has further cross-check the attached lodestar in determining the reasonableness of Plaintiffs' attorneys' fees.  The Court is satisfied that the requested sum of $4,750,000.00 in attorneys' fees and the sum of $299,833.39 for expenses incurred by the law firms are reasonable as compared to the funds in the Total Settlement Amount, no objections from Class Members pertaining to the attorneys' fees, the 5,400 hours worked by Plaintiffs' counsel, experience of counsel, the complexity of the litigation, the risk of nonpayment, and the awards in similar cases.

The Court finds that third-party costs are reasonable.  The amount of $175,000.00 is an appropriate amount for the orderly administration of the Settlement, such as costs for the provision of Notice and costs associated with calculating and issuing settlement payments to Class Members.  Further, the amount is appropriate for the fees and costs associated with the Settlement Administrator and the Independent Claims Expert.

Further, the Court is satisfied that the service payments to the Plaintiffs who brought claims against the settling Defendants are reasonable.   The Court finds that the amount of $180,000.00 is appropriate for the actions taken by Plaintiffs over the last four years, the degree to which Class Members benefitted from the Settlement Agreement, and the amount of time expended by Plaintiffs in pursuing this case.

**WHEREFORE**, it is this 24th day of October 2018, hereby

**ORDERED**, that Plaintiff's Consent Motion for Final Approval of the Class Settlement, Attorneys' Fees, Costs, and Service Payment is **GRANTED**; and it is further

**ORDERED**, that final certification of the following Class pursuant to D.C. Super. Ct. R. Civ. P. 23(b)(1) is **GRANTED**:

> All females whom the United States Attorney's Office for the District of Columbia has identified as having been videorecorded by Bernard Freundel from July 1, 2005, through October 14, 2014, and/or who otherwise disrobed, either partially or completely, in

the National Capital Mikvah's ritual bath and/or associated facilities, including the anteroom, changing rooms, showers, and/or bathroom (regardless of whether they were videorecorded), at any time from July 1, 2005 through October 14, 2014.

and it is further

**ORDERED**, that final approval to the Settlement pursuant to D.C. Super. Ct. R. Civ. P. 23(e) is **GRANTED**; and it is further

**ORDERED**, that each and every term of the Settlement Agreement is hereby adopted, incorporated, and made part of this Judgment as if fully set forth herein, and shall be effective, implemented, and enforced as provided in the Settlement Agreement; and it is further

**ORDERED**, that the effective Date of the Settlement is October 22, 2018; and it is further

**ORDERED**, that the parties to the Settlement (including Travelers), the Court-appointed Settlement Administrator (RG/2 Claims Administration LLC), and the Independent Claims Expert (Annie Steinberg, M.D.) shall administer the Settlement Agreement in accordance with its terms and provisions; and it is further

**ORDERED**, that in accordance with the Settlement Agreement, Travelers shall pay the Total Settlement Amount of $14,250,000.00 by no later than November 5, 2018; and it is further

**ORDERED**, that the Court-appointed Settlement Administrator shall: (1) distribute all settlement monies in accordance with the Settlement and as further directed herein; (2) issue Base Payments to Registered Class Members on November 26, 2018; and (3) issue the Confidential Claim Form to Registered Class Members on November 26, 2018; and it is further

**ORDERED**, that the Claim Form Deadline shall be January 25, 2019; and it is further

**ORDERED**, that Class Counsel shall have the authority to make minor modifications or additions to the Confidential Claim Form as requested by the Independent Claims Expert or as

otherwise necessary to promote accessibility, clarity, intelligibility, and/or reliability; and it is further

**ORDERED**, that the request for approval of service awards ranging from $2,500.00 to $25,000.00 and totaling $180,000.00, as set forth in the Settlement Agreement, is **GRANTED**; and it is further

**ORDERED**, that the Settlement Administrator shall issue these service payments as set forth in the Settlement Agreement; and it is further

**ORDERED**, that the Settlement Administrator shall pay from the Total Settlement Amount the sum of $4,750,00.00 for attorneys' fees and the sum of $299,833.39 for expenses to the law firms of Sanford Heisler Sharp, LLP, Chaikin, Sherman, Cammarata, & Siegel, P.C., and Silverman, Thompson, Slutkin and White, LLC, the fees to be divided among these law firms as set forth in the Settlement Agreement and expenses to be reimbursed to the law firms that incurred the expenses; and it is further

**ORDERED**, that the request for approval of payment from the Total Settlement Amount of fees and costs for the Court-appointed Settlement Administrator (including any third-party vendor with whom it contracts to perform services) and for the Court-appointed Independent Claims Expert (including any personnel working at her direction) consistent with the estimate of $175,000.00, is **GRANTED**; and it is further

**ORDERED**, that without affecting the finality of the Judgment, the Court hereby reserves exclusive and continuing jurisdiction and venue with respect to the consummation, implementation, enforcement, construction, interpretation, performance, and administration of the Settlement and this Judgment; and it is further

**ORDERED**, that the consolidated cases comprised of Case Nos. 2014 CA 008073 B and 2015 CA 000814 B, are hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED**, that there is **NO JUST REASON FOR DELAY** in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is  expressly directed pursuant to D.C. Super. Ct. R. Civ. P. 54(b).

_____
BRIAN F. HOLEMAN
JUDGE

Copies e-served to:

David W. Sanford, Esquire
Jeremy Heisler, Esquire
Alexandra Harwin, Esquire
SANFORD HEISLER SHARP, LLP
1050 Avenue of the Americas, Suite 3100
New York, New York 10019
*Class Counsel*

Ira Sherman, Esquire
Joseph Cammarata, Esquire
Allan M. Siegel, Esquire
Matthew W. Tievsky, Esquire
CHAIKIN, SHERMAN, CAMMARATA & SIEGEL, P.C.
1232 17th Street, NW
Washington, DC 20036
*Co-Counsel for the Plaintiffs Jane Doe 2, et al.*

Andrew G. Slutkin, Esquire
Silverman, Thompson, Slutkin & White LLC
201 North Charles Street, suite 2600
Baltimore, Maryland 21201
*Co-Counsel for the Plaintiffs Jane Doe 2, et al.*

Paul Blankenstein, Esquire
Ashley S. Boizelle, Esquire
Amanda C. Machin, Esquire
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
*Counsel for Defendant Georgetown Synagogue – Kesher Israel Congregation*

Edward Clark Bacon, Esquire
Patricia Maureen Thornton, Esquire
BACON, THORNTON & PALMER, LLP
Capitol Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770
*Counsel for Defendant National Capital Mikvah, Inc.*

Evan T. Barr, Esquire
Samuel Groner, Esquire
Chelsea P. Azrak, Esquire
Anayansi Rodriguez, Esquire
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
*Counsel for Defendant The Rabbinical Council of America, Inc.*

Barry G. Felder, Esquire
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
*Counsel for Defendant The Beth Din of the United States of America, Inc.*

Jeffrey Harris, Esquire
RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP
1201 Connecticut Avenue, NW, Suite 200
Washington, DC 20036
*Counsel for Defendant Bernard Freundel*