# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE USC STUDENT HEALTH CENTER LITIGATION** | No. 2:18-cv-04258-SVW<br><br>[consolidated with No. 2:18-cv-04940- SVW-GJS, No. 2:18-cv-05010-SVW-GJS, No. 2:18-cv-05125-SVW-GJS, and No. 2:18-cv-06115-SVW-GJS] |

# SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

**Page**

1.  RECITALS ..................................................................................................... 1

2.  DEFINITIONS ............................................................................................... 3

3.  SCOPE AND EFFECT OF SETTLEMENT ................................................ 10

4.  SETTLEMENT CONSIDERATION ........................................................... 14

    A.   Equitable Relief. ................................................................................. 14

    B.   Monetary Relief. ................................................................................ 15

5.  USE OF THE SETTLEMENT FUND ......................................................... 15

6.  NOTICE AND ADMINISTRATION ........................................................... 20

7.  THE SPECIAL MASTER ............................................................................. 27

8.  ATTORNEYS' FEES AND COSTS; SERVICE AWARDS ......................... 28

9.  TERMINATION ........................................................................................... 28

10. GENERAL PROVISIONS ............................................................................ 29

This Settlement Agreement and Release dated _____, 2018 (the "Agreement"), is made and entered into by and among Plaintiffs Jane Doe R.B., Jane Doe A.T., Jane Doe J.L., Jane Doe M.S., Shannon O'Conner, Jane Doe L.K., Jane Doe 5, Jane Doe M.V., Jane Doe K.M., Jane Doe A.S., Jane Doe A.F., Joyce Sutedja, Jane Doe M.G., Jane Doe D.D., Jane Doe M.D., Jane Doe A.D., Jane Doe K.Y., Meggie Kwait, Jane Doe M.M., Jane Doe P.A., Jane Doe S.A., Jane Doe L.R., Jane Doe R.K., Jane Doe H.R., Jane Doe 1HB, Jane Doe J.P., Jane Doe 1LC, Jane Doe C.N., Jane Doe J.L., Vanessa Carlisle, Jane Doe J.C., Jane Doe F.M., Jane Doe J.K., Jane Doe C.L., Jane Doe S.R., Jane Doe K.P., Jane Doe 2, Betsayda Aceituno, Jane Doe D.C., Jane Doe N.K., Jane Doe C.C., Jane Doe 4, Jane Doe C.B., Jane Doe 3, Jane Doe J.W., Mehrnaz Mohammadi, Jane Doe A.N., Jane Doe L.Y., and Jane Doe A.H. in the above-captioned consolidated action ("Plaintiffs" or "Class Representatives"), through their undersigned counsel, Defendant University of Southern California and Defendant Board of Trustees of the University of Southern California (together, "USC"), and Defendant George M. Tyndall, M.D. ("Tyndall") (USC and Tyndall are referred to as "Defendants" and Plaintiffs, USC, and Tyndall are referred to as the "Parties" or "Settling Parties"). The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against the Released Parties (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Agreement.

1.    **RECITALS**

WHEREAS, Plaintiffs filed class actions alleging that George Tyndall, M.D. assaulted and abused, sexually harassed or otherwise acted inappropriately towards female patients while he was a gynecologist at USC's student health center, and that USC ratified and failed to respond appropriately to Tyndall's conduct;

WHEREAS, those cases were styled as *Joyce Sutedja et al. v. University of Southern California et al.*, No. 2:18-cv-04258-SVW-GJS (C.D. Cal., filed May 21, 2018); *Doe A.T. et al. v. University of Southern California et al*, No. 2:18-cv-04940-SVW-GJS (C.D. Cal., filed June 4, 2018); *Jane Doe 1 v. George Tyndall et al.*, No. 2:18-cv-05010-R-AGR (C.D. Cal., filed June

5, 2018); *Shannon Lee O'Conner v. University of Southern California et al.*, No. 2:18-cv-05125-JFW-AS (C.D. Cal., filed June 8, 2018); *Jane Doe J.L. et al v. University of Southern California et al.*, No. 2:18-cv-06115-SVW-GJS (C.D. Cal., filed July 13, 2018);

WHEREAS, *Jane Doe 1 v. University of Southern California et al.*, No. BC713383 (Cal. Super. Ct., L.A. County), was filed on July 9, 2018 (the "State Court Action");

WHEREAS, on August 13, 2018, the District Court consolidated the foregoing federal cases and appointed the law firms of Hagens Berman Sobol & Shapiro LLP, Girard Sharp LLP, and Lieff Cabraser Heimann & Bernstein LLP to serve as interim class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, with the foregoing firms to serve as members of an Executive Committee and Hagens Berman Sobol Shapiro LLP to serve as Chair of the Executive Committee (ECF No. 45);

WHEREAS, on August 28, 2018, Plaintiffs filed a Consolidated Class Action Complaint (ECF No. 47);

WHEREAS, the Parties engaged in extensive arm's-length settlement negotiations;

WHEREAS, those negotiations were informed by USC's production of documents and the Parties' exchanges of information and supervised by Hon. Layn R. Phillips (Ret.);

WHEREAS, after carefully considering the facts and applicable law and the risks and uncertainty of continued litigation, and as a result of having engaged in extensive negotiations, the Parties agree that it is in their mutual best interests to finally resolve the claims in this Litigation on fair, reasonable, and adequate terms as set forth in this Agreement;

WHEREAS, the Parties agree that by entering into this Settlement, no Defendant is admitting any liability, fault, or violation of law, but that Defendants deny all allegations and claims asserted against them;

WHEREAS, the Parties are entering into the Settlement to avoid the risks, burdens, and expense of continued litigation;

WHEREAS, each Plaintiff and Defendant has independently determined that it is desirable and beneficial for the Litigation to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement;

WHEREAS, on October 9, 2018, the Parties reached an agreement in principle on terms and conditions of settlement and executed a term sheet; and

WHEREAS, the Parties, by and through their respective undersigned counsel, have agreed to this Settlement on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and the Class Members) and Defendants, by and through their counsel, that, subject to the approval of the Court, the Litigation and the Released Claims will be finally and fully compromised, settled, and released, and the Litigation will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

2.    **DEFINITIONS**

The following terms, when used in this Agreement, have the meanings as set forth below. All terms defined in the singular have the same meaning when used in the plural, and all terms defined in the plural have the same meaning when used in the singular.

2.1    "Additional Class Counsel" means the firms of Sauder Schelkopf LLC, counsel for plaintiff in *Jane Doe 1 v. Tyndall and University of Southern California*, Case No. 2:18-cv-05010 (C.D. Cal., Western Division), filed June 5, 2018, and Kohn, Swift & Graf, P.C., counsel for plaintiff in the State Court Action.

2.2    "Administrative Expenses" means the cost of the notice program relating to this Settlement and the costs of administering and processing of claims, disbursements of consideration and other necessary and reasonable expenses associated with administering this Settlement, including the compensation of the Special Master, those working for the Special Master, and the Independent Monitor, and including any costs and expenses related to lien resolution services.

2.3     "Claim Awards" means the individual amounts due to Claimants in accordance with the protocols and procedures outlined herein.

2.4     "Claim Form" or "Claim Forms" mean, individually or collectively, the "Statement of Settlement Class Membership," to be completed by individuals not identified through USC's existing health center records who wish to establish their membership in the Class and eligibility for payment under Tier 1; or the "Tier 2 and 3 Claim Form" to be completed by Class Members who wish to submit claims for Tier 2 or Tier 3 Claim Awards.

2.5     "Claim Form Deadline" means the deadline by which Claim Forms must be post-marked as being sent to the Claims Administrator, which deadline will be 120 days from the date that Notice is mailed to Class Members.

2.6     "Claimant" means any Settlement Class Member who submits a Claim Form pursuant to Sections 6.4-6.5 below.

2.7     "Claims Administrator" or "Settlement Administrator" means JND Class Action, Mass Tort & Lien Resolution, chosen jointly by Class Counsel and Defendants' Counsel after receiving bids from several potential administrators, and to be approved by the Court to conduct various tasks, including as described herein.

2.8     "Claims Process" means the three-tiered claims process, defined and set forth in Sections 6.4-6.5, for seeking and awarding monetary payments to Settlement Class Members.

2.9     "Claim Procedures" means the procedures for distribution of the Settlement Fund to Settlement Class Members as set forth herein, or such other procedures for distribution of the Settlement Fund to Class Members as the Court shall direct.

