UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND MOTION TO APPOINT SPECIAL MASTER [67][69]

On February 12, 2019, Plaintiffs filed a motion for preliminary approval of a class action settlement with Defendants University of Southern California, Board of Trustees of the University of Southern California (collectively, "USC"), and Dr. George Tyndall ("Dr. Tyndall"), and an accompanying motion to appoint a special master to oversee the settlement administration process. *See* Dkts. 67, 69; *see also* Dkt. 67-2 (the proposed settlement agreement). The Court held a hearing on the motions on April 1, 2019 to raise the Court's concerns about the proposed settlement and notice to class members. The Court concluded the hearing by indicating to the parties that the Court intended to deny Plaintiffs' motions and would issue an order to explain the Court's reasoning. *See* Dkt. 115. For the reasons set forth below, the Court DENIES Plaintiffs' motions without prejudice.

**I.      Standards of Review**

When the parties to a class action reach a settlement, court approval of the settlement is required for the settlement to bind absent class members. *See* Fed. R. Civ. P. 23(e)(2). Prior to approving a settlement, a court must first determine whether to give notice of the proposed settlement to the class of plaintiffs. *See* Fed. R. Civ. P. 23(e)(1). The burden is on the parties seeking approval of the proposed settlement to provide the court with "information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). When sufficient information is provided, the court must direct notice to the class members that would be bound by the settlement, in a

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

reasonable manner, if the parties have shown that notice is justified because the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 was amended recently in December 2018, and the commentary indicates that Rule 23(e)(1) memorializes the fact that a court's decision to give notice of a proposed settlement "is an important event" and "should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

Under Rule 23(e)(2), the court may approve the proposed settlement only after finding that the settlement is "fair, reasonable, and adequate." The recent amendments to Rule 23 require a court, in making a determination about the adequacy of a proposed settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* The Advisory Committee recognizes that circuits have developed their own lists of factors for courts to consider when assessing the fairness of a proposed class action settlement; the 2018 amendments were not intended to "displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The Ninth Circuit's factors for a court to consider when determining whether to approve a class action settlement are the following:

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As for Plaintiffs' motion to appoint a special master, a court may appoint a master only to:

(A) perform duties consented to by the parties;

(B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:

(i) some exceptional condition; or

(ii) the need to perform an accounting or resolve a difficult computation of damages; or

(C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

Fed. R. Civ. P. 53(a)(1). An order appointing a master must set forth the following information:

(A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);

(B) the circumstances, if any, in which the master may communicate ex parte with the court or a party;

(C) the nature of the materials to be preserved and filed as the record of the master's activities;

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

(D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and

(E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

Fed. R. Civ. P. 53(b)(2).

**II.     Analysis**

The Court's primary concerns with the proposed settlement, and the reasons for the Court's decision to deny the motion for preliminary approval of the proposed settlement, are two-fold: (1) the Court and class members lack information about certain key components of the settlement, and (2) the Court believes that some of the procedures for administering the settlement are unfair or inadequate.

    **A.      Informational Deficiencies**

First, the proposed settlement does not adequately explain the calculations of any pro rata reductions in Tier 2 and Tier 3 claim awards. The settlement agreement defines a "Pro Rata Reduction" as a "percentage reduction," without more explanation of what the possible range of a percentage reduction may ultimately be in a worst-case scenario. *See* Dkt. 67-2 § 2.34; *see also* Dkt. 67-3 Ex. B-1, at 7 (the proposed notice explaining that if the total claims under all three tiers plus expenses and service awards exceed the settlement balance, "all Tier 2 and 3 Claim Awards will be decreased *pro rata* until the Settlement Amount is reached"). The parties have not provided any estimate in the settlement agreement, nor in the notice to class members, of the expectations as to the number of claimants that may seek a Tier 2 or Tier 3 claim. These figures do not need to be estimated with precision, but it would be necessary to explain to the Court, even in a rough sense, what the parties believe the ultimate number of claims will be as relevant to the potential likelihood and quantity of a pro rata adjustment to the Tier 2 and Tier 3 awards.

