1  Steve W. Berman (*pro hac vice*)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   1918 Eighth Avenue, Suite 3300
3  Seattle, WA 98101
   (206) 623-7292
4  steve@hbsslaw.com

5  Annika K. Martin (*pro hac vice*)
6  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
7  New York, NY 10013
   (212) 355-9500
8  akmartin@lchb.com

9  Daniel C. Girard (SBN 114826)
   GIRARD SHARP LLP
10 601 California Street, Suite 1400
   San Francisco, California 94108
11 (415) 981-4800
   dgirard@girardsharp.com

12
   *Interim Class Counsel and Plaintiffs' Executive Committee*
13 *[Additional Counsel Listed on Signature Page]*

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                  WESTERN DIVISION

17
   IN RE: USC STUDENT HEALTH          No. 2:18-cv-04258-SVW
18         CENTER LITIGATION
                                      [Consolidated with:
19                                    No. 2:18-cv-04940- SVW-GJS,
                                      No. 2:18-cv-05010-SVW-GJS,
20                                    No. 2:18-cv-05125-SVW-GJS, and
                                      No. 2:18-cv-06115-SVW-GJS]
21
                                      **PLAINTIFFS' NOTICE OF**
22                                    **MOTION AND MOTION FOR**
                                      **FINAL APPROVAL OF CLASS**
23                                    **ACTION SETTLEMENT:**
                                      **MEMORANDUM OF POINTS**
24                                    **AND AUTHORITIES IN**
                                      **SUPPORT**
25
                                      Date: January 6, 2020
26                                    Time: 1:30 PM
                                      Hon. Stephen V. Wilson
27

28

# NOTICE OF MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 6, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Stephen V. Wilson in Courtroom 10A of the above-entitled court, located at 350 West First Street, Los Angeles, California 90012, Plaintiffs in these consolidated actions will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order:

1. Granting final approval of the proposed Settlement;
2. Certifying the Settlement Class;
3. Finding that Notice to the Class was directed in a reasonable manner;
4. Reserving and continuing jurisdiction with respect to Plaintiffs' motion for service awards to the Plaintiffs and attorneys' fees, costs, and expenses to Class Counsel;
5. Reserving and continuing jurisdiction with respect to implementation and enforcement of the terms of the Settlement; and
6. Appointing Plaintiffs as Class Representatives and Hagens Berman Sobol Shapiro LLP, Girard Sharp LLP, Lieff Cabraser Heimann & Bernstein LLP, as Co-Lead Class Counsel, and Sauder Schelkopf LLC, and Kohn, Swift & Graf, P.C. as Additional Class Counsel (collectively, "Class Counsel").

This motion is based on the attached supporting memorandum; the declarations submitted herewith and referenced below, with exhibits; the pleadings and papers on file in this action, including those submitted by the Parties in support of Plaintiffs' Motion for Preliminary Approval, [Dkt. 67]; Plaintiffs' Renewed Motion for Preliminary Approval, [Dkt. 139]; and any further papers filed in support of this motion, as well as arguments of counsel and all records on file in this matter.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

DATED: November 18, 2019.

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By ___/s/ Steve W. Berman_____
     Steve W. Berman
Shelby R. Smith
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel.: 206-623-7292
Fax: 206-623-0594
Email: steve@hbsslaw.com
Email: shelby@hbsslaw.com

Whitney K. Siehl
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: 708-628-4949
Facsimile: 708-628-4950
Email: whitneys@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Jonathan D. Selbin
Annika K. Martin
Evan J. Ballan
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: (415) 956-1000
Fax: (415) 956-1008
Email: jselbin@lchb.com
Email: akmartin@lchb.com
Email: eballan@lchb.com

-3-

1

2      Daniel C. Girard
       Elizabeth A. Kramer
3      GIRARD SHARP LLP
       601 California Street, Suite 1400
4      San Francisco, California 94108
       Tel.: (415) 981-4800
5      Fax: (415) 981-4846
       Email: dgirard@girardsharp.com
6      Email: ekramer@girardsharp.com
7
       *Plaintiffs' Executive Committee and
8      Interim Class Counsel*
9
       Joseph G. Sauder
10     SAUDER SCHELKOPF LLC
       555 Lancaster Avenue
11     Berwyn, Pennsylvania 19312
       Tel: (610) 200-0580
12     Fax: (610)727-4360
       Email: jgs@sstriallawyers.com
13
       Jonathan Shub
14     KOHN SWIFT & GRAF, P.C.
       1600 Market Street
15     Suite 2500
       Philadelphia, PA 19103-7225
16     P: 215-238-1700
       F: 215-238-1968
17     E: jshub@kohnswift.com
18
       *Proposed Additional Class Counsel*
19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION AND SUMMARY ............................................ 1

II.  SETTLEMENT TERMS .......................................................... 4

   A.   The Class Definition. .................................................... 4

   B.   The Settlement's Benefit to Class Members. ..................... 4

      1.   $215 Million to Compensate Class Members. .............. 4

         a.   Three-Tier Structure Built Around Claimant Choice ......... 4

         b.   Pro Rata Adjustment to Ensure Fairness and
              Maximum Money Distributed to Class Members. ............... 6

      2.   Requiring and Enforcing Robust Policy Changes at USC. ........... 7

   C.   Attorneys' Fees Will Be Paid in Addition to the Settlement
        Amount After Final Approval. ........................................ 9

   D.   Notice to the Class. ..................................................... 9

III. ARGUMENT ................................................................... 10

   A.   The Settlement is Fair, Reasonable, and Adequate, and Should Be
        Finally Approved. ....................................................... 11

      1.   Rule 23(e)(2)(A): The Class Representatives and Class
           Counsel Have Vigorously Represented the Class. ................ 11

      2.   Rule 23(e)(2)(B): The Settlement Resulted from Informed
           Arm's-Length Negotiations. ........................................ 13

      3.   Rule 23(e)(2)(C): The Relief Under the Settlement Is
           Outstanding. .......................................................... 14

         a.   Rule 23(e) (2)(c)(i): The Relief Provided for the Class
              is Substantial, Particularly in Light of the Costs,
              Risks, and Delay of Trial. ...................................... 14

         b.   Rule 23(e)(2)(c)(ii): The Settlement Claims Process Is
              Efficient, Accurate, and Sensitive to Claimants' Needs
              and Privacy. ...................................................... 15

         c.   Rule 23(e)(2)(c)(iii): The Terms of the Proposed
              Award of Attorney's Fees Puts Class Members First. ........ 15

         d.   Rule 23(e)(2)(c)(iv): There Are No Undisclosed Side
              Agreements. ...................................................... 16

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

4.    Rule 23 (e)(2)(D): The Settlement Treats Class Members Equitably Relative to Each Other. ................................ 16

B.    The Court Should Certify the Settlement Class. .................................... 17

1.    The Class Meets the Requirements of Rule 23(a) ...................... 17

a.    The Class Is Sufficiently Numerous ................................ 17

b.    There Are Common Questions of Both Law and Fact ...... 17

c.    Plaintiffs' Claims Are Typical. ......................................... 18

d.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class .................... 19