2.10     "Class" or "Class Members" means all women who were seen for treatment by Dr. George M. Tyndall at the University of Southern California student health center during the period from August 14, 1989 to June 21, 2016 (a) for Women's Health Issues, or (b) whose treatment by Dr. George M. Tyndall included an examination by him of her breast or genital areas, or (c) whose treatment included the taking of photographs or videotapes of her unclothed or partially clothed body. "Women's Health Issues" includes but is not limited to any issue

relating to breast, vaginal, urinary tract, bowel, gynecological, or sexual health, including contraception and fertility. A list of Women's Health Issues is attached hereto as Exhibit A.

2.11    "Class Counsel" means the law firms of Hagens Berman Sobol & Shapiro LLP, Girard Sharp LLP, Lieff Cabraser Heimann & Bernstein LLP, Sauder Schelkopf LLC, and Kohn, Swift & Graf, P.C.

2.12    "Class Period" means the period of time from August 14, 1989 to June 21, 2016.

2.13    "Class Representatives" means the individual plaintiffs who brought suit in this Litigation.

2.14    "Co-Lead Class Counsel" means the law firms of Hagens Berman Sobol & Shapiro LLP, Girard Sharp LLP, and Lieff Cabraser Heimann & Bernstein LLP.

2.15    "Court" means the United States District Court for the Central District of California.

2.16    "Effective Date" means the date on which the time for filing an appeal from the Court's final approval of this Agreement has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding the Agreement (including requests for rehearing, rehearing *en banc*, and petitions for certiorari), at which time the obligations set forth in this Agreement and the terms of this Agreement become binding on Defendants, the Class Representatives, the Settlement Class, Class Counsel, and anyone else who has undertaken an obligation under this Agreement.

2.17    "Equitable Relief Measures" means the specific measures USC will undertake pursuant to this Settlement, as well as the Independent Monitor's powers and responsibilities to ensure compliance with those provisions, as set forth in Exhibit B hereto.

2.18    "Escrow Account" means the escrow account designated and controlled by the Escrow Agent at one or more national banking institutions into which the Settlement Amount will be deposited for the benefit of Class Members.

2.19    "Escrow Agent" means the Claims Administrator or another neutral third party agreed to by the Parties.

2.20    "Final Approval" means entry of the Court's order granting final approval of this Agreement, substantially in the form of the [Proposed] Final Order and Judgment that will be agreed upon by the Parties and submitted to the Court.

2.21    "Government Payor" means the Medicare program, the Medicaid program, and any other federal, state or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs.

2.22    "Independent Monitor" means an individual agreed upon by the Parties who is not affiliated with USC, who has appropriate experience and expertise to ensure compliance with the Equitable Relief Agreement, and who, subject to Court approval, will be appointed to monitor and ensure implementation of the Equitable Relief.

2.23    "Late Claims" means claims filed by Class Members after the Claim Form Deadline.

2.24    "Lien" means any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor; or any mortgage, lien, reimbursement claim, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any person or entity, where there is a legal obligation to withhold payment of a Claim Award, or some portion thereof, to a Settlement Class Member under applicable federal or state law.

2.25    "Lienholder" means any governmental or private entity that holds or otherwise has the right to assert a Lien.

2.26    The "Litigation" means all proceedings consolidated with or relating to *In re USC Student Health Center Litigation*, No. 2:18-cv-04258-SVW (C.D. Cal.).

2.27    "Medicaid Program" means the federal program administered by the states under which certain medical items, services and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1 *et seq.*

2.28    "Medicare Part C or Part D Program" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and

Medicare Part D prescription drug plan benefits are administered by private entities that contract with the Centers for Medicare & Medicaid Services.

2.29   "Medicare Program" means the Medicare Parts A and B federal program administered by the Centers for Medicare & Medicaid Services under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*.

2.30   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, together with its exhibits, including the Statement of Settlement Class Membership, and the Tier 2 and 3 Claim Form, substantially in the form of a proposed Notice that will be agreed upon by the Parties and submitted to the Court.

2.31   "Opt-Out Deadline" means the date, entered by the Court in the Preliminary Approval Order, by which a Class Member may elect to exclude herself from the Class.

2.32   "Preliminary Approval" means the entry of the Court's order granting preliminary approval of this Settlement, substantially in the form of a [Proposed] Preliminary Approval Order that will be agreed upon by the Parties and submitted to the Court.

2.33   "Pro Rata Increase" means the percentage enhancement that, in the event Defendants' total payments for Claim Awards, Administrative Expenses, and service awards to Class Representatives do not meet or exceed the Settlement Amount, will be applied to increase Tier 1, Tier 2, and Tier 3 Claim Awards until the Settlement Amount is reached or all Claim Awards have been increased by 50%, whichever occurs first.

2.34   "Pro Rata Reduction" means the percentage reduction that, in the event Defendants' total payments for Claim Awards, Administrative Expenses, and service awards to Class Representatives would exceed the Settlement Amount, will be applied to reduce Tier 2 and 3 Claim Awards so that Defendants' total payments for Claim Awards and Administrative Expenses do not exceed the Settlement Amount.

2.35   "Pro Rata Adjustment" means the Pro Rata Increase or the Pro Rata Reduction.

2.36    "Released Claims" means any and all claims, counterclaims, rights, causes of action, liabilities, actions, suits, damages, demands, disputes, obligations, judgments, duties, defenses, liens, administrative proceedings, costs, expenses, matters, issues, of any kind whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, at law or in equity, existing under federal, state, local, foreign, tribal, or common law, that were or could have been asserted against any Defendant—or against Defendants' representatives; insurance carriers and insurers of their insurance carriers; estates; current and former administrators, current and former officers, current and former trustees, current and former employees and agents in their official and individual capacities; predecessors; successors; subsidiaries; parents; affiliates; assigns; and any current and former employees, current and former officers, current and former administrators or current and former agents of any of Defendants' subsidiaries, parents, affiliates, or assigns—relating to the matters alleged in the Litigation. "Released Claims" does not include any claims relating to (i) actions by any medical practitioner at USC's student health center unrelated to matters alleged in the Litigation in connection with Dr. Tyndall, or (ii) medical malpractice or negligence by Dr. Tyndall unrelated to a Women's Health Issue, or (iii) medical malpractice or negligence by Dr. Tyndall unknown to the Releasing Plaintiff as of the Opt-Out Deadline, or (iv) the enforcement of the Settlement.

2.37    "Releasing Defendants" means the University of Southern California, the Board of Trustees of the University of Southern California, and George M. Tyndall, M.D.

2.38    "Releasing Defendants' Claims" means all claims and causes of action that Defendants may have against Releasing Plaintiffs and/or Class Counsel, whether known or unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the Litigation or the Released Claims against Defendants. Notwithstanding the foregoing, "Releasing Defendants' Claims" does not include claims relating to the enforcement of the Settlement.

2.39    "Releasing Plaintiffs" means Plaintiffs and each Settlement Class Member.

2.40    "Settlement" means the terms and conditions of settlement embodied in this Agreement.

2.41    "Settlement Class Member" means any Class Member who does not opt out of the Settlement, and "Settlement Class" means that group of individuals as a whole.

2.42    "Settlement Amount" means the sum of $215,000,000.00.

2.43    "Settlement Fund" means the Settlement Amount, once funded pursuant to Section 4.4, together with any interest and accretions thereto, which may be reduced by payments or deductions as provided herein or by Court order.

2.44    "Special Master" means the individual selected by the Parties, subject to Court approval, to administer and adjudicate the Claims Process set forth in Section 6.5 and to serve as the Special Master as set forth in Section 7.

2.45    "Special Master's Team" means any psychologists, psychiatrists, PTSD experts, or other experts or trained specialists or administrative personnel retained by the Special Master to assist in conducting interviews and evaluating Claim Forms and evidence under the Special Master's supervision. The Special Master's team shall include at least one board certified OB/GYN, a forensic psychologist, and include at least one woman.

2.46    "Statement of Settlement Class Membership" means either a statement in the form agreed upon by the Parties, or another simple, qualifying written statement, signed under penalty of perjury, to be submitted electronically or via U.S. mail by a Claimant, declaring that she is a Settlement Class Member.

2.47    "Supplemental Agreement" means an agreement signed by the parties, which provides Defendants the option to withdraw from the Settlement if an agreed upon number of Class Members who exclude themselves from the Class is exceeded, which number shall be submitted to the Court *in camera* or under seal, and kept confidential by the Parties unless the Court orders otherwise.