If it is substantially likely that enough claimants may become eligible for a Tier 3 claim that would easily exhaust the settlement balance, the Court would be concerned about class members being misled into believing that their award will be higher than their actual amount of compensation received, based on the representations in the settlement agreement. Therefore, it would behoove the parties to set

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

forth the consequences of the extreme situation where the largest possible number of eligible class members seek a Tier 3 award, which will establish more accurate boundary expectations on the part of class members wishing to engage in the Tier 3 process. Simply put, the current description is inadequate to inform class members about the estimated variation in their potential recovery under Tier 3 in light of the possibility of pro rata adjustments, which, from the Court's perspective, may be substantial if a larger number of Tier 3 claims are sought than the parties anticipated.

    As an additional observation, the settlement documents do not indicate when such a pro rata adjustment will be made during the claims administration process or who will be calculating the ultimate pro rata adjustments. To the extent that the Special Master will be involved in calculating pro rata adjustments, the Court is concerned that the Special Master's initial compensation determinations may be impacted by the Special Master's awareness of the remaining settlement balance and the remaining number of claims to adjudicate. For example, if the Special Master determines compensation awards while maintaining a holistic view of the remaining settlement balance, the Special Master's determinations may be arbitrarily impacted by the knowledge of how much money is left to distribute to class members, which conflicts with the Special Master's obligation to ensure that all compensation awards are solely based on each individual class member's allegations and evidence presented. In light of these concerns, additional detail must be provided to the Court and to class members about the specific process for possible pro rata adjustments of Tier 2 and 3 awards. It may even be appropriate for the settlement agreement and notice to class members to explicitly direct the Special Master not to base compensation awards with an eye toward the $215 million settlement figure.

    Second, the parties did not set forth in the settlement agreement or the motion for preliminary approval the true substantive risks of proceeding to trial. Specifically, the Advisory Committee's notes to the 2018 amendments to Rule 23(e)(1) contemplate that the parties "should also supply the court with information about the likely range of litigated outcomes, and about the risks that might attend full litigation." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment. Nowhere in the settlement documents is there a legitimate assessment of what a potential class member might be able to recover in an individual action, even in vague or broadly estimated terms. The parties must include for the Court's edification some assessment of the potential range of recovery for class members if they were to seek recovery in an individual action, even if such an assessment cannot be provided with specificity. Doing so will allow the Court to satisfy its obligation under Rule 23(e)(1)(A) to ensure that there is sufficient information to support a determination that notice of the proposed settlement to the class is appropriate.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

    In terms of the risks of proceeding to trial, in the motion for preliminary approval, Plaintiffs focused mostly on the length and delay of proceeding to trial, and the privacy concerns for class members who may wish to avoid an invasion into past trauma. The Court requires a more direct assessment of the substantive strength of Plaintiffs' claims and what defenses are available to Defendants. Through other submissions to the Court, the primary focus of Plaintiffs' assessment of the risks of trial is on Defendants' statute of limitations argument, given that many class members received gynecological examinations from Dr. Tyndall decades ago.[1] The Court is more interested in how litigation would proceed assuming that the statute of limitations defense is not applicable: what information do Plaintiffs currently have that would implicate USC for having knowledge of Dr. Tyndall's wrongdoing, what additional discovery would Plaintiffs require, what elements of Plaintiffs' causes of action would be the most central to determining liability and damages, and so on. Although the parties answered many of the Court's questions on these topics during the hearing on Plaintiffs' motion for preliminary approval, adding additional information about the risks of trial directly in the settlement documents would memorialize these concerns and would provide the parties with an opportunity to address them to the class members as well.

    Specifically, the Court should be provided with all information to date regarding the complaints against Dr. Tyndall lodged by students or nurses which USC maintains on file, including: when the complaints were received, what was the substance of those complaints, and how USC addressed or responded to those complaints. Such information would be necessary for the Court to satisfy its burden under Rule 23(e)(1)(A) to ensure that notice to class members of the proposed settlement would be appropriate. Therefore, the Court ORDERS the parties to submit for *in camera* review all documents pertaining to the complaints against Dr. Tyndall received by USC, within 7 days of the date of this Order.[2]

    Third, the proposed settlement agreement does not even contain all of the requisite details about the equitable relief to be imposed upon USC as part of the settlement. Instead, the parties have nominated an "Equitable Relief Committee" to finalize all of the specific details of the equitable measures to be adopted on campus. Although the parties have represented at the hearing that the

---

[1]     The Court is also familiar with Defendants' arguments regarding the statute of limitations for sexual abuse from the related individual action against Defendants, captioned *Jane Doe v. University of Southern California, et al.*, No. 2:18-cv-9530-SVW-GJS (C.D. Cal).