2.    The Class Meets the Requirements of Rule 23(b)(3). ................ 20

a.    Common Issues of Law and Fact Predominate. ................ 20

b.    Class Treatment Is Superior in This Case. ....................... 21

C.    Plaintiffs Have Complied with All Additional Approval Factors ......... 22

1.    Plaintiffs Have Provided Adequate Notice Under Rule 23(b)(3) and Rule 23(c)(2)(B) ...................................................... 22

2.    No Class Members Objected to the Settlement. .......................... 23

3.    The Positive Response of Class Members to the Settlement Favors Final Approval. ................................................................. 24

IV.    CONCLUSION ............................................................................................... 24

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs.*,
   731 F.3d 952 (9th Cir. 2013) ...................................................................... 20

*Ambriz v. Coca Cola Co.*,
   No. 14-CV-00715-SVW, 2015 WL 12683823
   (C.D. Cal. Mar. 11, 2015) ........................................................................ 21

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................. 20

*In re AT&T Mobility Wireless Data Servs.*
   *Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................... 12

*In re Bluetooth Headset Prods. Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..................................................................... 24

*Brown v. 22nd District Agricultural Assoc.*,
   No. 15-cv-2578-DHB, 2017 WL 2172239
   (S.D. Cal. May 17, 2017) ......................................................................... 12

*Clothesrigger, Inc. v. GTE Corp.*,
   191 Cal. App. 3d 605 (1987) .................................................................... 20

*D.G. v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ................................................................ 18

*Doe v. The Johns Hopkins Hosp.*,
   No. 24C13001041, 2014 WL 5040602
   (Md. Cir. Ct. Sept. 19, 2014) ................................................................ 5, 21

*Doe v. Roman Catholic Diocese of Covington*,
   No. 03-CI- 00181, 2006 WL 250694
   (Ky. Cir. Ct. Jan. 31, 2016) ..................................................................... 21

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ..................................................... 20

-iii-

*Ehret v. Uber Techs, Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................... 20

*Estrella v. Freedom Fin. Network*,
    No. C 09-03156 SI, 2010 WL 2231790
    (N.D. Cal. June 2, 2010) ........................................................................ 17

*Fed. Ins. Co. v. Caldera Med., Inc.*,
    No. 15-cv-00393-SVW, 2016 WL 5921245
    (C.D. Cal. Jan. 25, 2016) ....................................................................... 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................... 11, 18

*Jane Doe 2 v. The Georgetown Synagogue-Kesher
    Israel Congregation*,
    No. 2014 CA 007644 B, slip op.
    (D.C. Super. Oct. 24, 2018) ................................................................... 18

*Jane Doe 30's Mother v. Bradley*,
    64 A.3d 379 (Del. Super. Ct. 2012) ................................................. 18, 21

*Lane v. Facebook, Inc.*,
    No. C 08-3845 RS, 2009 WL 3458198
    (N.D. Cal. Oct. 23, 2009) ...................................................................... 24

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................... 12

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ............................................................ 13

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ............................................................... 9, 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 24

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................. 18

-iv-

*Rodriguez v. Farmers Ins. Co. of Ariz.*,
    No. 09-CV-06786-JGB, 2013 WL 12109896
    (C.D. Cal. Aug. 4, 2013) ........................................................................... 13

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
    No. 11-CV-00665-BRO, 2013 WL 9600948
    (C.D. Cal. Sept. 25, 2013) ......................................................................... 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................... 19

*Stockwell v. City & Cty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................... *passim*

## I.     INTRODUCTION AND SUMMARY

Plaintiffs, by and through Interim Class Counsel, respectfully request the Court enter an order granting final approval of their proposed class action settlement (the "Settlement") with Defendants Dr. George Tyndall, the University of Southern California, and the Board of Trustees of the University of Southern California[1] to resolve claims of sexual abuse by Tyndall during his tenure as an obstetrician-gynecologist at the USC student health center. The Settlement requires Defendants to pay $215 million in non-reversionary cash (net of attorneys' fees and costs) to pay Class Member claims, and provides for robust, expert-crafted equitable relief so the events leading to this litigation will never occur at USC again.

The Settlement is an outstanding result that achieves this litigation's central goals of accountability through fair compensation of victims and meaningful institutional change at USC. It provides real, swift, and certain compensation for thousands of women—from a guaranteed minimum of $2,500 cash up to $250,000 each—via a claims process empowering class members to choose whether and how much to engage in the process and tell their stories. The Settlement also ensures unprecedented institutional change at USC via implementation of best practices and independent oversight. In fact, this Settlement is the largest-ever class resolution of sexual assault claims and the first to incorporate equitable relief reforms as a novel and material way to hold an institution accountable.

The notice campaign was robust and Class Member response has been overwhelmingly positive. Direct notice was delivered to 12,702 Class Members pre-identified through USC's existing health center records (which cover only part of the

---

[1] In this brief, "USC" refers collectively to Defendants University of Southern California and the Board of Trustees of the University of Southern California.

-1-

1 | class period).[2] Direct notice was also delivered to 152,801 potential Class Members.[3]
2 | A state-of-the-art media indirect notice campaign ensured further reach. An
3 | informative Settlement Website (https://www.usctyndallsettlement.com) provided
4 | Class Members with detailed information about the Settlement, including equitable
5 | relief, in English, Spanish, and Chinese.

6 |   The Settlement's claims process was straightforward by design—no action for
7 | Tier 1, a simple claim form for Tier 2, and a simple claim form and interview for Tier
8 | 3. The claim form was designed to be completed by claimants without having to hire
9 | an attorney; however, for those Class Members who did want attorney guidance,
10 | Interim Class Counsel provided that assistance, without reducing Class Members'
11 | compensation by deducting attorneys' fees or costs from their individual awards.

12 |   Class Member reaction to the Settlement was overwhelmingly positive.
13 | Thousands of Class Members made Tier 2 and Tier 3 claims. A total of 774 Class
14 | Members submitted timely and potentially valid opt-outs, and ***not a single Class***
15 | ***Member objected to the Settlement***.[4] Such overwhelmingly positive reaction is rare,
16 | and especially notable in a case involving such sensitive issues. The Settlement also
17 | garnered the support of key USC student leaders.[5]

18 |   The $215 million Settlement Amount will adequately compensate all Class
19 | Members. While the claim award amounts have not yet been determined,[6] calculations

---

[2] Declaration of Jennifer M. Keough in Support of Final Approval ("Keough FA Decl.") at ¶ 13.

[3] Keough FA Decl. at ¶ 13.

[4] Keough FA Decl. at ¶¶ 39–42. A handful of attorneys filed what they styled as "objections" prior to this Court's preliminary approval of the Settlement. Those filings were not valid objections pursuant to Fed. R. Civ. P. 23(e)(5), and this Court properly rejected them as premature. [Dkt. 124].