2.48   "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

3.   **SCOPE AND EFFECT OF SETTLEMENT**

3.1   **Scope of the Settlement.** This Settlement compromises and resolves the Released Claims and the Releasing Defendants' Claims only.

3.2   **Settlement Class Certification.** The Parties stipulate to, and waive their rights to appeal, class certification, for settlement purposes only, of the following Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All women who were seen for treatment by Dr. George M. Tyndall at the University of Southern California student health center during the period from August 14, 1989 to June 21, 2016:
>
> (a)   for Women's Health Issues;
>
> (b)   whose treatment by Dr. George M. Tyndall included an examination by him of her breast or genital areas; or
>
> (c) whose treatment included the taking of photographs or videotape of her unclothed or partially clothed body.
>
> "Women's Health Issues" includes but is not limited to any issue relating to breast, vaginal, urinary tract, bowel, gynecological, or sexual health, including contraception and fertility. A list of Women's Health Issues is attached hereto as Exhibit A.

3.3   **Defendants' Reservation of Rights.** Defendants do not agree to class certification for any purpose other than to effectuate this Settlement. Defendants expressly reserve their right to contest certification in the event this Settlement is not approved or fails to become effective for any reason.  The Parties agree that if the Settlement is not approved or fails to become effective for any reason, the litigation will return to the status quo as of August 28, 2018.

3.4   **Preliminary Approval Proceedings.** Promptly after execution of the Agreement, Plaintiffs will submit the Agreement together with its Exhibits to the Court and will apply for

entry of an order substantially in the form of the [Proposed] Preliminary Approval Order,
requesting, *inter alia*, preliminary approval of the Settlement set forth in the Agreement; the
setting of dates for the mailing of the Notice, Claim Form Deadline, Opt-Out Deadline,
Objection Deadline, and Final Approval Hearing; approval of the Claims Administrator;
appointment of the Special Master; and approval of the Notice.

3.5     **Opt-Out Right.** Any Class Member who wishes to opt out of the Class must
submit a timely written request for exclusion on or before the Opt-Out Deadline, in the manner
specified in the Notice and Preliminary Approval Order, which written request will in any event
include sufficient identifying information so that Defendants may properly evaluate their right to
withdraw from the Settlement in accordance with Section 9.3, *infra*.  All requests for exclusion
must be signed with a handwritten signature (or similar mark) by the person seeking to exclude
herself from the Class.

3.6     **Defective Submissions**.  If a Class Member's request to opt out is materially
defective as to the requirements listed herein, that Class Member will be given an opportunity to
cure the defect(s).  The Settlement Administrator will mail the Class Member a cure letter within
10 business days of receiving the defective submission to advise the Class Member that her
submission is defective and that the defect must be cured to render the Request for Exclusion
valid.  The Class Member will have until the later of (a) the Response Deadline or (b) 20
calendar days from the date of the cure letter, whichever date is later, to postmark or provide
electronically a revised Request for Exclusion.  If a Class Member responds to a cure letter by
filing a defective Request for Exclusion, then the Settlement Administrator will have no further
obligation to give notice of a need to cure.  If the revised Request for Exclusion is not
postmarked or received electronically within that period, it will be deemed untimely.

3.7     **Binding Effect of Settlement Upon Class Members.** If this Settlement is
approved by the Court, at the Effective Date, all persons within the Class will be bound by the
terms of the Settlement, except those Class Members who effectively exercise their right to opt
out of the Class.

3.8     **Objections.** Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the application of Class Counsel for an award of attorneys' fees and costs and/or for service awards for Plaintiffs, must timely do so in the manner specified in the Preliminary Approval Order and in any subsequent notice or order concerning the application for attorneys' fees and costs and/or for service awards to Plaintiffs.

3.9     **Final Approval Proceedings.** Plaintiffs will request that the Court hold the Final Approval Hearing after notice to Class Members is given. Plaintiffs agree to share with Defendants all Settlement approval documents which Plaintiffs intend to file with the Court, and Defendants shall have reasonable opportunity to comment on Settlement approval documents before they are filed.  At the Final Approval Hearing, Plaintiffs will request entry of an order granting final approval of this Agreement, substantially in the form of the [Proposed] Final Order and Judgment:

(a)     finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b)     directing that the Litigation be dismissed with prejudice, and releasing the Released Claims and the Releasing Defendants' Claims as set forth below;

(c)     reserving jurisdiction with respect to implementation and enforcement of the terms of the Agreement; and

(d)     containing such other and further provisions consistent with the terms of the Settlement to which the Parties expressly consent in writing.

3.10    **Extinguishment of Released Claims.** Upon the Effective Date, all Releasing Plaintiffs and anyone claiming through or on behalf of any of them, including but not limited to each of their respective heirs, estates, predecessors, successors, agents, and assigns, will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against Defendants, or against Defendants' representatives; insurance carriers and insurers of their insurance carriers; estates; current and former administrators, current and former

officers, current and former trustees, current and former employees and current and former agents in their official and individual capacities; predecessors; successors; subsidiaries; parents; affiliates; assigns; and any employees, officers, administrators or agents of any of Defendants' subsidiaries, parents, affiliates, or assigns (the "Released Parties"). Upon the Effective Date, the Releasing Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against any of the Released Parties. As to the Released Claims only, all Releasing Plaintiffs hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasing Plaintiffs expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims.  In connection with such waiver and relinquishment, Releasing Plaintiffs hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties.  In furtherance of such intention, the Release herein given by Releasing Plaintiffs to the Released Parties shall be and remain in effect as a full and complete general

release as to the Released Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section. Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this Release is a part.

3.11 **Extinguishment of Releasing Defendants' Claims.** Upon the Effective Date, Defendants will be deemed to have fully, finally, and forever released, relinquished, and discharged all Releasing Defendants' Claims against Releasing Plaintiffs, and Class Counsel, whether arising under federal, state, common or foreign law. Upon the Effective Date, Defendants will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Releasing Defendant's Claim against any of the Releasing Plaintiffs and/or Class Counsel. Defendants are aware of section 1542 of the California Civil Code and expressly waive and relinquish any rights or benefits available to them under that statute or under any comparable statutory or common law provision of any other jurisdiction with respect to the Releasing Defendants' Claims.

4. **SETTLEMENT CONSIDERATION**

A. **Equitable Relief.**

4.1 USC will ensure that its medical personnel act consistently with the best practice standards recognized by the SCOPE program of the American College of Obstetricians and Gynecologists. Additionally, USC will adopt and implement written operating and oversight procedures for identification, prevention, and reporting of improper sexual or other offensive conduct at USC's student health center.

4.2 Subject to Court approval, an individual agreed upon by the Parties who is not affiliated with USC, and who has appropriate experience and expertise to ensure compliance

with the above-stated procedures, will be appointed as an Independent Monitor to monitor and ensure compliance with these Equitable Relief provisions.  All costs associated with the Independent Monitor shall be paid from the Settlement Fund.

4.3     The specific measures that USC will undertake to satisfy these provisions, and the Independent Monitor's powers and responsibilities to ensure compliance, are set forth in the Equitable Relief Measures, attached hereto as Exhibit B.

**B.     Monetary Relief.**

4.4     Within 10 days after Preliminary Approval, Defendants will deposit an advance of the Settlement Amount of $5 million applicable towards costs of notice and administration in the Escrow Account pursuant to instructions to be delivered by Co-Lead Class Counsel.  The balance of the Settlement Amount shall be payable into the Escrow Account within 10 days of the Effective Date.

4.5     Tyndall will contribute toward the Settlement Amount any insurance proceeds paid on his behalf as a result of any policy that covers any portion of the claims asserted in the Litigation. Any dispute among Defendants relating to contribution of insurance proceeds to fund the Settlement will not affect their obligation to pay the amounts due hereunder.

**5.     USE OF THE SETTLEMENT FUND**

5.1     **Disbursements.** The Settlement Fund will be used to pay: (a) Administrative Expenses; (b) Taxes; (c) distributions to Claimants as provided herein and in the Claim Procedures; and (d) any service awards that the Court may award to the Class Representatives.

5.2     **Tax Implications for Claimants.**   Defendants make no representation or warranty, and provide no advice, regarding the tax consequences, if any, of this Agreement. Claimants are advised to consult with appropriate legal counsel regarding any tax implications of this Agreement. It is the intention of the parties that every payment to a Settlement Class Member as provided herein is a payment made because of a personal injury suffered by the Settlement Class Member.