[2]     The Court's request for these records does not affect or relate to the motion by the Los Angeles Times to intervene and unseal similar records previously filed in this case by Plaintiffs in opposing the various motions to intervene. *See* Dkt. 111.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

Equitable Relief Committee has already convened and is actively working to finalize all of the details, the Court believes that the current motion for preliminary approval is premature without having final agreement on all facets of relief to be imposed under the agreement.

Class members need to know exactly what USC's responsibilities would be on an ongoing basis to monitor, prevent, and respond to abuse committed by staff or other professionals employed by the school. The decision of many class members whether to remain in the settlement class may turn on the adequacy of the equitable measures in the settlement, and without knowing what USC would be bound to do on a granular level, class members would be deprived of the opportunity to voice their concerns about the equitable relief reached by the Committee. Although the parties represented at the hearing that the Committee's findings would be incorporated into the notice provided to the class, the Court declines to approve the settlement until those findings are explicitly incorporated in the settlement agreement and, by extension, the proposed notice to class members. Simply put, the Court is not a vessel for expediency in the parties' efforts to reach a class action settlement, and any agreement for which the parties seek approval from the Court should be finalized to the maximum extent possible prior to a motion for Court approval.

**B.      Procedural Defects**

Next, the Court has some limited concerns about the procedures embodied by the proposed settlement administration.

First, the Court believes that the contemplated authority of the Special Master to make all claims determinations in her own discretion invites the possibility of arbitrary decision-making and inequitable treatment of class members for non-meritorious reasons. The parties propose that the Court nominate one of two retired judges, each of whom has had considerable experience in the field of sexual assault during her legal practice to date. The Court does not believe that a retired judge necessarily would have the requisite expertise to make determinations about the credibility of a claimant's allegations of sexual assault against Dr. Tyndall, and/or a claimant's proffered emotional trauma resulting from her experience. It is comforting that the parties explicitly require the Special Master to consult with a team of medical professionals, including experts in the fields of gynecology, psychology, psychiatry, post-traumatic stress disorder, and others, and that the Special Master's team must contain at least one OB/GYN and at least one forensic psychologist to assist the Special Master with credibility determinations. But it is unclear from the proposed settlement to what extent the Special Master has the

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

authority to overrule the opinions of these medical professionals and favor the Special Master's personal experiences or convictions over those of her consulting experts.

 Under the circumstances of this case, rather than granting one individual the sole discretion to make final credibility determinations and compensation assessments, it would be equitable to have a committee of three individuals responsible for making all claims determinations, which would promote a more objective and outwardly fair method of adjudicating all claims submitted under Tier 2 and Tier 3. The Court proposed at the hearing that the three-person committee for claims determinations could include the Special Master, the OB/GYN, and the forensic psychologist already contemplated to be included on the Special Master's team. Each of the three individuals could receive one "vote" on issues such as whether the claimant's story is credible and the amount of compensation the claimant should receive based on the information and proof provided. The Court believes this system would reduce the potential for arbitrary decision-making and would generate additional comfort and more trust in the settlement process among class members who may otherwise be undecided about whether to join the settlement class. And a three-person committee may resolve the Court's concerns about arbitrary compensation awards by an individual Special Master who may be viewing each individual class member's award holistically in reference to the remaining settlement balance, rather than solely on the merits of the class member's claim. Thus, if the proposed settlement prescribed a three-person committee to make claims determinations in lieu of the Special Master's sole discretion, the Court would find that the settlement treats class members equitably toward each other under Rule 23(e)(2)(D) and that the settlement contains an adequate method of processing class-member claims under Rule 23(e)(2)(C)(ii).[3]

 Second, and related to the first point, the Court does not believe that the current appeals system embodied in the settlement agreement is fair for class members. Currently, not only does the Special Master have sole discretion over initial claims determinations, but the Special Master is also responsible for adjudicating all appeals by class members challenging the compensation they receive under Tier 2 or Tier 3 claims. *See* Dkt. 67-2 § 6.6 (setting forth the appeals process and noting that "[t]he Special Master's ultimate determination of a Claimant's Claim Award [on appeal] is final and cannot be appealed"). The current procedures certainly vest the Special Master with the sole authority over claims

---

[3] The Court recognizes that a formal three-person committee to make claims determinations might increase the costs of settlement administration. But such an increase should not be substantial, since the Special Master is already contemplated to consult heavily with the experts on the Special Master's team. Granting those experts on the Special Master's team with a firm decision-making role would be equitable and would not add significant procedural burdens to the settlement process.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

decisions without any oversight, which is concerning to the Court and may similarly concern class members who want to ensure a fair and impartial review of all claims determinations and appeals of those determinations.