[5] Statement of USC Student Leaders in Support of Proposed Settlement [Dkt. 129-5].

[6] The claim award amounts have not yet been determined because the claim adjudication process cannot begin until the Special Master has been appointed. *See* [Dkt. 152].

-2-

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

based on the current known claim numbers and reasonable estimates of average claim awards show that the Settlement Amount will suffice to pay all claims.[7] As of this filing, 18,782 Tier 1 Claims, 1,746 Tier 2 Claims, and 1,197 Tier 3 Claims have been submitted.[8] While the confirmation and de-duplication of submitted claims is still ongoing, we have estimated a range of outcomes using average claim award amounts.

If, for example, we use the most conservative claim number count,[9] and estimate that Tier 2 Claimants each receive an average award of $15,000; and Tier 3 Claimants each receive an average award of $125,000, the total amount awarded will be $192,650,000, leading to a Pro Rata Increase of approximately 9% for all Claims.[10]

On the other hand, if we use the most liberal claim number count[11], the total amount awarded would be $215,420,000.[12] Since that total is only slightly more than the Settlement Amount, a Pro Rata Decrease of approximately 3% for all Claims would be applied in this scenario, meaning Tier 2 and Tier 3 award amounts would

---

[7] *See* Keough FA Decl. ¶¶ 53–56.

[8] Keough FA Decl. ¶¶ 44-49; 53. We say "as of this filing" because the Claims Administrator is still continuing to receive timely-postmarked claims sent by mail, verifying Class Member status, and the de-duplication and fraud analysis has not been completed, so the final claim counts may differ slightly. Late claims will be allowed at the Special Master's discretion. *See* Agmt. § 6.7.

[9] Keough FA Decl. at ¶ 55. The most conservative claim number count means assuming no undeliverable notice packets will be delivered (12,702 were deliverable), and all currently unconfirmed Tier 1, Tier 2, and Tier 3 forms are duplicative or invalid (3,597 match Potential Class Members on the Notice List), which equals 16,299 total claimants.

[10] *See* Keough FA Decl. at ¶¶ 55-56. This $192,650,000 total comes from summing $40.75 million for Tier 1 (16,299 x $2,500); $23.52 million for Tier 2 (1,568 x $15,000); and $135 million for Tier 3 (10,80 x $125,000) then subtracting $6.62 million to offset Tier 1 payments already received by 2,648 Tier 2 and 3 claimants.

[11] Keough FA Decl. at ¶ 53. The most liberal claim number count means assuming all undeliverable notice packets are eventually delivered (13,670 Pre-Identified Class Members), and all unconfirmed Tier 1, Tier 2, and Tier 3 forms are valid (5,112 forms submitted), which equals 18,782 total claimants.

[12] *See* Keough FA Decl. at ¶¶ 53-54. This $215,420,000 total comes from summing $46.96 million for Tier 1 (18,782 x $2,500); $26.19 million for Tier 2 (1,746 x $15,000); and $149.63 million for Tier 3 (1,197 x $125,000) then subtracting $7.36 million to offset Tier 1 payments already received by 2,943 Tier 2 and 3 claimants.

decrease by 3% below their initial allocation.[13] Plaintiffs submit the actual amount of claim awards will likely be between these two calculations.

Plaintiffs and Interim Class Counsel submit that this Settlement is not only fair, reasonable, and adequate, but an outstanding result for the Class. Plaintiffs respectfully request that the Court certify the class for settlement purposes.

## II.   SETTLEMENT TERMS

### A.   The Class Definition.

The Class consists of all women who were seen by Dr. George M. Tyndall at USC's student health center between August 14, 1989, and June 21, 2016: (a) for Women's Health Issues;[14] (b) whose treatment by Tyndall included an examination by him of her breast or genital areas; or (c) whose treatment included the taking of photographs of her unclothed or partially clothed body.

### B.   The Settlement's Benefit to Class Members.

#### 1.   $215 Million to Compensate Class Members.

Defendants will pay $215 million (the "Settlement Amount"), net of attorneys' fees and costs,[15] making this the largest ever class action settlement of sexual assault claims. None of the money will revert to USC or Tyndall.

##### a.   Three-Tier Structure Built Around Claimant Choice.

The Settlement's three-tier structure allows Class Members to choose how much they want to engage with the claims process. Those who do not want to revisit private, traumatic events can simply keep the guaranteed Tier 1 payment of $2,500. Those who choose to provide additional information in a claim form about their

---

[13] *See* Keough FA Decl. at ¶ 54.

[14] Women's Health Issues includes but is not limited to any issue relating to breast, vaginal, urinary tract, bowel, gynecological, or sexual health, including contraception and fertility. *See* Amended Settlement Agreement ("Agmt.") [Dkt. 129-1] § 3.2. A list of Women's Health Issues is available to Class Members on the Settlement Website.

[15] Agmt. § 8.1. Defendants will pay Class Counsel's attorneys' fees and costs separately from and in addition to the $215 million Settlement Amount, in an amount to be determined by the Court. *See infra* Section III.C.

-4-

1    experience with Tyndall and how it affected them are eligible for up to $20,000, and

2    those who choose to participate in an interview are eligible for up to $250,000. The

3    Three Member Panel, including the Special Master[16], OB/GYN, and forensic

4    psychologist, will evaluate claims and allocate awards to Tier 2 and Tier 3 Claimants.

5    Agmt. §§ 6.4, 6.5.

6         The claim form was designed to be completed by Claimants without having to

7    hire an attorney. To the extent any Class Member required help navigating this simple

8    process, however, Interim Class Counsel assisted them, and that assistance came at no

9    cost to Class Members.[17]

10        The 12,702 Class Members pre-identified through USC's existing health center

11   records will be automatically mailed a Tier 1 payment check for $2,500 on the

12   Effective Date.[18] The Notice informed Class Members whether they were pre-

13   identified as Class Members. Agmt. § 6.4(a)(i). Those Class Members who could not

14   be pre-identified were required to submit a simple signed Statement of Class

15   Membership Form. Agmt. § 6.4(a)(ii). As of this filing, 5,112 potential Class

16   Members have submitted membership forms.[19] Tier 1 payments of $2,500 will be sent

17   to confirmed Class Members on the Effective Date.

18

19

20        [16] The Parties propose that Hon. Irma Raker (Ret.), who supervised the
21   administration of the *Johns Hopkins* sex-abuse settlement, or alternatively, Hon. Irma
     E. Gonzalez (Ret.) be appointed as the Special Master. *See* [Dkt. 69].
22        [17] Joint Decl. of Counsel at ¶ 17. Interim Class Counsel assisted nearly 500 Class
23   Members who contacted them directly or via the
     ClassCounsel@USCTyndallSettlement.com email address
24        [18] The Effective Date is the date on which the time for filing an appeal from the
25   Court's final approval of the Settlement has either expired without an appeal being
     filed, or if later, after any appeal has been fully resolved. Agmt. § 2.16. *See also*
26   Keough FA Decl. at ¶ 13, this number may be slightly higher at the time of
     distribution based on additional delivered notices.
27        [19] Keough FA Decl. at ¶¶ 44–45, however, 1,515 claims need further analysis as the
     de-duplication and fraud analysis has not been completed.
28
MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

Each Class Member had the option to submit an online or written Claim Form describing her experience with Tyndall, the impact on her, and the harm she suffered for a Tier 2 Claim. Agmt. § 6.4(b). The Three Member Panel will assess each Claim Form, and if it is determined to be credible, will award a Tier 2 payment between $7,500 and $20,000, subject to Pro Rata Adjustments. *Id.* Agmt. § 6.4(b). As of this filing, 1,746 Tier 2 claims have been submitted.[20]

Each Class Member who, in addition to the written Claim Form, is willing to provide information about her experience and its impact in an interview will be considered for a Tier 3 Claim. Agmt. § 6.4(c).The Three Member Panel, will assess each Claim Form and interview, and if they are determined to be credible will award a Tier 3 payment between $7,500 and $250,000, subject to Pro Rata Adjustments. *Id.* As of this filing, 1,197 Tier 3 claims have been submitted.[21]

Claimants may appeal the Committee's decision to the Special Master; such appeals will involve a one-on-one interview with the Special Master, who will then decide the appeal. The Special Master's decisions on appeals will be final. Agmt. § 6.6.

### b. Pro Rata Adjustment to Ensure Fairness and Maximum Money Distributed to Class Members.

The Amended Settlement Agreement provides that the Three Member Panel will not consider either the number or amount of other Claim Awards or the total Settlement Amount when making their Claim Award determinations. Agmt. §§ 6.5(b)(ii), 6.5(c)(iv). The Claims Administrator will calculate the total sum of all Claim Awards, compare that sum to the Settlement Fund, and calculate and apply any Pro Rata Adjustments. Agmt. § 6.5(d).[22]

---

[20] Keough FA Decl. at ¶ 46.
[21] Keough FA Decl. at ¶ 47.
[22] Because the Administrative Expenses are paid out of the Settlement Fund, the amount of the Settlement Fund at the time of the Pro Rata Adjustment calculation will be less than $215 million. As previously noted, attorneys' fees and costs are not

-6-

If the sum of the Claim Awards is less than the Settlement Fund, the Claims Administrator will calculate and apply the Pro Rata Increase to all Tier 1, Tier 2, and Tier 3 Claim Awards. Agmt. § 6.5(d)(i). The Pro Rata Increase will be calculated to increase all Claim Awards by the same percentage until the total sum of all Claim Awards equals the Settlement Fund, or until all Claim Awards have been increased by 50%, whichever occurs first. *Id.*

If the total sum of the Claim Awards exceeds the Settlement Fund, the Claims Administrator will calculate and apply the Pro Rata Reduction to all Tier 2 and Tier 3 Claim Awards. Agmt. § 6.5(d)(ii). The Pro Rata Reduction will be calculated to reduce all Tier 2 and Tier 3 Claim Awards by the same percentage until the sum of all Claim Awards equals the Settlement Fund, or until all Tier 2 and Tier 3 Claim Awards have been reduced by 25%, whichever occurs first. *Id.* Under no circumstances are Tier 1 Claim Awards subject to Pro Rata Reduction. *Id.* In accordance with the Court's request, the Notice and the Settlement Website include examples to explain the potential Pro Rata Adjustments to Class Members.

## 2.    Requiring and Enforcing Robust Policy Changes at USC.

A key feature of the Settlement is unprecedented equitable relief to Class Members through sweeping reforms at USC and its health facilities, designed by experts to ensure that the sort of abuse alleged in this case can never happen again at USC. Agmt. Exs. B and C. Plaintiffs' Motions for Preliminary Approval [Dkt. 67 and 139] discussed these provisions at length. These Equitable Relief Measures add substantial value to the Settlement by ensuring meaningful institutional change will be implemented at USC.[23]

---

deducted from the Settlement Fund but will be paid separately by USC in an amount determined by the Court. Agmt. ¶ 8.1.

[23] *See, e.g.,* Statement of USC Student Leaders in Support of Proposed Settlement [Dkt. 129-5].

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

Since the Court's grant of preliminary approval, implementation of the equitable reforms is underway. Class Counsel have selected Nancy Chi Cantalupo to serve as the Independent Consultant and Task Force Member.[24] Professor Cantalupo has extensive knowledge and experience with best practices for prevention of and response to sexual assault and misconduct on university campuses.[25] She is an accomplished scholar and administrator who has worked with student victims of sexual harassment and gender-based violence, implemented campus-wide reforms, and consulted with President Obama's White House Task Force to Protect Students from Sexual Assault as well as various legislators.

In her role to date, Prof. Cantalupo has joined USC's Task Force for its 2019 AAU Campus Climate Survey on Sexual Assault and Misconduct at USC.[26] Prof. Cantalupo has visited the USC campus in September, October, and November 2019 to participate in Task Force meetings.[27] The Task Force has now received the results of the Campus Climate Survey, and Prof. Cantalupo has worked with the other members to review the data and to produce a report on the result and recommendations for change.[28] Prof. Cantalupo has been working to identify opportunities for USC to improve its practices, education, and policies, and developing recommendations for practices and policies for implementation in light of the survey results.[29] Prof. Cantalupo has also met with faculty, students, and leaders on campus to discuss issues of gender-based violence and sexual assault, and included information learned from those meetings in her recommendations and feedback.[30]

---

[24] *See* Joint Decl. of Counsel at ¶ 7.
[25] Joint Decl. of Counsel at ¶ 5.
[26] Joint Decl. of Counsel at ¶ 8.
[27] Joint Decl. of Counsel at ¶ 9.
[28] *See* Campus Climate Report: 2019 AAU Survey Results (Oct. 15, 2019), https://studenthealth.usc.edu/campus-climate-report-2019-aau-survey-results/.
[29] Joint Decl. of Counsel at ¶ 10.
[30] Joint Decl. of Counsel at ¶ 11.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

USC has started to implement other components of the Settlement's equitable relief provisions, including a reform of its Student Health Center's operating and oversight procedures, and the implementation of a new sexual misconduct and violence prevention program.[31] The Parties are continuing to work on additional relief included in the Settlement, including the appointment of an Independent Women's Health Advocate.[32] Together, these and the other measures included in the Settlement will bring about change on USC's campus that will be real and lasting.

### C.   Attorneys' Fees Will Be Paid in Addition to the Settlement Amount After Final Approval.

Defendants agreed to pay all attorneys' fees and costs separately from and in addition to the $215 million payment to the Class. Agmt. § 8.1. Class Member recoveries will not be reduced to pay for attorneys' fees or costs. Interim Class Counsel will apply for an award of attorneys' fees and reimbursement of costs after the Special Master files a Report on the Claims Process. They have agreed not to request more than $25 million. *Id.* Any fee award will be determined by the Court, and Class Members will have the opportunity to review and comment on or object to the fee petition as provided for in Fed. R. Civ. P. 23(h). *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Approval of the Settlement will not be contingent on the Court approving fees and costs. Agmt. § 8.1.

### D.   Notice to the Class.

The Notice Plan was carried out pursuant to this Court's June 12, 2019 preliminary approval order. [Dkt. 148]. On July 11, 2019, the Notice Administrator provided direct mail notice to 12,702 pre-identified Class Members and 152,801 potential Class Members.[33]

---

[31] Joint Decl. of Counsel at ¶ 6.
[32] Joint Decl. of Counsel at ¶ 12.
[33] Keough FA Decl. ¶¶13-15.

-9-

By July 11, 2019, the Settlement Website was created to include information about the Settlement, key deadlines, and access to important documents, such as the Notice (in multiple languages), Amended Settlement Agreement, and this Court's orders.[34] As of November 14, 2019, the website has had over 36,473 unique visitors.[35] The website's FAQs page provides answers to Frequently asked Questions, and was frequently updated throughout the Notice period in response to questions from Class Members and changing circumstances such as the California Legislature's passage of AB 1510, which was enacted on October 2, 2019, that extended the California civil action statute of limitations for damages in certain circumstances.[36]

Multiple email accounts were created for Class Counsel to respond to questions from Class Members.[37] A toll-free telephone support line also has been available, with both automated and live operators, to provide answers to frequently asked questions by Class Members.[38] Additionally, the notice was published in media likely to be viewed by Class Members, including the *Daily Trojan* and USC's alumni magazine and newsletters, and as part of a digital media notice campaign utilizing Facebook, LinkedIn, and Twitter banners and advertising—an online campaign that reached almost 900,000 Women 18–54 years old.[39]

## III.   ARGUMENT

In order to grant final approval to a class action settlement, the Court must determine that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). Here, the Settlement readily meets those requirements, and merits approval. As the Court recognized at the preliminary approval stage, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified. [Dkt.148 at 2].

---

[34] The Settlement Website can be visited at https://www.usctyndallsettlement.com/.
[35] Keough FA Decl. ¶ 31.
[36] Keough FA Decl. ¶ 30.
[37] Keough FA Decl. ¶¶ 32-33.
[38] Keough FA Decl. ¶ 33.
[39] Keough FA Decl. ¶¶ 16–17.

-10-

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

**A.   The Settlement is Fair, Reasonable, and Adequate, and Should Be Finally Approved.**

Rule 23 of the Federal Rules of Civil Procedure governs a district court's analysis of the fairness of a settlement of a class action. *See* Fed. R. Civ. P. 23(e). A court may approve the parties' settlement only after it determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Rule 23(e)(2), which was amended as of December 1, 2018, provides that a district court should approve a proposed settlement after considering several factors.

When the Rule was amended, the Advisory Committee recognized that the various Circuits had previously generated their own lists of factors to consider in determining whether a settlement is fair, reasonable, and adequate.[40] The Committee has clarified that this new list of factors does not "displace" existing factors, but instead aims to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Adv. Cmt. Note R. 23. An evaluation of these factors here confirms that both the procedure used in negotiating the Settlement and the substance of the resulting Settlement are fair, reasonable, and adequate, and thus merit final approval.

**1.   Rule 23(e)(2)(A): The Class Representatives and Class Counsel Have Vigorously Represented the Class.**

As amended, Rule 23(e) requires a Court to ensure that in a proposed settlement, "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Considerations at this stage can include "the nature and amount of discovery in this or other cases, or the actual outcomes of other

---

[40] In the Ninth Circuit, those factors included: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

1   cases," which "may indicate whether counsel negotiating on behalf of the class had an

2   adequate information base." Adv. Cmt. Note R. 23.

3       In the context of class action settlements, "formal discovery is not a necessary

4   ticket to the bargaining table where the parties have sufficient information to make an

5   informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

6   1239 (9th Cir. 1998) (quotation marks omitted). Further, the speed with which the

7   parties reached a resolution is not a concern as "an early resolution may demonstrate

8   that the parties and their counsel are well prepared and well aware of the strength and

9   weaknesses of their positions and of the interests to be served by an amicable end to

10   the case." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d

11   935, 967 (N.D. Ill. 2011); *see also Brown v. 22nd District Agricultural Assoc.*, No. 15-

12   cv-2578-DHB, 2017 WL 2172239, at *8 (S.D. Cal. May 17, 2017).

13       In other words, the parties need not unearth every last fact of a case before they

14   can settle it; rather, they must learn as much as necessary to ensure that claims are not

15   undervalued or settled prematurely. The relevant analysis is whether the parties have

16   undertaken sufficient steps given the context and circumstance of a particular case to

17   make a reasonable, informed decision to settle Class members' claims. The parties

18   have done so here.

19       From the outset, Tyndall's alleged conduct was widely reported in a number of

20   in-depth investigative news articles—many of which included statements from

21   Tyndall's patients, coworkers, USC administrators, and Tyndall himself. The vigorous

22   investigation by Interim Class Counsel, including interviewing hundreds of former

23   Tyndall patients, reviewing data from USC, and consulting with experts, ensured that

24   they were thoroughly informed and able to negotiate a sensitive and compassionate

25   Settlement and Settlement Claims process. In light of the foregoing, the Settlement

26   meets the considerations of Rule 23(e)(2)(A).

27

28

-12-

## 2.    Rule 23(e)(2)(B): The Settlement Resulted from Informed Arm's-Length Negotiations.

Under Rule 23(e)(2)(B), the Court considers whether the Settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Court considers the "conduct of the negotiations." Adv. Cmt. Note R. 23. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." *Id.* Additionally, the Court may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms." *Id.*

The close participation of Judge Layn Phillips in the settlement negotiation process underscores the procedural fairness of the Settlement. *See also Fed. Ins. Co. v. Caldera Med., Inc.*, No.2:15-cv-00393-SVW, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) (this Court noted that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

The parties negotiated attorneys' fees for Class Counsel only after reaching agreement on the monetary relief for the Class.[41] "The fact that the parties . . . did not discuss attorneys' fees until all other issues were virtually finalized, is also indicative of a fair and arm's-length process." *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006); *Sadowska v. Volkswagen Grp. of Am.*, *Inc.*, No. 11-CV-00665-BRO, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs"); *Rodriguez v. Farmers Ins. Co. of Ariz.*, No. 09-CV-06786-JGB, 2013 WL 12109896, at *5 (C.D. Cal. Aug. 4, 2013) (same).

Therefore, the Settlement meets the considerations of Rule 23(e)(2)(B).

---

[41] *See* Declaration of Honorable Layn Phillips [Dkt. 67-4] at ¶ 11.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

**3.      Rule 23(e)(2)(C): The Relief Under the Settlement Is Outstanding.**

Amended Rule 23(e) (2)(C) requires a court to consider whether the relief provided for the class is adequate by considering the "costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims"; "the terms of any proposed award of attorneys' fees, including timing of payment"; and "any agreements to be identified under Rule 23(e)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). All of these substantive considerations are satisfied here. The Settlement provides substantial compensation to all Class Members, distributed via a fair and compassionate claims process, and a Settlement amount that will not be reduced by attorneys' fees and costs. The Settlement further provides unprecedented equitable relief to ensure lasting institutional changes at USC with independent oversight.

**a.      Rule 23(e) (2)(c)(i): The Relief Provided for the Class is Substantial, Particularly in Light of the Costs, Risks, and Delay of Trial.**

Under Rule 23(e)(2)(c)(i), the Court must consider "costs, risks, and delay of trial and appeal." While Plaintiffs believe in the strength of their case, they also recognize that litigation is uncertain, making compromise of claims in exchange for the Settlement's certain, immediate, and substantial benefits, including privacy for Class Members, an unquestionably reasonable outcome.

There are risks inherent to any litigation, including that a particular plaintiff could lose her case. Additionally, as evidenced in the pending state court cases, in litigating their claims, Plaintiffs would be subject to discovery that raises major privacy concerns. Defendants likely would seek to take victims' testimony through deposition or at trial. Women who filed suit using a Jane Doe pseudonym would risk having their identities revealed.

-14-

A related significant cost of litigation for Class Members is the substantial emotional toll that litigating through trial would impose on each victim. Testifying requires victims to publicly re-live and recount the traumatic experiences they endured. Resolving this case through the Settlement allows Class Members the choice to put this behind them instead of re-living painful memories for years in protracted litigation. This Settlement obviates the risks and delays of litigation in exchange for privacy, choice, immediacy, guaranteed monetary compensation, and accountability. The Settlement therefore meets the considerations of Rule 23(e)(2)(C)(i).

**b.**   **Rule 23(e)(2)(c)(ii): The Settlement Claims Process Is Efficient, Accurate, and Sensitive to Claimants' Needs and Privacy.**

Rule 23(e)(2)(c)(ii) asks whether the methods of distribution and claims processing are effective. Class Members have received direct notice of the Settlement claims process and benefits through the Court-approved notice program. The Settlement claims process detailed above is uniquely designed to provide an accessible, safe, and private way for Class Members to tell their stories—to the extent and in the way they choose—and receive compensation for the harms they suffered. The three-tier structure centered on claimant choice is a creative way to maximize payments and simplicity while also allowing for fuller inquiry and greater payment for those who want it. Therefore, the Settlement meets the considerations of Rule 23(e)(2)(C)(ii).

**c.**   **Rule 23(e)(2)(c)(iii): The Terms of the Proposed Award of Attorney's Fees Puts Class Members First.**

Under Rule 23(e)(2)(C)(iii), the Court must consider whether "the terms of any proposed award of attorneys' fees, including time of payment" are reasonable. Here, the Settlement provides that Defendants will pay Interim Class Counsel's attorneys' fees and costs separately, without any reduction of the Settlement Amount or Class Member recoveries. The Court alone will decide attorneys' fees and costs, and

-15-

approval of the Settlement will not be contingent on the Court approving fees and costs in any particular amount. Agmt. § 8.1. Interim Class Counsel will move for fees and costs after the Special Master files a Report on the Claims Process and will not seek an amount greater than $25 million. Class Members will have the opportunity to review and comment on or object to the fee petition as provided by Fed. R. Civ. P. 23(h) and consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Class Counsel will provide notice of their motion and the opportunity to object via the Settlement Website.

### d. Rule 23(e)(2)(c)(iv): There Are No Undisclosed Side Agreements.

Under Rule 23(e)(2)(C)(iv), the Court must consider any agreements to be identified under Rule 23(e)(3). Rule 23(e)(3) requires the parties seeking approval for a class action settlement to "file a statement identifying any agreement made in connection with the proposal." There are no agreements to disclose under Rule 23(e)(3) and the settlement meets the considerations of Rule 23(e)(2)(C)(iv).

### 4. Rule 23 (e)(2)(D): The Settlement Treats Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) requires that the Court consider whether "the proposal treats class members equitably relative to each other." This factor is intended to ensure that a proposed settlement does not include "inequitable treatment of some class members vis-a-vis others." Adv. Cmt. Note R. 23.

By design, the Settlement treats Class Members equitably by presenting each of them with the same choices within the three-tier structure. All Class Members are eligible to receive the same guaranteed minimum Tier 1 $2,500 compensation solely by virtue of being a Class Member. All Class Members who choose to submit a Tier 2 or 3 claim are eligible for awards up to $20,000 or $250,000, respectively. For Tier 2 and 3 claims, the Panel makes a claim award determination within the range for each Tier based on the information provided by each claimant.

-16-

1    Additionally, as the Court noted, "if the proposed settlement prescribed a three-

2    person committee to make claims determinations"—which the parties did at the

3    Court's direction—it "would find the settlement treats class members equitably toward

4    each other under Rule 23(e)(2)(D)." [Dkt. 124 at 8]. The Settlement thus ensures that

5    Class Members are treated equitably relative to each other and meets the

6    considerations of Rule 23(e)(2)(D).

7    Therefore, for the reasons detailed above, the Settlement satisfies all the Rule

8    23(e)(2) factors in favor of final settlement approval.

9    **B.      The Court Should Certify the Settlement Class.**

10    In its June 12, 2019 Order, the Court found that it would likely be able to certify

11    the Settlement Class. [Dkt.148] at 3. Plaintiffs briefly address these elements below.

12    **1.      The Class Meets the Requirements of Rule 23(a)**

13    Under Rule 23(a), the proponent of class certification must show that the

14    proposed class meets the requirements of (1) numerosity, (2) commonality, (3)

15    typicality, and (4) adequacy.

16    **a.      The Class Is Sufficiently Numerous.**

17    Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all

18    members is impracticable." Fed. R. Civ. P. 23(a)(1). It is undisputed that the Class

19    consists of at least 18,782 women living around the United States and the world. The

20    large size of the Class and the geographic disparity of its members render joinder

21    impracticable here. Therefore, Rule 23(a)(1)'s numerosity requirement is satisfied.

22    **b.      There Are Common Questions of Both Law and Fact.**

23    "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on

24    demonstrating that members of the proposed class share common 'questions of law or

25    fact.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).

26    The "commonality requirement has been 'construed permissively,' and its

27    requirements deemed 'minimal.'" *Estrella v. Freedom Fin. Network*, No. C 09-03156

28    -17-

1

2

SI, 2010 WL 2231790, at *25 (N.D. Cal. June 2, 2010) (quoting *Hanlon*, 150 F.3d at
1020).

3

4

5

6

7

8

9

Further, courts have found commonality satisfied in sex abuse class actions. *See
Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 385–86 (Del. Super. Ct. 2012); *Jane
Doe 2 v. The Georgetown Synagogue-Kesher Israel Congregation,* No. 2014 CA
007644 B, slip op. at 14 (D.C. Super. Oct. 24, 2018). In a case like this one, where the
exact factual circumstances of each class member's injury may vary, commonality
exists where a course of conduct subjects all class members to a similar risk or threat
of harm. *See, e.g., D.G. v. Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010).

10

11

12

13

14

15

16

17

18

19

20

Many of the questions common to the Class focus on Defendants' conduct, and
include: whether Tyndall engaged in sexual harassment, invasion of privacy, assault,
and battery; whether Tyndall's alleged wrongful conduct was committed within the
scope of his employment at USC; whether USC had knowledge of Tyndall's wrongful
conduct; whether USC facilitated Tyndall's pattern and practice of sexual harassment,
invasion of privacy, assault, and battery; whether USC or Tyndall engaged in conduct
designed to suppress complaints or reports regarding Tyndall's conduct; whether USC
negligently retained or supervised Tyndall; whether USC ratified Tyndall's conduct;
and whether USC is vicariously liable for Tyndall's conduct. The answers to such
questions are the same as to each Class Member, and these answers are central to the
litigation. Therefore, Rule 23(a)(2)'s commonality requirement is satisfied.

21

### c.    Plaintiffs' Claims Are Typical.

22

23

24

25

26

27

Rule 23(a)(3) requires that "the claims or defenses of the representative parties
are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of
typicality is 'whether other members have the same or similar injury, whether the
action is based on conduct which is not unique to the named plaintiffs, and whether
other class members have been injured by the same course of conduct.'" *Parsons v.
Ryan,* 754 F.3d 657, 685 (9th Cir. 2014). The same course of conduct that injured

28

-18-

Plaintiffs injured other Class Members. While the precise circumstances of each Class Member's interaction with Tyndall may vary, all allege claims concerning USC's duty to reasonably supervise Tyndall during his tenure. Thus, Rule 23(a)(3)'s typicality requirement is met.

### d. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the named Plaintiffs and Class Counsel "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider two questions to evaluate whether the adequacy of representation requirement of Rule 23(a) (4) is satisfied: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The answer to each of those questions satisfies Rule 24(a)(4)'s adequacy requirement.

Plaintiffs agreed to serve in a representative capacity, communicated diligently with Interim Class Counsel, and continue to act in the best interests of the Class Members—all of whom have an interest in obtaining relief for their claims. Various Plaintiffs visited Tyndall at the student health center at different times within the class period. There are no conflicts between individual Plaintiffs and the Class.

Interim Class Counsel are qualified to serve as Class Counsel as they collectively have decades of experience successfully representing plaintiffs and aggrieved classes in complex class action litigation, including in sexual misconduct cases. *See* [Dkt. 34.] Accordingly, Rule 23(a)(4) is satisfied, and, for the same reasons, Plaintiffs respectfully request the Court appoint Interim Class Counsel as Class Counsel and Plaintiffs as Class representatives pursuant to Fed. R. Civ. P. 23(g)

-19-

## 2.      The Class Meets the Requirements of Rule 23(b)(3).

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied. As to the predominance and superiority requirements of Rule 23(b)(3), when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial." *Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) (explaining that subdivision 23(b)(3)(D) drops out of the analysis).

### a.      Common Issues of Law and Fact Predominate.

The predominance analysis "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)).

Common questions of law and fact predominate here. All Class Members have Title IX claims that USC's failure to discipline Tyndall amounts to unlawful discrimination.[42] Because of this shared federal claim, a choice-of-law analysis would be superfluous and unnecessary.[43] All of the claims center on Tyndall's alleged misconduct and that of USC, which conduct is common to all Class Members; whether and when USC had notice of Tyndall's abusive conduct and statements; whether and when USC should have taken corrective action; why it failed to do so; whether Tyndall's conduct was medically justified; and whether his conduct can be

---

[42] *See* Tr. of Aug. 13, 2018 Hr'g at 6 ("[T]he court makes this observation: It does seem established, although it isn't necessarily intuitive, that the Title IX does apply to this type of complaint").

[43] Additionally, because the conduct at issue occurred in California, all Class Members could assert colorable claims under California law. *See Ehret v. Uber Techs, Inc.,* 68 F. Supp. 3d 1121, 1131–32 (N.D. Cal. 2014); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 615–16 (1987).

Motion for Final Approval of Settlement
No. 2:18-cv-04258-SVW

vicariously imputed to USC. *See Doe v. The Johns Hopkins Hosp.*, No. 24C13001041, 2014 WL 5040602, at *2 (Md. Cir. Ct. Sept. 19, 2014) (common questions included vicarious liability and when university knew of doctor's behavior). Much of the same evidence would be necessary to establish liability in each victim's case, if brought individually.

In contrast to these numerous common issues, the individual questions are few, and generally only concern issues of individual damage calculation. Such differences that "go primarily to damages . . . cannot destroy predominance." *Ambriz v. Coca Cola Co.*, No. 14-CV-00715-SVW, 2015 WL 12683823, at *4 (C.D. Cal. Mar. 11, 2015). Thus, issues common to the class predominate.

### b. Class Treatment Is Superior in This Case.

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." The Settlement allows all Class Members to receive compensation efficiently, instead of limiting recovery to women willing to step forward as a plaintiff. Collective action is plainly superior in cases involving traumatic injuries, as victims of assault or abuse often do not wish to subject themselves to litigation, whether to avoid making their experience public, having to testify about it, or having to confront their abuser in court. *See, e.g., Doe v. Roman Catholic Diocese of Covington*, No. 03-CI- 00181, 2006 WL 250694, at *5 (Ky. Cir. Ct. Jan. 31, 2016); *Bradley*, 64 A.3d at 385. Thus, the class action serves as a valuable, vastly superior mechanism in cases like these, where those individuals who choose to come forward and speak up may obtain justice for those who cannot.

The Settlement is also specifically designed so that Class Members do not have to wholly surrender control of their claims. The Settlement instead contemplates individualized consideration of particular claims through the Panel's administration of the three-tiered Settlement structure. This focus on claimant choice is a creative way to maximize payments and simplicity, while allowing for fuller inquiry and greater

-21-

payment for those who want it. This proposed process incorporates the efficiency of the class mechanism with the particular needs of Class Members in this case. Because the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Class under Rule 23(b)(3) is appropriate.

**C.   Plaintiffs Have Complied with All Additional Approval Factors**

**1.   Plaintiffs Have Provided Adequate Notice Under Rule 23(b)(3) and Rule 23(c)(2)(B)**

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" The Notice and notice program in this matter conformed to the mandates of Rule 23 and due process. Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "The ultimate goal of giving notice is to enable Class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or make claims." Adv. Cmt. Note R. 23.

Here, the notice plan implemented after preliminary approval satisfies both Rule 23 and due process. Plaintiffs and JND have followed the approved notice procedures. The Parties implemented the Court's suggested changes to the content of the Notices to ensure their full compliance with the requirements of Rule 23(c)(2)(B). The Notices included all the information required under Rule 23(c)(2)(B): they informed Class Members of the nature of the action, the class definition, the class claims, that a Class Member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, and the binding effect of final approval.

-22-

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

The notice campaign has been both procedurally and substantively successful.
JND, the Court-appointed Settlement Notice Administrator implemented a direct
notice campaign via mail and email, as well as a multifaceted indirect notice
campaign. Notice was mailed to 12,702 pre-identified Class Members and 152,801
potential Class Members[44] Notice was emailed to 11,318 pre-identified Class
Members and 113,432 potential Class Members.[45] Additionally, the Notice was
published in media likely to be viewed by Class Members, including the *Daily Trojan*
and USC's alumni magazine, and through an online notice campaign utilizing
Facebook, LinkedIn, and Twitter banners.[46] Further, the Settlement Administrator
established the Settlement Website and set-up a toll-free number that individuals could
call to obtain information about the Settlement.[47] The Notice Administrator opines that
the notice program reached approximately 95% percent of Class Members.[48] Hence,
the notice process was adequate under Rule 23(c)(2).

### 2.   No Class Members Objected to the Settlement.

Objections to proposed class settlements are governed by the procedures set
forth in Fed. R. Civ. P. 23(e)(5). No such objections to the Settlement were received.
Prior to this Court's preliminary approval of the Settlement, a handful of attorneys
filed what they styled as "objections," but those filings were not valid objections
pursuant to Fed. R. Civ. P. 23(e)(5), and this Court properly rejected them as
premature. [Dkt. 124].

The Court found those filings were "premature under Rule 24 for objections to
intervene at the preliminary approval stage, as all objections to the settlement
agreement are contemplated to be lodged after preliminary approval and before final

---

[44] Keough FA Decl. at ¶ 13.
[45] Keough FA Decl. at ¶ 15.
[46] Keough FA Decl. at ¶¶ 16–17.
[47] Keough FA Decl. at ¶ 33.
[48] Keough FA Decl. at ¶ 29.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

approval." *Id.* 9–10 (citing *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198 at \*5 (N.D. Cal. Oct. 23, 2009)). None of those premature complaints about the Settlement were re-lodged as objections during the time period for Class Member objections.

### 3. The Positive Response of Class Members to the Settlement Favors Final Approval.

Courts within the Ninth Circuit also give weight to the response of class members. *See, e.g.*, *In re Bluetooth Headset Prods. Liability Litig.*,654 F.3d 935 (9th Cir. 2011); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). "The absence of a single objection . . . provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.

The overwhelmingly positive reaction from class members weighs in favor of approval. Thousands of Class Members made claims, and their participation demonstrates the Class's support for the Settlement. Indeed, approximately 100 individuals who filed claims in state court have decided not to opt out of this Settlement, but rather to participate as Class Members.[49] A total of 774 Class Members opted out, exercising their option to bring their own cases, and not a single Class Member objected to the Settlement. This positive reaction from the thousands of Class Members is significant as it confirms that the Class supports the financial compensation for their injuries, as well as the equitable relief that will prevent similar harm to others at USC going forward.[50] The positive reaction of the Class strongly favors approval of the Settlement.

## IV.   CONCLUSION

The Parties' groundbreaking Settlement achieves this litigation's central goals

---

[49] Estimated by counsel based on a cross-reference of state plaintiffs to opt-outs.
[50] *See also* Statement of USC Student Leaders In Support Of Proposed Settlement [Dkt. 139–5].

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No. 2:18-cv-04258-SVW

1  of accountability and institutional change. First, the Settlement requires USC to pay

2  substantial compensation to Class Members for the pain they have endured, and in a

3  manner that allows the women to choose whether and how much they wish to be

4  involved. Second, the Settlement requires USC to improve its campus policies and

5  procedures, both as a sign of accountability, and to protect students on its campus

6  going forward. This is the largest ever class action settlement of sexual assault claims

7  and the first to incorporate equitable relief reforms to bring lasting institutional

8  change. In these ways, the Settlement is more than just fair, reasonable, and

9  adequate—it is an outstanding result for the Class.

10      For all the reasons stated above, and set forth in the initial motion [Dkt. 67] and

11  renewed motion [Dkt. 124], the Amended Settlement Agreement resolves this

12  litigation while providing outstanding equitable and monetary relief for Class

13  Members. For all these reasons, Plaintiffs respectfully request that the Court grant

14  their motion for final settlement approval, certify the Settlement Class, appoint the

15  undersigned as Class Counsel, and appoint Plaintiffs as Class Representatives.

16  DATED: November 18, 2019.        Respectfully submitted,

17                                   HAGENS BERMAN SOBOL SHAPIRO LLP

18                                   By   /s/ Steve W. Berman

19                                        Steve W. Berman

20                                   Shelby R. Smith
                                     1301 Second Avenue, Suite 2000
21                                   Seattle, WA 98101
                                     Tel.: 206-623-7292
22                                   Fax: 206-623-0594
23                                   Email: steve@hbsslaw.com
                                     Email: shelby@hbsslaw.com
24

25                                   Whitney K. Siehl
26                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                     455 N. Cityfront Plaza Dr., Suite 2410
27                                   Chicago, IL 60611

28                                              -25-

1  Telephone: 708-628-4949
2  Facsimile: 708-628-4950
   Email: whitneys@hbsslaw.com
3
4  Christopher R. Pitoun (SBN 290235)
   HAGENS BERMAN SOBOL SHAPIRO LLP
5  301 N. Lake Ave, Suite 920
   Pasadena, CA 91101
6  Telephone: (213) 330-7150
7  Facsimile: (213) 330-7152
   Email: christopherp@hbsslaw.com
8
9  Jonathan D. Selbin
   Annika K. Martin
10 Evan J. Ballan
11 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
12 San Francisco, CA 94111-3339
   Tel.: (415) 956-1000
13 Fax: (415) 956-1008
14 Email: jselbin@lchb.com
   Email: akmartin@lchb.com
15 Email: eballan@lchb.com
16
17 Daniel C. Girard
   Elizabeth A. Kramer
18 GIRARD SHARP LLP
19 601 California Street, Suite 1400
   San Francisco, California 94108
20 Tel.: (415) 981-4800
21 Fax: (415) 981-4846
   Email: dgirard@girardsharp.com
22 Email: ekramer@girardsharp.com
23
   *Plaintiffs' Executive Committee and*
24 *Interim Class Counsel*
25
   Joseph G. Sauder
26 SAUDER SCHELKOPF LLC
27 555 Lancaster Avenue
28
                                   -26-

1
2
3

Berwyn, Pennsylvania 19312
Tel: (610) 200-0580
Fax: (610)727-4360
Email: jgs@sstriallawyers.com

4
5
6
7
8
9

Jonathan Shub
KOHN SWIFT & GRAF, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA 19103-7225
P: 215-238-1700
F: 215-238-1968
E: jshub@kohnswift.com

10

*Proposed Additional Class Counsel*

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-27-