5.3     **Investment of Settlement Amount.** The Escrow Agent may invest the Settlement Amount in United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and may reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph will be borne by the Settlement Fund. Defendants will have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of, including any transactions executed by, the Escrow Agent.

5.4     **Execution of Approved Transactions.** Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Agreement. Defendants will have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent in its capacity as such.

5.5     **Fund Under Court Jurisdiction.** All funds held by the Escrow Agent will be deemed and considered to be *in custodia legis* of the Court, and will remain subject to the jurisdiction of the Court, until such time as such funds will be distributed pursuant to the Agreement and/or further order(s) of the Court.  The Parties will account to the Court in regards to expenditures from the Settlement Fund in such manner and at such times as the Court shall direct. The Settlement will not depend on the Court accepting particular proposed distributions, provided that there is a valid and binding release of class claims.

5.6     **No Return of Funds After Effective Date.** Upon the occurrence of the Effective Date, neither Defendants nor any other person or entity that paid any portion of the Settlement Amount will have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever (including, without limitation, the number of Claim Forms submitted, in absolute terms or by category, or the amounts to be paid to Claimants), except as set forth in ¶ 9.2 below.

5.7     **Qualified Fund and Relation Back.** The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. Additionally, the Escrow Agent will timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections will be made in compliance with the procedures and requirements contained in such regulations. It will be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.8     **Tax Administrator.** For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" will be the Escrow Agent. The Escrow Agent will timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described above) will reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund as provided herein.

5.9     **Taxes.** All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of these Tax provisions (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) returns) ("Tax Expenses"), will be paid out of the Settlement Fund; in no event will any Defendant or any of its or his counsel have any liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent, through the

Settlement Fund, will indemnify and hold each Defendant and its or his counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses will be treated as, and considered to be, a cost of administration of the Settlement Fund and will be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent will be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither Defendants nor any of their counsel are responsible or will have any liability for any Taxes or Tax Expenses. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to ensure performance of these Tax provisions.

5.10    **Responsibility for Liens.**

(a) The Parties have appointed the Claims Administrator to administer the process to identify and resolve potential Liens owed for medical treatment paid on behalf of a Settlement Class Member by, but not limited to, Governmental Payors or Medicare Part C and D Program sponsors. The Claims Administrator will determine from information provided directly to the Claims Administrator whether there is a potential repayment obligation for medical treatment related to this Settlement asserted against an eligible Settlement Class Member. The Claims Administrator will satisfy, either globally or on an individual basis, any such Liens out of a Settlement Class Member's Claims Award in advance of payment to that Settlement Class Member or, upon notice of a final lien total, hold funds equal to the amount of the Lien without distributing the held funds to the Settlement Class Member until the Lien has been satisfied or waived.

(b) The Claims Administrator will obtain documentation that any applicable Lien has been resolved, either globally or otherwise, and whether through payment or otherwise. The Claims Administrator will provide to Class Counsel or the Special Master, upon request,

information received for the purposes of verifying compliance and repayment satisfaction. The
Claims Administrator shall provide any information requested by the Defendants' insurers, in a
form that is acceptable to the insurers that they may need to comply with reporting obligations
applicable to them with respect to any Lien.  The Claims Administrator will also satisfy the
reporting obligations, if any, under the requirements of Section 111 of the Medicare, Medicaid,
and SCHIP Extension Act of 2007 and the Defendants' insurers hereby authorize the Claims
Administrator to report such information to applicable authorities. The Claims Administrator
shall provide all information needed by the Defendants' insurers in order to permit any reporting
deadlines to be met, and no funds shall be disbursed to any Settlement Class Member until after
the insurers have confirmed that they have received all information needed to permit them to
meet any reporting obligations.

       (c) Each Settlement Class Member (and his or her respective counsel, if applicable)
will be solely responsible for the satisfaction and discharge of all Lien obligations. This includes
any potential notice obligation required by statute or otherwise when making a claim for and/or
receiving compensation under this Settlement. Notwithstanding that responsibility, the Claims
Administrator will perform the duties outlined herein upon authorization by the Court and each
Settlement Class Member agrees to execute any supplemental documents or correspondence,
provide any additional information, and take all additional actions that may be necessary or
appropriate to allow the Claims Administrator to identify or resolve a Lien. The Claims
Administrator, through Class Counsel, will seek a Qualified Protective Order from the Court
authorizing the Claims Administrator to receive and send information that is, or may be,
protected under the Health Insurance Portability and Accountability Act ("HIPAA") to fulfill the
duties described herein on behalf of Settlement Class Members.

       (d) If any person or entity claims a Lien, other than those described above, with
respect to a Settlement Class Member's Claims Award and the Claims Administrator has been
put on notice of such Lien, the Claims Administrator will have no authority to  pay any Claims
Award to any Settlement Class Member subject to a Lien that has not been fully and finally

released. Nothing in here shall be interpreted to create or expand Lien recovery rights held by third parties pursuant to applicable law.

(e) Defendants' Reliance. In reaching this Agreement and paying the Settlement Amount, the Defendants are relying on the foregoing representations and warranties of the Plaintiffs and, specifically, the actions that the Plaintiffs have represented that the Claims Administrator and the Settlement Class Members will take to satisfy any and all liens and claims should they arise, pertaining to matters involved in or relating to the Litigation and the Released Claims.

(f) The Claims Administrator shall release, defend, indemnify, and hold harmless the Released Parties from any and all damages, penalties, costs, expenses and fees incurred in connection with any claim or cause of action asserted based on a Medicare or Medicaid Lien against the Released Parties as a result of the settlement payments to be made to Settlement Class Members.

(g) The Claims Administrator shall release, defend, indemnify and hold harmless the Released Parties from any and all adverse consequences in the event that this settlement results in the loss of any Medicare or Medicaid rights or benefits to any Settlement Class Member.

(h) The Released Parties are hereby made express third party beneficiaries of this Section 5.9 and may enforce directly and in their own name, and without the consent of any other person, all obligations of the Claims Administrator set forth in Sections 5.9(a)–(d).

(i) Any modifications to the language above in this Section 5.9 must be approved by the Released Parties.

## 6.    NOTICE AND ADMINISTRATION

6.1    **Notice Program.** Within 7 days after entry of the Preliminary Approval Order, USC will furnish all information reasonably available to it to assist in the identification of all potential Settlement Class Members. Direct notice of the Settlement will begin within 28 days after entry of the Preliminary Approval Order. The proposed notice program is described in the concurrently filed declaration of Jennifer M. Keough.

6.2     **Website.** The Claims Administrator will establish a standalone website for the Settlement, which will make all relevant materials available to Class Members and have the ability to receive Claim Forms.

6.3     **Claims Administration.** The Claims Administrator will receive all Claims and process them as directed by the Special Master or as otherwise set forth in the Settlement Agreement and Claim Procedures, or as otherwise approved by the Court.   Unless the Court otherwise orders, claims processing will continue notwithstanding the pendency of an appeal, except that Defendants shall be under no obligation to pay claims prior to the occurrence of the Effective Date.

6.4     **Claims Process Generally.** Unless the Court orders otherwise, the Settlement Fund will be distributed to Class Members pursuant to a three-tiered claim process.   The Special Master will be responsible for overseeing the administration of disbursements from the Settlement Fund. Defendants will have no direct role in determining individual Claim Awards and cannot challenge the Claim Award to any Settlement Class Member.   Plaintiffs will work in good faith with USC in developing the Claim Form, but the Claim Form will ultimately be approved by the Special Master and may be modified by the Special Master after notice to the parties. The Claim Process will include the following terms:

(a) **Tier 1.** Every Settlement Class Member is eligible for a Tier 1 payment, simply by virtue of being a Settlement Class Member.   A Settlement Class Member who accepts a Tier 1 Claim Award remains eligible to make a Tier 2 or Tier 3 claim. The Tier 1 Claim Award shall be counted against any further award, but under no circumstances will a Settlement Class Member be required to return a Tier 1 Claim Award.

(i) Upon the Effective Date, each Settlement Class Member who can be identified through USC's existing health center records (which cover the period from July 14, 1997, through June 21, 2016), will be mailed a Tier 1 Claim Award (in the form of a check for $2,500), representing an initial amount for damages for all claims advanced by the Settlement Class or that could have been advanced.

(ii) Upon the Effective Date, each Settlement Class Member who has completed online or returned by mail a qualifying Statement of Settlement Class Membership signed under penalty of perjury will be mailed a Tier 1 Claim Award (in the form of a check for $2,500), representing an initial amount for damages for all claims advanced by the Settlement Class or that could have been advanced. To qualify, Settlement Class Members for the period August 14, 1989 to July 13, 1997, must have their student status confirmed by records from USC registrar's office, or, if the Settlement Class Member is not a student, submit credible evidence of Class Membership. These Tier 1 Claim Awards will be mailed upon confirmation of a qualifying Statement (even if the Class Member also submitted a Tier 2 and Tier 3 Claim Form along with the Statement).

(b) **Tier 2**. Each Settlement Class Member has the option to submit an online or written Claim Form describing her experience, the impact to her, and/or the damages she suffered. That Claim Form will be reviewed by the Special Master's Team. The Special Master's Team may submit additional questions to a Claimant to be answered in writing. If the Special Master determines that the Claim Form is credible, and that the conduct or statement(s) described fall outside the scope of accepted medical standards of care applicable during the relevant time, or that the conduct or statements are determined to otherwise be actionable, the Claimant shall receive a Claim Award of no less than $7,500 and no more than $20,000, subject to Pro Rata Adjustments. If the Special Master determines the Claimant is not entitled to an enhanced damages award, she will nonetheless receive a Tier 1 Claim Award.

(c) **Tier 3**. Tier 3 is reserved for Settlement Class Members who want to provide further evidence (beyond the written Claim Form and written follow up questions) of conduct by or statement(s) from Tyndall and their impact. In addition to the Claim Form describing her experience, the impact to her, and/or the damages she suffered, Settlement Class Members making a Tier 3 Claim will also have the opportunity to submit additional evidence of impact or damages, and be interviewed by a member of the Special Master's

Team, regarding the Settlement Class Member's experience and its impact on her. The interviewer will provide an assessment to the Special Master. Based on all information, the Special Master will determine whether the Claim Form is credible, the conduct or statement(s) described fall outside the scope of accepted medical standards of care applicable during the relevant time, or the conduct or statements were otherwise actionable, and based on an assessment of the emotional distress and/or bodily injury to the Claimant, the Special Master will recommend a Claim Award of no less than $7,500 and no more than $250,000, subject to Pro Rata Adjustments. If the Special Master determines the Claimant is not entitled to an enhanced damages award, she will nonetheless receive a Tier 1 Claim Award.

6.5     **Claim Procedures.** The procedures for distribution of the Settlement Fund to Settlement Class Members will be consistent with the following:

(a) **Tier 1**. All Settlement Class Members will receive a Tier 1 Claim Award. Settlement Class Members may additionally elect to submit a Tier 2 or 3 Claim Form.

(b) **Tier 2**. A Settlement Class Member can initiate a request for a Tier 2 Claim Award by submitting a Tier 2 Claim Form that will be provided in the Notice.

(i) The Tier 2 Claim Form will ask Settlement Class members to provide, in narrative and checklist form, information designed to identify the nature and scope of her alleged experience with Tyndall, including identifying any conduct or statement(s) that fell outside the scope of acceptable medical standards of care applicable at the time of the incident, or may be otherwise actionable, and any resulting emotional distress and/or bodily injury.

(ii) The Special Master's Team will assess the Claim Form in light of any relevant records and, if he or she deems it appropriate, may ask additional questions in writing or request additional information in writing from the Claimant, to determine the amount of the Tier 2 Claim Award, subject to any Pro Rata Adjustments. If the Settlement Class Member fails or otherwise declines to

timely provide the additional information requested by the Special Master's Team, it may affect the amount awarded.

(c) **Tier 3**. A Settlement Class Member can initiate a request for a Tier 3 Claim Award by submitting a Tier 3 Claim Form that will be provided in the Notice.

(i) The Tier 3 Claim Form will ask each Settlement Class Member to provide, in narrative and checklist form, information designed to identify the nature and scope of her alleged experience with Tyndall, including identifying any conduct or statement(s) that fell outside of the scope of acceptable medical standards of care applicable at the time of the incident, or may be otherwise actionable, and any resulting emotional distress and/or bodily injury.

(ii) The Settlement Class Member will also have the opportunity to submit additional documentary evidence of the impact of the events on the Settlement Class Member as well as damages. A member of the Special Master's Team shall interview the Settlement Class Member.

(iii) The Settlement Class Member may decline to participate in the interview. A Settlement Class member who submits a Tier 3 claim but who declines to participate in an interview may in no event receive an award which exceeds the range applicable to Tier 2 Claim Awards, between $7,500 and $20,000, subject to Pro Rata Adjustments.

(iv) The Special Master will assess the totality of the information submitted by the Settlement Class Member and make a finding whether the conduct described is a departure from accepted standards of care at the relevant time or is otherwise actionable, as well as whether the Claimant has established injuries that the Special Master determines to be credible. The Special Master will also consider the assessment of the interviewer as described in Paragraph 6.4(c), above. The Special Master will then determine the amount of any Tier 3 Claim Award, subject to Pro Rata Adjustments.

6.6     **Appeals.** Each Claimant will have the right to request that the Special Master reconsider, for any reason, the determination of that Claimant's Claim Award. The Special Master will establish fair procedures to govern this reconsideration process and ensure that each Claimant is provided adequate notice of those procedures in connection with the distribution of Claim Awards. The Special Master's ultimate determination of a Claimant's Claim Award is final and cannot be appealed.

6.7     **Late Claims.**  The parties recognize that in class action settlements, despite best efforts, late claims will be filed.  The Special Master, during the period where timely claims are being evaluated, may, for good cause, allow a late claim.

6.8     **No Claims Arising From Settlement Administration.** No person will have any claim against Plaintiffs, Class Counsel, any person designated by Class Counsel, the Special Master, or the Claims Administrator arising from or relating to determinations or distributions made substantially in accordance with this Agreement, the Claim Procedures, or further order(s) of the Court.

6.9     **Further Proceedings in the Event of Settlement Residue.** If the Settlement Amount is not fully disbursed after a 50% Pro Rata Increase is applied to the Claim Awards and after payment of any Taxes, Administrative Expenses, and any service awards to the Class Representatives that the Court may approve, the Parties will notify the Court and propose additional means of distributing the remaining amount in the Settlement Fund, namely: providing additional notice of the Settlement to non-participating Class Members or distributions to appropriate *cy pres* recipients.  There will be no *cy pres* distribution unless the Court finds that the parties have in good faith exhausted all reasonable efforts to distribute the Settlement Fund to Class Members.

6.10    **Class Member Confidentiality and Information Sharing with Insurers.** Defendants and their insurance counsel, as set forth below, will work in good faith with Plaintiffs to develop a procedure for claims for such fund distribution and sharing of information to ensure that appropriate and adequate information is gathered on behalf of the Defendants in order to

submit that documentation on each Claim Award to Defendants' insurance carriers, but Defendants will not have access to the identities of Claimants or the documentation on each Claim Award and will have no role whatsoever in determining individual Claim Awards and cannot challenge the Claim Award to any individual Settlement Class member. Plaintiffs will make all information, including, but not limited to, the completed questionnaire, any supporting documentation and, if applicable, notes from any interviews that are related to a Claim Award available to Defendants' insurers directly through Defendants' insurance coverage counsel. Plaintiffs will also make all information necessary to comply with reporting obligations with respect to any Lien available to Defendants' insurers through the Claims Administrator as required by Section 5.9(b) of this Agreement.  Furthermore, the Special Master will make him or herself reasonably available to answer insurer questions about the process and/or Claim Awards. The parties acknowledge that all Claimant-identifying information shall be protected from disclosure by the relevant laws and regulation governing the protection of personal information, including but not limited to the California Financial Privacy Act and the California Insurance Information and Privacy Protection Act.  Further, USC acknowledges that its insurers have executed appropriate non-disclosure agreements with confidentiality protections limiting the disclosure of and protecting the confidentiality of the information.

6.11    **Return or Destruction of Claims Process Materials.** At the conclusion of the Claims Process, the Claims Administrator and Special Master will destroy all materials submitted during the Claims Process, or, if requested by the Claimant, will return such materials to the Claimant. Further, all work product of the Claims Administrator and Special Master containing claimant-specific information will be destroyed. The Claims Administrator and Special Master shall then provide Affidavits of Return or Destruction to the parties and the Court.

6.12    **Fees and Costs of Notice and Administration.** The fees and costs of notice and administration are part of the Administrative Expenses and will be paid out of the Settlement Fund.

7.      **THE SPECIAL MASTER**

7.1     **Selection of Special Master.** A Special Master will adjudicate Claims under the Claims Process. The Parties will select and propose that the Court appoint as the Special Master an independent, mutually agreeable individual with knowledge of and experience with claims of sexual abuse. Plaintiffs shall select the Special Master and her team, and Defendants shall have approval authority of the selected Special Master and her team, which approval shall not be unreasonably withheld. Among other designated responsibilities, the Special Master will assess and adjudicate the Claims Awards.  In consultation with the Special Master and her team, the Parties shall jointly develop the protocols for interviews or other oral or written direct contact with Settlement Class members relating to Tier 2 and Tier 3 claims.

7.2     **Class Counsel Presentation.** Class Counsel will retain one or more experts to make a presentation to the Special Master, or to prepare one or more reports to be presented by Class Counsel to the Special Master, concerning acceptable conduct or medical standards of care applicable during the Class Period. The Special Master may submit questions to and receive further information from the expert(s) retained by Class Counsel.

7.3     **Special Master Consultation of Independent Experts.** The Special Master may consult with other experts independently, but is required to disclose their identities and any information, determinations, or conclusions (and the bases therefor) received from such independent experts upon which the Special Master intends to rely. Class Counsel will then have a reasonable period to respond or provide additional information if necessary.  Class Counsel will also make all such information, including, but not limited to, any information, determinations, or conclusions (and the bases therefor) received from such independent experts by the Special Master available to Defendants' insurers directly through Defendants' insurance coverage counsel.

7.4     **Fees and Costs of Special Master.** The fees and costs of the Special Master are part of the Administrative Expenses and will be paid out of the Settlement Fund.  Class Counsel

shall negotiate such fees and monitor expenditures and payments will be reported as directed by the Court.

## 8. ATTORNEYS' FEES AND COSTS; SERVICE AWARDS

8.1     **Attorneys' Fees and Costs.** All attorneys' fees and costs will be paid separately by Defendants, in addition to and without any reduction of the Settlement Fund.  Any fee and cost award must be approved by the Court. Class Counsel will apply on behalf of themselves and Additional Class Counsel for an award of attorneys' fees and reimbursement of expenses after final approval and implementation of the claims procedure. Class Counsel's request for attorneys' fees and reimbursement of expenses will not exceed $25 million.  If the fee and cost award approved by the court is less than the amount sought by Class Counsel, this will not be a basis for setting aside this Settlement.

8.2     **Service Awards.** In conjunction with their application for attorney's fees and reimbursement of expenses, Class Counsel will request that the Court approve service awards to the Class Representatives. Any approved service award will be paid from the Settlement Fund.

## 9. TERMINATION

9.1     **No Right to Reversion.** Defendants have no right to reversion of any portion of the Settlement Fund unless this Agreement is not approved or fails to become effective for any reason. Under no circumstances will any Defendant have any right to reversion of any funds expended for Administration Expenses.

9.2     **Partial Refund.** In the event that the Agreement is not approved or fails to become effective for any reason, the Settlement Amount, including accrued interest and less Administrative Expenses and Taxes or Tax Expenses paid, incurred, or due and owing in connection with the Settlement as provided for herein, will be refunded to Defendants pursuant to written instructions from counsel for Defendants.

9.3     **Election to Withdraw.** Defendants will have the option to withdraw from the Settlement if the number of Settlement Class Members who exclude themselves from the Class exceeds a number agreed to by the Parties in the Supplemental Agreement.  The number agreed

to by the Parties will be submitted *in camera* or under seal to the Court.  If the Settlement, other than terms pertaining to the attorneys' fees and costs and/or service awards to Class Representatives, is materially modified by any court, Defendants may, in their sole discretion to be exercised within fourteen (14) days after such a material modification, declare the Settlement null and void.  For purposes of this paragraph, material modifications include but are not limited to any modifications to the definitions of the Releasing Plaintiffs, the Class and/or Class Members, or Released Claims.  In the event that Defendants exercise their option to withdraw from and terminate this Settlement, the Settlement proposed herein shall become null and void and shall have no force or effect, the Parties shall not be bound by this Settlement, and the Parties will be returned to their respective positions as of August 28, 2018.

## 10.   GENERAL PROVISIONS

10.1   **Mutual Intent.** The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish such terms and conditions.

10.2   **Good Faith.** The Settling Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

10.3   **Ongoing Best Efforts to Effectuate.** The Parties agree to make their best efforts on an ongoing basis to effectuate the Monetary Relief and Equitable Relief provided for in this Agreement, as well as to defend this Agreement from any legal challenge by objection, appeal, collateral attack, or otherwise.

10.4   **No Waiver**.  The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach.  A Party's failure to exercise any rights under this Agreement shall not constitute waiver of that Party's right to exercise those rights later, except as expressly provided in this Agreement.  No delay by any Party in exercising any power or right under this Agreement will operate as a waiver of that power or right, nor will any

single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right, except as expressly provided.

10.5    **Making Records and Information Available.** Defendants have made and will continue to make records and information available to Class Counsel for purposes of enabling Class Counsel to confirm the scope of the Settlement Class, the proper Defendants, the scope and accuracy of records maintained by the USC registrar's office, and the nature and scope of the claims asserted in the Litigation. Such records and information shall be provided in the form of admissible evidence as reasonably necessary to effectuate the purposes of this Agreement.

10.6    **Public Statements.** The Settling Parties and their respective counsel will cooperate to ensure that any public statement concerning the Litigation and the Settlement by any Settling Party or his, her, or its counsel is accurate and consistent with the Parties' objective of securing Court approval of the Settlement. The Settling Parties and their respective counsel will not make any public statement that disparages the Settlement.

10.7    **Authority of Class Counsel.** Class Counsel, on behalf of the Class, are expressly authorized to take all appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.  All Parties covenant and represent that they have consulted with competent counsel prior to entering into this Agreement.

10.8    **Final Resolution Without Adjudication.** The Settling Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between Releasing Plaintiffs, on the one hand, and the Released Parties, on the other hand, with respect to the Litigation. The Settlement resolves claims which are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 and California Code of Civil Procedure § 128.7. The Settling Parties agree that the Settlement Amount and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

10.9    **No Admission of Liability.** Neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement, (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the truth of any of the allegations in the Litigation of any wrongdoing, fault, or liability of Defendants, or that Plaintiffs or any Class Members have suffered any damages, harm, or loss, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

10.10   **No Court Findings on Liability.** In agreeing to this Settlement, the Parties acknowledge that this Court has not made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Litigation.

10.11   **Use in Other Proceedings.** The Parties will not introduce or use, or cause to be introduced or used, any provision in this Settlement, or any action taken in implementation thereof, or any statements, discussions, or communications, or any materials prepared, exchanged, issued, or used during the course of the Litigation or in negotiations leading to this Settlement, in this Litigation or in any other judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature, as evidence of any violation or lack thereof; provided, however, that any Defendant may file this Agreement and/or the Final Order and Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim.

10.12   **Responsibility of Settlement Class Members for Taxes.** The Parties agree the payments to Settlement Class Members are not wages, and each Settlement Class Member and Class Representative who receives a payment in connection with this Settlement will be fully and

ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such Settlement Class Member or Class Representative.

10.13  **Survival of Confidentiality Agreements.** All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

10.14  **Limitation on Amendment.** The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.15  **Governing Law.** This Agreement and the Exhibits hereto will be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Agreement will be construed and enforced in accordance with, and governed by, the substantive laws of the State of California.

10.16  **Neutral Construction.** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Settling Parties and their counsel. This Agreement will not be construed against any Settling Party on the basis that the Settling Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party will not be employed in the implementation of this Agreement, and the Settling Parties agree that the drafting of this Agreement has been a mutual undertaking.

10.17  **Entire Agreement.** The Agreement and the Exhibits attached hereto constitute the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in these documents.

10.18  **Exhibits Fully Integrated.** All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

10.19 **Severability.** Except as otherwise provided in this Agreement, if any covenant, condition, term or other provision in this Agreement is held to be invalid, void or illegal, the same will be deemed severed from the remainder of this Agreement and will in no way affect, impair or invalidate any other covenant, condition, term or other provision in this Agreement. If any covenant, condition, term or other provision in this Agreement is held to be invalid due to its scope or breadth, such covenant, condition, term or other provision will be deemed valid to the extent of the scope or breadth permitted by law.

10.20 **Authority to Execute.** Each counsel or other Person executing the Agreement or any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

10.21 **Execution in Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of executed counterparts will be filed with the Court. Signatures sent by facsimile or sent in PDF form via e-mail will be deemed originals.

10.22 **No Prior Assignments**. The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or that are rights released or discharged in this settlement except as set forth in this Agreement.

10.23 **Binding Upon Successors and Assigns.** The Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.24 **Continuing Jurisdiction.** The Court will retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement and matters related to this settlement.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY:

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
By: _____ Date: 2/12/19
Steve W. Berman
Shelby R. Smith
1301 Second Avenue, Ste 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594

Elizabeth A. Fegan
Emily Brown
455 N. Cityfront Plaza Dr., Ste 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Fax: (708) 628-4950

Christopher Pitoun
301 North Lake Ave.
Suite 920
Pasadena, CA 91101
Phone: (213) 330-7150
Fax: (213) 330-7152

**GIRARD SHARP LLP**
By: _____ Date: 2·12·19
Daniel C. Girard
Jordan Elias
Adam E. Polk
Elizabeth A. Kramer
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Fax: (415) 981-4846

**LIEFF CABRASER HEIMANN AND
BERNSTEIN LLP**
By: _____ Date: _____
Jonathan D. Selbin
Annika K. Martin
Laura B. Heiman
275 Battery Street 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**UNIVERSITY OF SOUTHERN
CALIFORNIA**
By: _____ Date: _____
Dr. Wanda M. Austin
USC Office of the President
University of Southern California
Los Angeles, CA 90089-0012
Telephone: (213) 740-2111
Fax: (213) 821-1342

*Interim President of the University of Southern
California*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
By: _____ Date: _____
Shon Morgan
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant University of Southern
California*

**GEORGE M. TYNDALL, M.D.**
By: _____ Date: _____
George M. Tyndall, M.D.

*Defendant George Tyndall, MD*

**TAYLOR DEMARCO LLP**
By: _____ Date: _____
N. Denise Taylor
1000 Wilshire Blvd.
Suite 600
Los Angeles, CA 90017
Telephone: (213) 687-1600
Fax: (213) 687-1620

*Counsel for Defendant George Tyndall, MD*

APPROVED AND AGREED TO BY:

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
By: _____ Date: _____
Steve W. Berman
Shelby R. Smith
1301 Second Avenue, Ste 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594

Elizabeth A. Fegan
Emily Brown
455 N. Cityfront Plaza Dr., Ste 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Fax: (708) 628-4950

Christopher Pitoun
301 North Lake Ave.
Suite 920
Pasadena, CA 91101
Phone: (213) 330-7150
Fax: (213) 330-7152

**GIRARD SHARP LLP**
By: _____ Date: _____
Daniel C. Girard
Jordan Elias
Adam E. Polk
Elizabeth A. Kramer
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Fax: (415) 981-4846

**LIEFF CABRASER HEIMANN AND
BERNSTEIN LLP**
By: _____ · Date: 2/11/2019
Jonathan D. Selbin
Annika K. Martin
Laura B. Heiman
275 Battery Street 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**UNIVERSITY OF SOUTHERN
CALIFORNIA**
By: _____ Date: _____
Dr. Wanda M. Austin
USC Office of the President
University of Southern California
Los Angeles, CA 90089-0012
Telephone: (213) 740-2111
Fax: (213) 821-1342

*Interim President of the University of Southern
California*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
By: _____ Date: _____
Shon Morgan
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant University of Southern
California*

**GEORGE M. TYNDALL, M.D.**
By: _____ Date: _____
George M. Tyndall, M.D.

*Defendant George Tyndall, MD*

**TAYLOR DEMARCO LLP**
By: _____ Date: _____
N. Denise Taylor
1000 Wilshire Blvd.
Suite 600
Los Angeles, CA 90017
Telephone: (213) 687-1600
Fax: (213) 687-1620

*Counsel for Defendant George Tyndall, MD*

02261-00009/10579459.8

**- 34 -**

APPROVED AND AGREED TO BY:

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
By: _____ Date: _____
Steve W. Berman
Shelby R. Smith
1301 Second Avenue, Ste 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594

Elizabeth A. Fegan
Emily Brown
455 N. Cityfront Plaza Dr., Ste 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Fax: (708) 628-4950

Christopher Pitoun
301 North Lake Ave.
Suite 920
Pasadena, CA 91101
Phone: (213) 330-7150
Fax: (213) 330-7152

**GIRARD SHARP LLP**
By: _____ Date: _____
Daniel C. Girard
Jordan Elias
Adam E. Polk
Elizabeth A. Kramer
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Fax: (415) 981-4846

**LIEFF CABRASER HEIMANN AND
BERNSTEIN LLP**
By: _____ Date: _____
Jonathan D. Selbin
Annika K. Martin
Laura B. Heiman
275 Battery Street 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**UNIVERSITY OF SOUTHERN
CALIFORNIA**
By: _____ Date: 2/11/19
Dr. Wanda M. Austin
USC Office of the President
University of Southern California
Los Angeles, CA 90089-0012
Telephone: (213) 740-2111
Fax: (213) 821-1342

*Interim President of the University of Southern
California*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
By: _____ Date: 2/11/19
Shon Morgan
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant University of Southern
California*

**GEORGE M. TYNDALL, M.D.**
By: _____ Date: _____
George M. Tyndall, M.D.

*Defendant George Tyndall, MD*

**TAYLOR DEMARCO LLP**
By: _____ Date: 2/11/19
N. Denise Taylor
1000 Wilshire Blvd.
Suite 600
Los Angeles, CA 90017
Telephone: (213) 687-1600
Fax: (213) 687-1620

*Counsel for Defendant George Tyndall, MD*

Fax: (415) 956-1008

*Plaintiffs' Co-Lead Class Counsel as Authorized
by Class Representatives*

**SAUDER SCHELKOPF LLC**
By: _____ Date: 2.12.19
Joseph G. Sauder
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Fax: (610) 421-1326

**KOHN SWIFT & GRAF, P.C.**
By: _____ Date: 2/12/2019
Jonathan Shub
1600 Market St #2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
Fax: (215) 238-1700

*Plaintiffs' Additional Class Counsel*

# EXHIBIT A

# List of Women's Health Issues

- Comprehensive annual and/or gynecological exam with or without pap smear;
- Evaluation of breast for any reason, including but not limited to lumps, swelling, pain and discharge;
- Evaluation of urinary tract infection and urinary symptoms including but not limited to urinary frequency, burning, pain, bladder spasm, urgency, incontinence of urine, passage of blood, with or without fever and back pain;
- Disorder of menstrual periods, including but not limited to heavy menstrual periods, absence of menstrual periods, painful menstrual periods, prolonged menstrual periods, frequent menstrual periods, infrequent menstrual periods, bleeding between menstrual periods, and hormonal imbalance issues including premenstrual syndrome ("PMS"), menopause symptoms and premenopause symptoms;
- Sexual complaints or concerns including but not limited to painful intercourse, bleeding after intercourse, and any difficulties with sexual relations;
- Symptoms, concerns or diagnoses involving the pelvic area related to reproductive organs including but not limited to ovarian cysts, ovarian tumors, fibroids, and endometriosis;
- Vaginal symptoms including but not limited to discharge, irritation, burning, itching with or without odor, and concern regarding retained foreign body;
- Vaginal and vulvar symptoms with or without lumps, sores, growths in the vaginal or vulvar area and rashes;
- Concerns regarding sexually transmitted disease exposure, evaluation, treatment and/or testing, and sexually transmitted disease counseling and prevention;
- Cervical disease including abnormal pap smears, diagnosis follow-up and treatment;
- Contraception related appointments for counseling, education, and treatment including but not limited to birth control prescription, refills, diaphragms, and intrauterine device insertion, removal and complications;
- Pregnancy and fertility issues including but not limited to diagnosis, evaluation, pregnancy testing, conception difficulties and evaluation of complications and symptoms related to pregnancy;
- Evaluation of anal/rectal issues including but not limited to hemorrhoids, rectal pain, fissures, bleeding and lumps or sores;
- Exam requiring you to be partially or fully unclothed in the breast, buttocks, and/or pelvic region.

# EXHIBIT B

## <u>EQUITABLE RELIEF MEASURES</u>

1.  The parties agree equitable relief is a material component of the Settlement.  The Parties further acknowledge that it is their mutual intent that USC's medical personnel act consistently with the best practice standards of the American College of Obstetricians and Gynecologists under its SCOPE certification program; and more generally, that USC adopt and implement adequate operating and oversight procedures for identification, prevention, and reporting of improper sexual or racial conduct at campus operations with a nexus to USC's Engemann Student Health and Cohen Student Health (together, "USC Student Health."

2.  <u>Appointment of Independent Women's Health Advocate:</u>  The Parties will jointly select, and the University will appoint, subject to approval by the Court, an independent (non-USC) advocate ("Independent Women's Health Advocate") to ensure compliance with the items 3 to 4 below.  Although not a USC employee, the Independent Women's Health Advocate's compensation will be paid by USC.  The Independent Women's Health Advocate's Court appointed role will continue for a minimum of 3 years.

    The precise nature and scope of the Independent Women's Health Advocate's duties will be detailed by the Equitable Relief Committee described in paragraph 6 below, and consistent with the scope contemplated by paragraph 1. Such duties may include, among other things, a) receiving complaints of improper sexual or racial conduct reported by any patient, student and/or personnel at the Student Health Center, b) confirming that all such complaints are investigated by either the University's recently established Office of Professionalism and Ethics and/or the University's Office of Equity and Diversity and/or the University's Title IX Officer, and c) reporting, as appropriate, any failures of this process to the Senior Vice President, Legal Affairs and Professionalism.

3.  <u>USC Student Health Operating and Oversight Procedures:</u>  The University will adopt and implement the following operating and oversight procedures for identifying, preventing and reporting any alleged improper sexual or racial conduct at USC Student Health.
    (a)  Pre-hiring background checks of all new personnel, including physicians, who are regularly expected to have direct patient interaction.  To the extent permitted by law, such investigation will include contacting former employers and asking direct questions about the candidate's interactions with patients including past reports of Sexual Harassment and/or Gender-Based Violence by the candidate and whether the candidate was disciplined for any reason related to patient interaction or patient safety.
    (b)  Annual verification of credentials of all clinical personnel, including physicians.
    (c)  Annual education and performance reviews concerning identifying, reporting and preventing improper sexual and/or racial conduct.
    (d)  USC Student Health, in conjunction with the Independent Women's Health Advocate, will adopt "Sensitive Exam" practices consistent with the guidelines set forth

by the American College of Obstetricians and Gynecologists' Committee on Gynecologic Practice.

(e)  Maintain staffing so that all female students have the option of seeing a female physician.

(f)  All students accessing the USC Student Health will be informed of this Settlement and the University's commitment and steps taken to prevent any recurrence, and provided a brochure outlining what to expect during a visit or procedures concerning disrobing, chaperones, physical exams and their opportunity to report any questions or concerns they may have concerning any conduct they believe may be inappropriate or questionable.  The brochure will be consistent with patient education information published by the American College of Obstetricians and Gynecologists (ACOG).  USC Student Health will review and, if necessary, update its patient literature at least once every two years to ensure that the literature reflects current ACOG standards and best practices.

(g)  All USC Student Health personnel who assist with Sensitive Exams will be trained annually on best practices for ensuring the safety and comfort of students during Sensitive Examinations. All USC Student Health personnel who are regularly expected to have direct patient contact will be trained annually on USC's policies for mandatory reporting of Sexual Harassment and Gender-Based Violence;  bystander training; procedures for referring students to counseling or psychiatric treatment; and the University's anti-retaliation policies. The University will require ongoing training on at least an annual basis.

(h)  USC Student Health will provide all students with plain-language notice of how to recognize and report Sexual Harassment and Gender-Based Violence by a healthcare provider. This notice will be provided when a student initially visits USC Student Health and will also be posted prominently in each examination room.

(i)  Online and offline opportunity for anonymous patient feedback concerning USC Student Health and its personnel.

4.  <u>New Sexual Misconduct/Violence Prevention Program</u>. USC agrees to expand the services of its Relationship and Sexual Violence Prevention program to include a new training program designed to *prevent* sexual misconduct and sexual assault.  The new training program will target students in each of their first three years at the University. USC will hire at least one qualified FTE by July 1, 2019 and at least two additional qualified FTEs by October 1, 2019 for the purpose of developing and conducting the training program. Other aspects of the program may be as follows, subject to recommendations of the Independent Women's Health Advocate:

- Program will be required of all students.   It will include a general program and also programs that can be targeted for communities such as Greek life, Athletics, LGBTQ, persons with disabilities and international students.
- Topics will include, among others, Affirmative Consent; Healthy Relationships; and, Bystander Intervention.
- The programs may be conducted via online programs such as the "Think About It" program and/or live, in small groups of approximately 35-40 students.
- The University currently requires periodic training for all faculty and supervisory employees on combatting sexual violence, including sexual assault, domestic

violence, intimate partner violence, stalking and bystander intervention. All non-supervisory employees are required to review educational materials on prohibited workplace conduct, specifically discrimination, harassment and retaliation. The Equitable Relief Committee may review and provide comments on these University-wide programs detailed in this paragraph of item 4, for consideration by the University.

5. <u>Independent Consultant to Serve on Task Force</u>. USC Student Health is sponsoring the 2019 AAU Campus Climate Survey on Sexual Assault and Misconduct at USC in the Spring of 2019; the survey asks students questions regarding their knowledge of USC support resources, experiences of misconduct/assault, likelihood of reporting, among others. USC agrees to appointment of an Independent Task Force Member to serve on the Survey Task Force. The Independent Task Force Member will be appointed and compensated by Class counsel.  She will have expertise in university best practices related to prevention and response to sexual assault and misconduct.  The Task Force will receive the results of the survey, review existing policies and procedures for disclosure, reporting and response to sexual violence on campus, identify opportunities for the University to improve its practices, education or policies, and recommend practices and policies for implementation in light of the survey results. The University agrees to consider in good faith implementation of the recommendations of the Task Force. Other Task Force members may include representatives of the student community, Department of Public Safety, Office of Professionalism & Ethics, Faculty Affairs, Relationship and Sexual Violence Prevention of Student Health, and Title IX.  Final reports concerning the survey will be made available to the University community at an appropriate time.

6. <u>Equitable Relief Committee.</u> Within 5 days of execution of this Settlement, Plaintiffs and the USC Defendants shall each designate an individual to serve on an Equitable Relief Committee comprised of three members.  Plaintiffs will designate an expert in university best practices related to prevention and response to sexual assault and misconduct; USC may designate its own expert or an individual with appropriate expertise internal to the University.  Those two members shall promptly meet and jointly select a third individual with appropriate expertise to chair the Committee.  The Committee shall then meet with a goal of finalizing the issues requiring further detail in items 2, 3 and 4 and consistent with the objectives and scope of paragraph 1 above.  The Committee shall complete its duties with 60  days of the execution of this Settlement and will then terminate.

7. <u>Realization Review.</u>  The parties anticipate that the Independent Women's Health Advocate, Independent Task Force Member, and the Equitable Relief Committee will work cooperatively with USC designated administration, faculty, and student representatives to achieve the aims of these provisions.  In the event that the Independent Women's Health Advocate or Independent Task Force Member believes the requirements and goals of these provisions are not being sufficiently addressed, a multi-tier review and resolution process will be available.  First, any such concerns will be raised to Class counsel, who will meet and confer with counsel for the USC Defendants.  If not resolved, any remaining issues will be presented to the Special Master.  The Special Master can, in her discretion, adopt processes similar to those provided for in Paragraphs 7.2 and 7.3 of

the Settlement Agreement, including presentations from the Parties, Party-retained experts, or independent experts.  The Special Master will provide the Parties with a Report and Recommendation on resolution of any such issues.  To the extent such disputes are not resolved through the Special Master, the assigned Court will maintain continuing jurisdiction over this Settlement Agreement to address such disputes and enforce this provision.

8.  All obligations under these equitable relief provisions of the Settlement Agreement will exist for at least three years, although it of course remains USC's intent to maintain appropriate operating and oversight procedures for identification, prevention, and reporting of improper sexual or racial conduct throughout the University.