If the parties adopt the Court's suggestion to impose a three-person committee to adjudicate all claims determinations, an appeals process might no longer be necessary at all, which would reduce the procedural burdens of settlement administration. Alternatively, it might be appropriate for appeals to be heard before a single individual, such as the Special Master, as a second procedural mechanism above the committee's initial review and determination of an aggrieved class member's claim. But at is currently stands, the Court believes it is inequitable for the Special Master to make initial claims determinations and then make all final decisions on appeals of those initial determinations. The Special Master's power to "establish fair procedures to govern this reconsideration process," Dkt. 67-2 § 6.6, is insufficient to establish confidence that such procedures will ultimately be fair. If the parties believe the Special Master should still be the sole entity responsible for appeals, the Court recommends that the parties include the specific "fair procedures" governing the reconsideration process so that class members will be informed of those procedures as part of the formal notice they receive.

In summary, the Court finds that the parties have not articulated how the proposed settlement provides a fair method of adjudication of class members' claims for Tier 2 or Tier 3 compensation, given the significance of the Special Master's role in claims determinations and the lack of any meaningful oversight or overriding authority regarding the Special Master's determinations.

### III.    Motions to Intervene and Objections

The Court also DENIES various class members' motions to intervene and/or objections to the motion for preliminary approval, Dkts. 80, 84, 87. Class members that disapprove of the settlement agreement would be allowed to opt out of the settlement if they prefer to adjudicate their claims in an individual action, meaning that intervention of right is unavailable under Rule 24(a)(2). *See, e.g.*, *Hibler v. Santander Consumer USA, Inc.*, EDCV 13-1354 JGB (OPx), 2013 WL 12137716, at *4-5 (C.D. Cal. Nov. 21, 2013) (denying motions to intervene at the preliminary approval stage under Rule 24(a)(2), stating that "Intervenor has two mechanisms which would protect his interests and the interests of others in the proposed class. First, Intervenor can object to the settlement under Rule 23(3). Second, Intervenor, and other proposed class members would have the ability to opt-out of the settlement . . . ."). And, per the arguments advanced in the parties' oppositions, it is premature under Rule 24 for objectors to intervene at the preliminary approval stage, as all objections to the settlement agreement are

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04258-SVW-GJS | Date | April 18, 2019 |
|---|---|---|---|
| Title | *Lucy Chi v. University of Southern California et al.* | | |

contemplated to be lodged after preliminary approval and before final approval. *See, e.g.*, *Lane v. Facebook, Inc.*, No. C 08–3845 RS, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23, 2009) (denying motion for leave to intervene because the intervenors "failed to establish any significantly protectable interest incumbent in an opportunity to object to preliminary approval as opposed to the right to object to final approval"). Therefore, the Court will not allow permissive intervention under Rule 24(b) at this time or at the time of a renewed motion for preliminary approval.

**IV.     Conclusion**

For the reasons set forth above, the Court DENIES without prejudice Plaintiffs' motion for preliminary approval and motion to appoint a special master. To be sure, the Court takes no issue with the substantive terms of settlement between Plaintiffs and Defendants, and the Court believes that the proposed settlement, as is, ultimately may be fair and reasonable under the prevailing standards. The Court raises these points in its effort to seek analytical clarity in order to satisfy its burden to determine whether to give notice of the proposed settlement to the class pursuant to Rule 23(e)(1)(A), and the Court aims to ensure that the parties' agreement does not present any undisclosed or unaddressed concerns that could impair the settlement process after preliminary approval.

Accordingly, the parties are ordered to file renewed motions for preliminary approval and for appointment of a special master within 30 days of this Order, addressing the Court's concerns with the proposed settlement and proposed notice to class members articulated above. If the parties require additional time to finalize a new settlement agreement and/or motion for preliminary approval in light of this Order, the parties may so notify the Court prior to or on that date.

Lastly, as stated above, the Court ORDERS the parties to submit for *in camera* review all documents pertaining to the complaints against Dr. Tyndall received by USC, within 7 days of the date of this Order.

IT IS SO ORDERED.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |